UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Michael Johnson

                    Plaintiff,

        v.                                                    9:24-CV-1399
                                                              (AJB/MJK)

Mirlene Janvier, *et al.*,

                    Defendants.

---

Michael Johnson, Plaintiff, *pro se*
Chi-Hsin E. Engelhart, Esq., Asst. Attorney General, for Defendants

Mitchell J. Katz, United States Magistrate Judge

To the Honorable Anthony J. Brindisi, U.S. District Court Judge:

## REPORT-RECOMMENDATION

United States District Court Judge Anthony J. Brindisi referred Defendants' Fed. R. Civ. P. 12(b)(1),(6) motions to the Court for report and recommendation.[1] In this *pro se* civil rights action, Johnson alleges that Defendants violated his Eighth Amendment rights when some of the 10 John Doe officers gang assaulted him, and Janvier instructed incarcerated individuals to assault him. For the following reasons, this Court recommends granting Defendants' motion to dismiss.

---

[1] The District Court has the authority to refer dispositive motions to this Court under 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

## I.   BACKGROUND

On November 17, 2023, Johnson and Janvier "exchanged words[.]" (Complaint, Dkt. 1, pg. 3, at ¶¶12, 15). This interaction caused Janvier to "sound[] an alarm," which caused "the responding [Department of Corrections and Community Supervision ("DOCCS") . . . officers, including some of [the] Defendant Officer Does 1-10," to punch Johnson "in the fact and ribs and repeatedly and hardly" kick and strike Johnson's legs, knees, stomach, chest, and ribs." (*Id.* at ¶¶15,16). "As a result of the assault, [Johnson] suffered severe injuries." (*Id.* at ¶18). After this, Janvier and some of the Doe officers ordered Johnson to go upstairs to his cell. (*Id.* at ¶19). When Johnson arrived at his cell, "multiple" incarcerated individuals "physically attacked" him, "stating they were doing so because he . . .exchanged words with" Janvier. (*Id.* pg. 4, at ¶20). Johnson "suffered injuries to his head, face, ribs and chest, including multiple rib fractures, a pulmonary contusion, and hemopneumothorax." (*Id.* at ¶21).

About a year later, Johnson filed a Complaint, through counsel, alleging, among other things, violations of the Eighth Amendment. (Dkts. 1, 8). Defendants then moved to dismiss the Complaint. (Dkt.

13). Plaintiff's Counsel then moved to withdraw as counsel. (Dkts. 14, 16). This Court then ordered Johnson to show cause why his Counsel should not be permitted to withdraw as counsel. (Dkts. 16, 17, 21, 22). After, this Court granted Johnson's Counsel's request to withdraw. (Dkt. 24). Johnson never responded to Janvier's motion to dismiss.

## II.   STANDARDS OF REVIEW

### A. Fed. R. Civ. P. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (internal citation omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* (internal citation omitted).

### B. Fed. R. Civ. P. Rule 12(b)(6)

Although Complaints do "not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S.662, 678 (2009). A complaint which "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

When ruling on a defendant's motion to dismiss, all factual allegations contained in the complaint must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Twombly*, 550 U.S. at 155. Additionally, "in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may

4

be taken." *Leonard F. v. Isr. Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (cleaned up).

## III. DISCUSSION

The Court now examines Janvier's motion to dismiss in two parts. First, the Court analyzes the jurisdictional issues, and second, the Court analyzes the pleading issues.

### A. Jurisdictional issues.

Below, the Court addresses the three jurisdictional issues. *First*, the Court recommends the District Court dismiss the Complaint on sovereign immunity grounds. *Second*, the Court recommends the District Court dismiss Johnson's state law claims because New York Correction Law §24 strips the District Court of jurisdiction. *Third*, the Court recommends the District Court decline to exercise supplemental jurisdiction.

**1. The District Court should dismiss the entire Complaint because the pleading does not identify whether Johnson is suing Defendants in their official or unofficial capacity**.

The Eleventh Amendment may bar Johnson's Complaint. Courts have construed the Eleventh Amendment as barring "suits for damages against state officials acting in their official capacities." *Cox v. (DOCCS) NYS Dep't of Corr.*, 673 F. Supp. 3d 174, 184 (N.D.N.Y. 2023). (citing

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Still, the Complaint is silent as to whether Johnson is suing Janvier and Does 1-10 in their official or unofficial capacities.[2] If Johnson is suing Janvier and the Does in their official capacities, this Court recommends the District Court dismiss the Complaint. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

## 2. New York Correction Law §24 strips the District Court of jurisdiction to hear Johnson's state law claims.

The District Court does not have subject matter jurisdiction to hear Johnson's state law claims. "Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [DOCCS] shall be brought and maintained in the court of claims as a claim against the state." N.Y. Corr. L. §24. "This provision

---

[2]  The Court could find that Johnson is suing the 10 Doe Officers in their official capacity because Johnson alleges that "the acts complained of were carried out by the aforementioned Defendants in their capacities as corrections officers[.]" (Complaint, Dkt. 1, pg. 5, at ¶¶28,29).

prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, 503 F. Supp. 3d 68, 98 (S.D.N.Y. 2020) (cleaned up); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases). But Johnson invites the District Court to hear state law assault, battery, aiding and abetting, and conspiracy claims. (Complaint, Dkt. 1, pgs. 7-8). The District Court must decline that offer. To do so, the Court must dismiss Johnson's state-law tort claims.

**3. No federal claim should survive Janvier's Motion to Dismiss so the District Court should not exercise supplemental jurisdiction.**

The District Court should decline to exercise supplemental jurisdiction over Janvier's state law claims. District courts "may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) "Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: 'judicial economy, convenience, fairness, and comity.'" *Dixon v. New York City Hous. Dev. Corp.*, No. 23-CV-6114, 2024 WL 3823170, at *7 (E.D.N.Y. Aug. 13, 2024) (quoting *Catzin v. Thank You & Good Luck*

*Corp.*, 899 F.3d 77, 81 (2d Cir. 2018)). That said, when "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well. *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (internal citation omitted). Here, the Court is recommending dismissal of all federal claims. So the District Court should decline to exercise supplemental jurisdiction over any state law claims. *See, e.g., Dixon*, 2024 WL 3823170, at \*7 (declining to exercise supplemental jurisdiction over state law claims when all the federal claims have been dismissed).

## B. Pleading issues.

In this section, the Court analyzes the Complaint's pleading issues. *First*, the Court recommends dismissing Johnson's substantive due process claims as duplicative. *Second*, the Court recommends dismissing Johnson's second excessive force, supervisory liability, and conspiracy claims because they are insufficiently pleaded. *Third*, the Court recommends dismissing Johnson's Eighth Amendment claims because they are insufficiently pleaded *without* applying the Second Circuit's special solicitude rule for *pro se* plaintiffs.

8

**1. The District Court should dismiss Johnson's substantive due process claim because it is duplicative of his excessive-force claim.**

Johnson's substantive due process claim must be dismissed as duplicative. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (cleaned up); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) As a result, "substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources." *Roman v. Velleca*, No. 3:11-CV-1867, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) (cleaned up). Here, Johnson's Due Process claim is duplicative of his excessive-force claim. (Complaint, Dkt. 1, pg. 6, at ¶3). So the District Court must dismiss Johnson's substantive due process claims as duplicative. *See United States v. Lanier,* 520 U.S. 259, 272 n. 7 (1997) ("If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard

appropriate to that specific provision, not under the rubric of substantive due process.").

**2. The District Court should dismiss Johnson's second excessive force, supervisory liability, and conspiracy claims because they are threadbare, conclusory, and fail to comply with Fed. R. Civ. P. Rule 8(a).**

Johnson's failure to intervene, supervisory liability, conspiracy (if it is a federal claim) claims should be dismissed for failure to state a claim. To survive dismissal for failure to state a claim, complaints must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

Johnson's supervisory liability claim fails to comply with *Iqbal's* commands. Plaintiffs "must plead and prove that each Government-official defendant, including supervisors, through the official's own individual actions, has violated the Constitution." *Archa v. New York*, No. 9:24-CV-677 (FJS/ML), 2025 WL 2371018, at *6 (N.D.N.Y. Aug. 14, 2025) (cleaned up). Here, the Complaint neither identifies who the

supervisor is nor how that unknown supervisor personally violated Johnson's Eighth Amendment rights. In consequence, the District Court should dismiss Johnson's supervisory liability claim as insufficiently pleaded.

Likewise, Johnson's conspiracy claim (assuming it is a §1983 claim) is insufficiently pleaded. "To maintain a civil rights conspiracy action under Section 1983 . . . , a plaintiff, at a minimum, must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 132 (N.D.N.Y. 2023) (internal citation omitted). Here, Johnson only alleges that "Defendants conspired with one another in assaulting" him. (Complaint, Dkt. 1, pg. 7, at ¶47). Put another way, Johnson "does not allege any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other. [Johnson's] conclusory allegations do not support a 'meeting of the minds' or a plausible conspiracy claim involving any of the defendants." *Id.* (dismissing a §1983 conspiracy claim on initial review). So the District

Court should dismiss Johnson's conspiracy claim as insufficiently pleaded.

Finally, Johnson's second excessive force claim is also insufficiently pleaded. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983."*Nicholson v. Hammond*, No. 913CV0748 (TJM/DEP), 2016 WL 3369286, at *5 (N.D.N.Y. May 19, 2016) (cleaned up). To "prevail on a section 1983 cause of action against an individual, a plaintiff must show a tangible connection between the acts of a defendant and the injuries suffered." *Id.* (internal citation omitted). Taking the Complaint at its word, Janvier was not involved in the second assault. (Complaint, Dkt. 1, pgs. 3, 4, at ¶¶12, 20). Personal involvement does not attach just because Johnson claims that Janvier instructed other incarcerated individuals to assault him. *See, e.g., Calvin v. Schmitt*, No. 15 CV-6584, 2017 WL 4280683, at *7 (S.D.N.Y. July 7, 2017) (finding no personal involvement when the plaintiff claims that the defendant officer instructed incarcerated individuals to contaminate the plaintiff's food). So Janvier's lack of personal involvement is fatal to Johnson's claim. *See Costello v. City of*

12

*Burlington,* 632 F.3d 41, 48-49 (2d Cir. 2011) (finding that a complaint that fails to establish personal involvement of a defendant is "fatal" for a claim under § 1983). As a result, the District Court should dismiss Johnson's second excessive force claim.

### 3. The District Court should dismiss Johnson's Eighth Amendment claims because the claims are not adequately supported.

Incarcerated individuals alleging excessive force "must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated 'contemporary standards of decency.'" *Abreu v. Lake*, No. 17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *14 (N.D.N.Y. 2018) (cleaned up) (citing *Blyden v. Mancusi*, 186 F.252, 262-63 (2d Cir. 1999)). "To determine whether a defendant acted maliciously, several factors should be examined including, the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Abreu*, 2018 WL 11236520, at *14 (citing *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir. 2003)).

Johnson's excessive force claim should not survive Janvier's motion to dismiss. In his Complaint, Johnson alleges "some of [the] Defendant Officer Does 1-10, punched [him] in the face and ribs and repeatedly and harshly kicked and struck his legs, knees, stomach, chest, and ribs." (Complaint, Dkt. 1, pg. 3, at ¶16). Separately, Johnson alleges that he suffered injuries to his head, face, chest, and ribs. (Complaint, Dkt. 1, pg. 4, at ¶21). Yet there are no allegations in the Complaint that concern the defendants' mental state, the amount of forced use, the need for force, any threats made, or any efforts defendants used to temper the force. Frankly, the Complaint is so insufficiently pleaded that the Court cannot analyze the claim. That cannot be enough to survive a motion to dismiss.[3] *See, e.g., Vasquez v. Schenectady Cnty. Corr. Facility*, No. 20-CV-0785 (TJM/CFH), 2020 WL

---

[3] Usually, these claims would survive 28 U.S.C. §1915 review because the Second Circuit requires courts within this circuit to liberally construe *a pleading by a pro se litigant* and interpret that pleading to raise the strongest argument that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."). But here, the Court need not do so. A *pro se* litigant did not draft this pleading. So the claim must plausibly be pleaded. Yet it is not.

6482029, at *5 (N.D.N.Y. 2020) (dismissing a Fourteenth Amendment excessive force claim because "the amended complaint lack[ed] any details regarding the manner or duration of force used against plaintiff, or the events that precipitated the use of force. Instead, [the] plaintiff alleges only that he 'was assaulted by five correctional officers[.]'").

The same analysis applies to Johnson's failure-to-intervene claim. "The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation." *Lutz v. Cuomo,* No. 19-CV-0262 (BKS/CFH), 2019 WL 13369576, at *12 (N.D.N.Y. 2019). "To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Id.* Here, Johnson's Complaint neither plausibly alleges that Janvier had a realistic opportunity to prevent harm, nor does it plausibly allege that

15

Janvier refused to take reasonable measures to end the use of force. As a result, the claim is insufficiently pleaded. Thus, the District Court should dismiss Johnson's failure to intervene claim. *See, e.g., Ying Li v. City of New York*, 246 F. Supp. 3d 578, 619 (E.D.N.Y. 2017) (dismissing the plaintiff's failure-to-intervene claim because "Plaintiff's allegations are merely conclusory.").

* * *

To end, the District Court should dismiss Johnson's Complaint. First, it is unclear if the District Court has jurisdiction to hear Johnson's claim because sovereign immunity may bar the claims. Second, New York Correctional Law §24 strips the District Court of jurisdiction to hear the state law claims. Third, the Complaint's allegations are so threadbare that the District Court should dismiss the Complaint for failure to comply with Fed. R. Civ. P. Rule 8.

## V. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's Complaint (Dkt. 13) — in its entirety — for lack of subject matter jurisdiction; if the District Court rejects this recommendation, it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's first Eighth Amendment excessive-force claim because it fails to plausibly allege a claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's second Eighth Amendment excessive-force claim because it fails to plausibly allege a claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's Eighth Amendment failure-to-intervene claim because it fails to plausibly allege a claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's supervisory liability claim because it fails to plausibly allege a claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's state law assault claim because the Court lacks subject matter jurisdiction over that claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's state law battery claim because the Court lacks subject matter jurisdiction over that claim; and it is further

17

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's state law aiding and abetting claim because the Court lacks subject matter jurisdiction over that claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's state law conspiracy claim because the Court lacks subject matter jurisdiction over that claim; and it is further

**RECOMMENDED**, that the District Court **GRANT** Defendants' motion to dismiss Johnson's 42 U.S.C. §1983 conspiracy claim because it fails to plausibly allege a claim; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*).

In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892

18

F.2d 15 (2d Cir. 1989) (*per curiam*)); 28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 72, 6(a).


Dated: February 5, 2026

                                      _____

                                      Hon. Mitchell J. Katz

                                      U.S. Magistrate Judge

Case 9:24-cv-01399-AJB-MJK     Document 31     Filed 02/05/26     Page 20 of 121

**Abreu v. Lake, Not Reported in Fed. Supp. (2018)**



KeyCite Yellow Flag

On Reconsideration in Part   Abreu v. Donahue,   N.D.N.Y.,   March 13, 2018

2018 WL 11236520
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Carlos ABREU, Plaintiff,

v.

Mitch LAKE, Director; Bureau of Mental Health Services, James F. Donahue, Deputy Superintendent for Mental Health Services; Marcy Correctional Facility, Justin J. Thomas, Superintendent; Marcy Correctional Facility, Bryan Hilton, Assistant Commissioner, Mrs. Sanpietro, Acting Unit Chief; Omh Also Known as Santopietro, Mrs. Kelly, Unit Chief of Omh, Anthony J. Annucci, Acting Commissioner; Doccs, Collins, D.S.S. (Deputy Superintendent for Security); Marcy Correctional Facility, Joseph E. Corey, Captain; Marcy Correctional Facility, Timothy P. Corey, Lieutenant; Marcy Correctional Facility, William J. Snyder, Captain; Marcy Correctional Facility, Sgt. Brown, Marcy Correctional Facility, Mrs. T. Lalonde, Nurse; Marcy Correctional Facility, Alfred J. Maunz, Sergeant; Marcy Correctional Facility, Gregory D. Mayo, Correction Officer, Ryan F. Rugari, Correction Officer; Marcy Correctional Facility, Joseph A. Russo, Correction Official/officer; Marcy Correctional Facility, Mark Wilsey, Correction Officer; Marcy Correctional Facility, Sean P. Wiggins, Correction Officer; Marcy Correctional Facility, Kenneth N. Toomey, Correction Officer; Marcy Correctional Facility, Raymond J. Donley, Correction Officer; Marcy Correctional Facility, Mr. A. Fenski, Correction Officer; Marcy Correctional Facility, Mr. Johnson, Correction Officer; Marcy Correctional Facility, K. Murphy, Correction Officer; Marcy Correctional Facility, T. Powers, Correction Officer; Marcy Correctional Facility, Mr. Zike, Sergeant; Marcy Correctional Facility, Tammi Whittaker, Social Worker, Mr. Russo, Social Worker, Joseph Bellnier, Doccs Deputy Commissioner, Mr. Bruen, Doccs Deputy Commissioner and Counsel, Ann Marie T. Sullivan, Omh/office of Mental Health/commissioner, Mrs. Mucculloch, Executive Director of Cnypc, Joseph D. Corelli, Kein M. Darling, Correction Officer; Marcy Correctional Facility, Lempke, Superintendent, Colvin, Superintendent, Keyser, Superintendent, Miller, Superintendent, Tina Ploss, John Doe, and Superintendent Graham, Defendants.

9:17-CV-1312 (DNH/DEP)
|
Signed 01/22/2018

**Attorneys and Law Firms**

CARLOS ABREU, 99-A-3027, Plaintiff, pro se, Marcy Correctional Facility, P.O. Box 3600, Marcy, New York 13403

DAVID N. HURD, United States District Judge

**DECISION and ORDER**

**I. INTRODUCTION**

 **\*1**  This is an initial review of a pro se civil rights complaint filed by plaintiff Carlos Abreu ("Abreu" or "plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 8 ("IFP Application"). [1]

## II. IFP APPLICATION

Upon review of his IFP Application, Abreu has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. The remaining question is whether the "three strikes" provision of 28 U.S.C. § 1915(g) operates to bar plaintiff from proceeding in forma pauperis. Section 1915(g) provides:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### A. Litigation History

A review of Abreu's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that he is a frequent litigator in district courts in this Circuit. [2]

For instance, in a different case filed in this district, *Abreu v. U.S. of Am., et. al.*, No. 11-CV-1104 (LEK/DEP), Dkt. No. 7 (Decision and Order filed Jan. 3, 2012), the Court concluded Abreu had accumulated more than "three strikes" for purposes of § 1915(g) by analyzing plaintiff's prior actions and appeals and determining that at least three of the prior actions and appeals were dismissed as frivolous or for failure to state a claim upon which relief could be granted. *Id*. After discussing the applicable caselaw and applying the law to the facts therein, the Court found that plaintiff could not proceed in forma pauperis unless he faced imminent danger when he filed the action. [3] *Id*.

 **\*2** In fact, this "three-strikes" rule has been enforced against Abreu on numerous occasions: in *Abreu v. Lira, et al.*, No. 12-CV-1385 (NAM/DEP), Decision and Order (N.D.N.Y. February 28, 2013); *Weathers, et al., v. Travers*, et al., No. 12-CV-1582 (GLS/RFT), Decision and Order (N.D.N.Y. March 28, 2013); *Abreu v. Graham, et al.*, No. 13-CV-1512 (LEK/CFH), Decision and Order (N.D.N.Y. June 30, 2014); *Abreu v. Nowicki, et al.*, No. 14-CV-0394 (LEK/DEP), Decision and Order (N.D.N.Y. Aug. 28, 2014); *Abreu v. Miccuci, et. al.*, No. 14-CV-0658 (MAD/DEP), Decision and Order (N.D.N.Y. Nov. 5, 2014); *Abreu v. Chuttey, et al.,* No. 14-CV-0728 (GTS/DEP), Decision and Order (N.D.N.Y. Nov. 14, 2014); *Abreu v. Miller, et. al.*, No. 15-CV-1306 (TJM/DJS), Decision and Order (N.D.N.Y. Jan. 13, 2016); and *Abreu v. Lipka, et. al.*, No. 16-CV-0776 (LEK/DIP), Decision and Order (N.D.N.Y. Sept. 9, 2016).

After reviewing these decisions, as well as the docket sheets for the actions found to constitute strikes, this Court likewise finds that Abreu acquired three strikes prior to commencing this action in November 2017. [4] In other words, unless it appears that the "imminent danger" exception to the "three-strikes" rule is applicable to this action, plaintiff may not proceed in forma pauperis.

### B. The "Imminent Danger" Exception

Congress enacted the imminent danger exception as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding in forma pauperis. *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint—in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510

F.3d 152, 155 (2d Cir. 2007) (stating that imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).

Section 1915(g) allows a three-strikes litigation to proceed in forma pauperis only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges. *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id*. at 298-99.

Generally speaking, the allegations relevant to the "imminent danger" inquiry "are those in which [the plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). Under this exception, an inmate who has had three prior strikes must show that he was under imminent danger at the time of filing in order to proceed in forma pauperis, but the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Malik*, 293 F.3d at 562–63.

 **\*3** The term "serious physical injury" in section 1915(g) is not defined. However, the Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Chavis*, 618 F.3d at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[T]hough [a court] is obligated to draw the most favorable inferences that [a pro se plaintiff's] complaint supports, [the court] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 169-70. Thus, "[a] court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.' " *Id*. (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)).

Abreu's complaint in this case is dated November 27, 2017 and therefore the claims relevant for the determination of "imminent danger" are those surrounding this date. *See Chavis*, 618 F.3d at 171. From October 31, 2017 until November 27, 2017, petitioner has been confined to the Residential Mental Health Unit ("RMHU") at Marcy Correctional Facility ("Marcy C.F.") in a dirty cell with constant light. Compl. at 10, 70.

Due to these cell conditions, Abreu suffers from sleep deprivation, swollen eyes, migraines, stress, and depression. Compl. at 70. Defendants refuse to provide plaintiff with cleaning supplies, medication for his high cholesterol, his hand brace, back brace, orthopedic boots, prescription eyeglasses, or mental health care. *Id*. at 10, 70-71. As a result, plaintiff suffers from chronic pain. *Id*. at 71. Additionally, plaintiff alleges that on November 9, 2017, he swallowed a piece of metal and, despite his complaints of extreme stomach pain, he has not received any medical treatment or x-rays. *Id*. at 25, 70.

On November 13, 2017, Abreu was placed in an Exposure Control Jumpsuit ("Jumpsuit"), with a lock behind the neck. Compl. at 10, 30, 70. Plaintiff is required to wear the Jumpsuit when he leaves his cell. *Id*. Due to the weight of the Jumpsuit, plaintiff suffers from shortness of breath, difficulties walking, tiredness, and weakness. *Id*. at 30. Moreover, the lock causes "choking sensations" when plaintiff moves. *Id*. at 30. As such, plaintiff claims that he is in "imminent danger." *See id*. at 70.

Construing his pro se pleading liberally, Abreu has sufficiently *alleged* that he was "under imminent danger of serious physical injury" when he filed this action. Where, as here, a plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger. *Chavis*, 618 F.3d at 171. Accordingly, plaintiff is granted leave to commence this action in forma pauperis.

Notably, however, this conclusion is a **preliminary finding**, and defendants are entitled to refute this preliminary finding in future filings. Among other things, Abreu's in forma pauperis status will be revoked if, as the case progresses, it is determined

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 23 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

that he did not face imminent danger of serious physical injury when he commenced this action or is otherwise not entitled to proceed in forma pauperis.

## III. INITIAL SCREENING

**\*4** Having found that Abreu meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from an officer or employee of a governmental entity, the sufficiency of the allegations set forth in the complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that [the action] (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. SUMMARY OF THE COMPLAINT [6]

**\*5** In his seventy-eight page complaint, Abreu sets forth numerous claims against forty-two defendants arising out of his confinement at Marcy C.F. *See* Compl., *generally*. Because he is proceeding pro se, the allegations in plaintiff's complaint will be construed with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

On October 31, 2017, Abreu was transferred from Five Points Correctional Facility to the RMHU at Marcy C.F.[7] Compl. at 8. Defendants Superintendent Justin J. Thomas ("Thomas"), Office of Mental Health ("OMH") Commissioner Anne Marie T. Sullivan ("Sullivan"), Executive Director of Central New York Psychiatric Center ("CNYPC") Mrs. McCulloch ("McCulloch"),

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 24 of 121

Assistant Commissioner Bryan Hilton ("Hilton"), Commissioner Anthony Annucci ("Annucci"), OMH Unit Chief Mrs. Sanpietro ("Sanpietro"), and DOCCS Deputy Commissioner Joseph Bellnier ("Bellnier") created a three-tier system in the RMHU. *Id*. at 55. The three tier system afforded inmates at different levels the opportunity for different privileges. *Id*. To move between levels, inmates were required to exhibit good behavior for thirty to ninety days. *Id*.

From November 1, 2017 until November 27, 2017, defendants Corrections Officers Gregory D. Mayo ("Mayo"), Ryan F. Rugari ("Rugari"), Joseph Russo ("J. Russo"), Mark Wilsey (Wilsey"), Sean P. Wiggins ("Wiggins"), Kenneth N. Toomey ("Toomey"), Raymond J. Donley ("Donley"), Mr. A. Fenski ("Fenski"), Mr. Johnson ("Johnson"), K. Murphy ("Murphy"), T. Powers ("Powers"), Kein M. Darling ("Darling"), and Sergeants Mr. Zike ("Zike"), Tina Ploss ("Ploss"), Alfred J. Maunz ("Maunz"), and Brown harassed and teased Abreu because English is not his first language and he speaks with limited proficiency. Compl. at 11-12.

On November 1, 2017, defendant Deputy Superintendent for Mental Health Services James F. Donahue ("Donahue") refused to provide Abreu with a personal interpreter and placed plaintiff in classes with female personnel because he "did not want [plaintiff] at Marcy C.F." Compl. at 12, 14, 16.

On November 6, 2017, Abreu passed a note to a nurse claiming that he intended to commit suicide. Compl. at 18. Despite his threat, Mayo refused to transfer plaintiff to an Observation Cell in the MHU and claimed that there were no empty cells. *Id*. Plaintiff asked to be transferred to the Observation Unit at a different facility, but Mayo became "angry" and denied his request. *Id*. Instead, plaintiff would remain in his cell under a suicide watch with a guard stationed in front of the cell. *Id*. In preparation for the watch, Maunz and Mayo handcuffed plaintiff and escorted him to a holding pen. Compl. at 18-19. The handcuffs were placed on so tightly that it caused pain, discomfort, and cuts to plaintiff's wrists. *Id*. at 19. Plaintiff remained in the holding pen for one hour while Maunz and May removed plaintiff's property from his cell, including his legal work. *Id*. at 18-19.

Mayo and Maunz then escorted Abreu from the holding pen back to his cell. Compl. at 19. Plaintiff was directed to remove his clothes and searched. *Id*. Plaintiff received a smock and two mats. *Id*. Plaintiff noticed that his legal materials were mixed with garbage in the hallway in front of his cell. *Id*. Plaintiff's cell was extremely cold and Mayo and Maunz put a "sock with items inside" in the window so plaintiff would not be able to close the window. *Id*. at 19-20.

**\*6** On November 7, 2017, while defendants Social Worker Russo ("S.W. Russo") and Donahue conducted rounds, Abreu told them that the window in his cell would not close. Compl. at 21. Defendants indicated that they would send someone to close it, but no one returned. *Id*. Later the same day, plaintiff was transferred to an Observation Cell in the MHU. *Id*. While in the cell, plaintiff claims that Wiggins sexually assaulted him. *Id*. at 26 Plaintiff reported the abuse to Donahue and Zike, but they refused to address the complaint. Compl. at 26.

On November 8, 2017, Abreu returned to his cell (B-1-22) in the RMHU. Compl. at 22. When he arrived, he noticed that his legal mail and soap were missing. *Id*. Plaintiff told the nurse that Mayo and Maunz stole his property. *Id*. While plaintiff was speaking with the nurse, a corrections officer was present during the conversation. *Id*. The officer reported to Ploss and Wilsey that plaintiff threatened to throw feces at the nurse. Compl. at 22. As a result, Ploss and Wilsey ordered a plexi-glass shield placed over plaintiff's cell. *Id*.

On November 9, 2017, Wilsey and Zike refused to allow Abreu to attend programming and designated plaintiff as an "Exceptional Circumstance" ("EC").[8] Compl. at 23. Donahue, Thomas, Sullivan, McCulloch, Hilton, Annucci, Sanpietro and defendant OMH Chief Mrs. Kelly ("Kelly"), Captain Joseph E. Corey ("J. Corey"), and Captain William J. Snyder ("Snyder") were aware of the designation. *Id*. at 23-24.

On November 9, 2017, Abreu intentionally swallowed a piece of large metal from his headphones. Compl. at 25. Plaintiff began to experience severe stomach pains. *Id*. Wiggins and Zike escorted plaintiff to defendant Nurse T. Lalonde ("Lalonde"). *Id*. at 26. Plaintiff reported the sexual abuse by Wiggins. *Id*. Donahue and Lalonde refused to provide medical attention and directed

Wiggins to escort plaintiff to the Contraband/Dry Room for a forty-eight hour suicide watch. Compl. at 25. Wiggins placed handcuffs on plaintiff so tightly that it caused pain and cuts to his wrists. *Id*. at 26. Wiggins, Zike, and "several other" officers removed plaintiff's clothes and conducted a strip search. *Id*. at 26. While plaintiff was completely naked in the corner of the Dry Room, Wiggins pulled Plaintiff's hair with "force," causing plaintiff's head to bend back and cursed at plaintiff in an attempt to humiliate him. *Id*. Plaintiff was provided with sheets and blankets. Compl. at 25.

From November 9, 2017 until November 11, 2017, Abreu was confined to the Dry Room. Compl. at 27. Plaintiff was forced to defecate and urinate into Styrofoam trays in front of the officers. *Id*. The cell was extremely cold and did not have a sink or a toilet and was empty except for a bed. *Id*. at 25, 27. The officers made lewd comments about plaintiff's body. *Id*. Plaintiff was not provided with soap, water, toothpaste, toothbrush, or clean drinking water. Compl. at 27. Plaintiff reported these conditions to Zike, Brown, Russo, S.W. Russo, Donahue, and Corey during rounds. *Id*.

**\*7** On November 10, 2017, during the suicide watch, defendant Social Worker Tammi Whittaker ("Whittaker") issued a false misbehavior report charging Abreu with lewd conduct. Compl. at 28. The next day, plaintiff was transferred to an Observation Cell. *Id*. The day after that, J. Russo refused to provide plaintiff with his medications, including his asthma inhaler. *Id*. And the next day after that, Powers refused to provide breakfast or food. *Id*. at 29.

On November 13, 2017, S.W. Russo and Whittaker recommended that Abreu be placed in an Exposure Control Jumpsuit ("the Jumpsuit") and further, that an Exposure Placard be placed on plaintiff's cell. [9] Compl. at 29, 37. Plaintiff was confined to the Jumpsuit before the disciplinary hearing related to Whittaker's misbehavior report. *Id*. at 34. The Jumpsuit is a heavy, corduroy and nylon suit that is green and can be seen from a distance. *Id*. at 30. The Jumpsuit has a lock behind the neck and must be worn over clothing. *Id*.

On November 13, 2017, Abreu was discharged from the Observation Cell and returned to his RMHU cell. Compl. at 41. From November 13, 2017 through November 19, 2017, defendant Joseph D. Corelli ("Corelli"), Wilsey, John Doe, Wiggins, Russo, Rugari, Mayo, Toomey, Donley, Darling, Johnson, Murphy, Powers, Brown, Ploss, Zike, Corey, Donahue, and Thomas continued to enforce the EC designation and refused to allow plaintiff to attend programming and classes. *Id*.

On November 17, 2017, Abreu was moved to the last cell in the RMHU, cell A-1-13. Compl. at 42. The light switch in the cell was covered with metal and therefore, the cell light remained illuminated twenty-four hours each day. *Id*. The walls of the cell were covered with graffiti. *Id*. Plaintiff was unable to sleep, became depressed, and experienced suicidal thoughts. *Id*. Wiggins, Russo, Rugari, Mayo, Maunz, Brown, Corelli, Wilsey, Toomey, Zike, Ploss, Powers, Murphy, Johnson, Snyder, Corey, Thomas, Donahue, and Capt. Corey regularly deny plaintiff showers, hygiene items, cleaning supplies, writing supplies, and clippers. *Id*. at 47. Sanpietro, Sullivan, and McCulloch are aware of the conditions of cell A-1-13 based upon their positions in the facility. Compl. at 48. Plaintiff reported the conditions to Donahue, Sanpietro, Kelly, Collins, Hilton, and Annucci. [10] Compl. at 42.

On November 22, 2017, Zike agreed to allow Abreu to attend classes, but only if he wore the Jumpsuit pursuant to an order from Donahue, Thomas, defendant Deputy Superintendent of Security Collins ("Collins"), Annucci, Hilton, Bellnier, Sanpietro, and Kelly. Compl. at 41. Plaintiff refused to wear the Jumpsuit. *Id*.

**\*8** During his confinement at Marcy C.F., from October 31, 2017 until November 27, 2017, Thomas imposed a mail watch on Abreu's incoming and outgoing legal mail and correspondence. Compl. at 49. As a result, plaintiff's mail is opened in the presence of officers and he is required to present outgoing mail to officers. *Id*. Once the officers obtain the mail, they walk away, and do not allow plaintiff to watch them seal envelopes. *Id*. As a result, plaintiff's mail, correspondence, and grievances are regularly misplaced. *Id*. Moreover, Annucci, Hilton, Bellnier, and defendant DOCCS Deputy Commissioner and Counsel Mr. Bruen ("Bruen") have continually refused to grant plaintiff advance postage for his legal mail. Compl. at 53-54.

Abreu suffers from carpal tunnel syndrome in his right hand and high cholesterol. *See* Compl. at 51. During his confinement, Lalonde, Donahue, Thomas, Annucci, Sanpietro, Hilton, and Bellnier have refused to provide plaintiff with "Lipitol" for his

cholesterol, prescription eyeglasses, hand brace, orthopedic boots, ace bandages, and back brace. *Id*. at 50-51. As a result, plaintiff suffers from vision problems and chronic back pain. *Id*. Defendants have also refused to provide plaintiff with his Kosher meals and maintain an inadequate law library. *Id*. at 47-69. While confined in the RMHU, plaintiff has been denied certain privileges including the right to possess a television and computer table in his cell and the right to hear Spanish music. Compl. at 58-69.

Construing the complaint liberally, Abreu asserts the following causes of action: (1) constitutional claims based upon defendants' violations of DOCCS' Directives (2) Eighth Amendment claims related to his conditions of confinement; (3) Eighth Amendment excessive force claims; (4) Eighth Amendment deliberate indifference medical claims; (5) Fourteenth Amendment Due Process claims; (6) constitutional violations related to the receipt of a false misbehavior report; (7) First Amendment claims related to plaintiff's religious freedoms; (8) First Amendment claims related to plaintiff's access to the courts and mail tampering; (9) First Amendment retaliation claims; (10) racial discrimination; and (11) constitutional claims related to the Jumpsuit. [11] *See* Compl., *generally*.

## V. LEGAL STANDARDS

Abreu brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

**\*9** If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.

In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [12]

A plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. *See Colon*, 58 F.3d at 874. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).

If an inmate is not subjected to unconstitutional conduct, it necessarily follows that a defendant, sued as a supervisor, could not be held liable. *See Toole v. Connell*, No. 04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sept. 10, 2008); *see also Linares v. Mahunik*, No. 05-CV-625 (GLS/RFT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006); *see Elek v. Inc.*

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 27 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

*Vill. of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").

## VI. ANALYSIS

As an initial matter, Abreu names Mitch Lake ("Lake") as a defendant in the caption, compl. at 1, but he is not referenced anywhere in the body of the complaint. In the absence of factual allegations sufficient to plausibly suggest that Lake was personally involved in conduct that violated plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.").

### A. Official Capacity Claims Under § 1983

**\*10** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *See Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

In light of these limitations, Abreu's requests for money damages pursuant to Section 1983 against defendants in their official capacities are barred by the Eleventh Amendment and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### B. Violation of DOCCS' Directives

Abreu claims that defendants violated DOCCS' Directives related to the Jumpsuit, his thirty-four bags of personal property, and plaintiff's EC designation. *See* Compl. at 23, 29-40, 53.

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim).

"A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ..."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 28 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Failure to follow a DOCCS' Directive does not give rise to a viable § 1983 claim. Accordingly, to the extent that Abreu attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

### C. Eighth Amendment

**\*11** The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

### 1. Conditions of Confinement

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted).

"Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety.' " *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, a plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

### a. Cold Cells

The Second Circuit has found that prisoners claiming detention under very cold temperatures and without bedding can make out an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir.2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir.1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding).

Exposure to the "bitter cold of winter in northern-New York State" for "a substantial period of time" may constitute an Eighth Amendment claim. *See Corseli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Ifill v. Goord*, No. 03-CV-355, 2012 WL 176492, at *3 (W.D.N.Y. Jan. 20, 2012) (holding that "freezing temperatures can constitute the basis of an inhumane conditions of confinement claim.").

"It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment." *Nelson v. Plumley*, No. 9:12-CV-0422 (TJM/DEP), 2013 WL 1121362, at *10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).

Where prisoners have made allegations that could rise to such unconstitutional conditions, but where some facts remain unclear, courts in this Circuit have allowed their claims to continue. *Benitez v. Straley*, No. 01 Civ. 0181, 2006 WL 5400078, at \*13 (S.D.N.Y. Feb. 16, 2006).

### i. RMHU Cell B-1-22

**\*12** Abreu claims that cell B-1-22 was extremely cold and that cold air was forced into the cell through the vents. *See* Compl. at 19-20. Before plaintiff entered the cell, he was directed to strip and was given a "smock" and "two mats." *See id.* at 19. Additionally, Mayo and Maunz placed an object into his window that prevented it from closing. *See id.* Plaintiff was confined to this cell from November 6, 2017 until November 7, 2017. *See id.* at 20-21.

On November 7, 2017, Donahue and S.W. Russo noticed the condition of Abreu's cell during rounds and plaintiff told them about the obstruction in the window. *See* Compl. at 21. Donahue and S.W. Russo ignored plaintiff's complaints. *See id.*

At this juncture, Abreu has sufficiently pleaded an Eighth Amendment claim against Mayo, Maunz, Donahue, and S.W. Russo related to the extreme cold during his confinement in B-1-22 Cell from November 6, 2017 until November 7, 2017 to survive sua sponte review and require a response.

### ii. Observation Cells

From November 7, 2017 until November 8, 2017 and from November 11, 2017 until November 13, 2017, Abreu was confined in Observation Cells in the MHU and subjected to extremely cold conditions. *See* Compl. at 21, 28. Plaintiff claims that the air vents in the Observation Cells were on "all speed" blowing cold air into the cells and that the cells. *See id.*

Even assuming the conditions in the Observation Cells were objectively serious, the complaint lacks facts suggesting that any named defendant was personally involved with or responsible for the conditions of Abreu's confinement in the Observation Cells. Additionally, plaintiff has not pleaded any facts suggesting that he complained to any named defendant about the conditions in the Observation Cells. Thus, plaintiff has failed to sufficiently allege that any defendant acted with a deliberate state of mind.

Consequently, Abreu's Eighth Amendment claims related to his conditions of confinement are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim. *See Gomez v. Sepiol*, 2014 WL 1575872, at \*9 (W.D.N.Y. April 11, 2014) (dismissing the plaintiff's conditions of confinement claim without prejudice to the filing of an amended complaint against the officers that the plaintiff claimed turned off his cold water and deprived him of his basic human needs); *see also Toliver v. Dep't of Corrs.*, No. 10 Civ. 6298, 2012 WL 4510635, at \*9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).

### b. Plexi-glass Shield

Abreu claims that Ploss and Wilsey violated his Eighth Amendment rights when they ordered a plexi-glass shield placed on the front of his cell, B-1-22. *See* Compl. at 22. However, the Complaint does not contain any allegations regarding the conditions that plaintiff experienced as a result of the shield. Additionally, the complaint lacks facts related to how long the shield order was in place and if the shield followed plaintiff from his confinement in various cells and locations. Thus, at this juncture, plaintiff has failed to allege that the shield posed an "unreasonable risk of serious damage." *See Jones v. Uhler*, No. 9:16-CV-0990 (MAD/DJS), 2017 WL 4005632, at \*2 (N.D.N.Y. Sept. 12, 2017) (dismissing the Eighth Amendment claim because the plaintiff failed to plead facts suggesting that he was deprived of the "minimal civilized measure of life's necessities") (citation omitted). Accordingly, Plaintiff's Eighth Amendment claims against Ploss and Wilsey related to the plexi-glass shield are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### c. Dry Room

**\*13**   Abreu claims that while he was confined in the Dry Room, he was forced to urinate and defecate into Styrofoam trays in the presence of officers. *See* Compl. at 27. The cell was constantly illuminated and contained nothing but a bed. *See id.* Plaintiff was denied water, a toothbrush, toothpaste, or soap. *See id.* Plaintiff's drinking water was provided in a dirty Styrofoam cup. *See id.* Plaintiff reported these conditions to Donahue, Zike, Brown, Russo, S.W. Russo, and Corey when they made rounds through the unit. *See* Compl. at 27.

Here, even assuming Abreu's allegations are sufficient to satisfy the objective prong of the Eighth Amendment analysis, the complaint lacks facts establishing which correctional officers were responsible or personally involved in the alleged unconstitutional conditions. Plaintiff claims that Wiggins escorted him to the cell, but does not allege that he made any complaints related to the conditions of the cell to Wiggins or that Wiggins was responsible for the conditions. Additionally, with respect to the supervisory defendants, the complaint lacks facts including the date and times that plaintiff spoke to these defendants.

For the reasons discussed in Part VI(C)(1)(a)(ii), Plaintiff's Eighth Amendment claims related to his conditions of confinement in the Dry Room are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### d. RMHU Cell A-1-13

Abreu claims that Cell A-1-13 is constantly illuminated, the walls are covered with graffiti, and the floor, shower, toilet, sink, floor, window, and table are filthy. *See* Compl at 42. Wiggins, Russo, Rugari, Mayo, Maunz, Brown, Corelli, Wilsey, Toomey, Zike, Ploss, Powers, Murphy, Johnson, Snyder, Corey, Thomas, Donahue, and Capt. Corey regularly deny plaintiff showers, hygiene items, cleaning supplies, writing supplies, and clippers. *Id*. at 47. Plaintiff claims that he is unable to sleep, depressed, and experiences suicidal thoughts. *Id*.

Although a prolonged deprivation of toiletries can violate a prisoner's constitutional rights, a temporary deprivation generally does not. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir.2003) (citing *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967)).

Inconveniences or unpleasantness that a prisoner may endure as a result of a struggle to get adequate basic toilet items and cleaning supplies does not rise to the level of unquestioned and serious deprivations of basic human needs necessary to establish an Eighth Amendment violation. *Davidson v. Murray*, 371 F.Supp.2d 361, 372 (W.D.N.Y. 2005) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Abreu merely states that he was "regularly" denied showers, hygiene items, and cleaning supplies but fails to specify when, or how often, the deprivation occurred. Even assuming plaintiff has been deprived of these items since being moved to A-1-13 on November 17, 2017, a twenty day loss amounts to a temporary deprivation, not a constitutional deprivation necessary to satisfy the objective element of the Eighth Amendment. *See Thomas v. Smith*, 559 F.Supp. 223, 224 (W.D.N.Y. 1983) (dismissing complaint alleging unconstitutional denial of basic hygiene items such as deodorant, soap, shampoo while confined in Attica's SHU as frivolous). Consequently, plaintiff's Eighth Amendment claims related to his conditions of confinement in Cell A-1-13 are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim.

#### e. Meal

**\*14**   Abreu seeks redress for the violation of his Eighth Amendment rights arising from the alleged denial of a single meal on November 13, 2017. See Compl. at 29.

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 31 of 121

While "a substantial deprivation of food may well be recognized as being of constitutional dimension," *Robles*, 725 F.2d at 15, numerous courts have found that the mere allegation that an inmate was denied one meal does not give rise to a cognizable Eighth Amendment claim. *See Johnson v. Gagnon*, No. 9:14-CV-0916 (MAD/DEP), 2015 WL 1268199, at *11 n.10 (N.D.N.Y. Mar. 19, 2015) (D'Agostino, J., adopting report and recommendation by Peebles, M.J.) (dismissing the plaintiff's conditions of confinement claim where plaintiff alleged he missed a single meal); *Konovalchuk v. Cerminaro*, No. 9:11-CV-1344 (MAD/ CFH), 2014 WL 272428, at *21 (N.D.N.Y. Jan. 24, 2014) (D'Agostino, J., adopting report and recommendation by Hummel, M.J.) (dismissing the plaintiff's conditions of confinement claim where plaintiff alleged he missed two consecutive meals during a transport); *Gill v. Hoadley*, 261 F. Supp.2d 113, 129 (N.D.N.Y. 2003) (finding that complaint failed to state Eighth Amendment claim where prisoner alleged he was denied one meal).

Upon review and with due regard for his status as a pro se litigant, the allegation that Powers denied Abreu a single meal, even if true, does not state a claim for the violation of Plaintiff's Eighth Amendment rights upon which relief may be granted.

### f. Claims related to Televisions, Computer Tables, and Music

"It is well established, [ ], that prison inmates enjoy no constitutional right to watch television or to listen to the radio, as those amenities are not considered to be necessities for prison inmates." *Gillard v. Rovelli*, No. 9:09-CV-0431 (TJM/DEP), 2010 WL 5149277, at *5 (N.D.N.Y. Aug. 30, 2010) (citations omitted). Accordingly, to the extent that Abreu attempts to assert Eighth Amendment claims related to defendants failure to provide him with a television, computer table, or the ability to listen to Spanish music, those claims are dismissed.

### 2. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained.").

**\*15** "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

### a. Claims Related to Handcuffs and Searches

Abreu claims that Mayo and Maunz violated his Eighth Amendment rights when they escorted plaintiff to the holding pen in "very tight" handcuffs and subjected him to a "humiliating" strip search. *See* Compl. at 19. Plaintiff also alleges that Wiggins put handcuffs on "very, very tight[ ]," and conducted a humiliating search when he escorted Plaintiff to the Dry Room. *See id.* at 26.

"[C]onducting pat frisks on prisoners is a necessary procedure to ensure safety and security of prisons, and correction officers are authorized to 'conduct random pat frisks on free movement inmates going to or coming from services and programs' pursuant to DOC policy." *Tavares v. City of New York*, No. 08 Civ. 3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011).

Allegations of forceful pat frisks, without more, do not give rise to an Eighth Amendment violation. *See Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (holding that aggressive pat frisks, an attempt to hit, and pushing or grabbing the plaintiff did not rise to a constitutional claim); *see Vogelfang v. Capra*, 889 F.Supp.2d 489, 507 (S.D.N.Y. 2012) (finding that where the plaintiff alleged "only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim").

Additionally, "while handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force." *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp. 2d 459, 468 (S.D.N.Y. 2008). To sufficiently plead an excessive force claim based upon tight handcuffing, a plaintiff must allege more than a temporary injury. *Jackson v. City of New York*, 939 F.Supp.2d 219, 231 (E.D.N.Y. 2013).

Abreu has failed to allege that he suffered more than "temporary injury" as a result of the searches or tight handcuffing and therefore his claims against Mayo, Maunz, and Wiggins fail to state a cause of action under section 1983. Accordingly, plaintiff's Eighth Amendment excessive force claims related to these issues are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### b. Sexual Assault

In the complaint, Abreu makes vague references to an alleged sexual assault that occurred on November 8, 2017 while he was confined in the Observation Cell. *See* Compl. at 26. Plaintiff claims that he reported this assault, with Wiggins as the alleged perpetrator, to Lalonde, Donahue, and Zike but that the defendants ignored his complaint. *See id.*

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.*

**\*16** Abreu's complaint lacks any facts related to the alleged assault, other than the location of the incident. Additionally, plaintiff does not contend that he was physically harmed in any manner. Consequently, plaintiff's Eighth Amendment claim related to allegations of sexual assault is dismissed pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### 3. Deliberate Medical Indifference

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970).

The objective component of an Eighth Amendment deliberate indifference medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted).

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 33 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702.

The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

### a. Transfer to Observation Cell

Abreu claims that Mayo was deliberately indifferent to his serious medical needs when he failed to transfer plaintiff to an observation cell despite being aware of Plaintiff's suicidal thoughts. *See* Compl. at 18.

With respect to the objective prong of an Eighth Amendment claim, courts within this Circuit have found that "hearing voices" and "experiencing suicidal thoughts" is a serious medical need. *See Case v. Anderson*, No. 16 Civ. 983, 2017 WL 3701863, at *9 (S.D.N.Y. Aug. 25, 2017) (collecting cases); *see Allah v. Kemp*, No. 9:08-CV-1008 (NAM/GHL), 2010 WL 1036802, at *6 n.9 (N.D.N.Y. Feb. 25, 2010); *see Zimmerman v. Burge*, No. 9:06-CV-0176 (GLS/GHL), 2009 WL 3111429, at *8 (N.D.N.Y. Sept. 24, 2009) (holding that and inmate diagnosed with depression, who harbored potentially suicidal thoughts "suffered from a sufficiently serious medical need").

At this juncture, Abreu has pleaded facts to suggest that his mental health condition satisfies the objective prong of an Eighth Amendment analysis. Regarding the subjective element, however, the complaint lacks facts suggesting that May was deliberately indifferent to plaintiff's needs.

**\*17** "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999).

Abreu does not allege that he made a previous threat of suicide to Mayo or any other named defendants. Nor does the complaint suggest that plaintiff sustained any substantial harm or pain due to Mayo's refusal to transfer him to an Observation Cell. Indeed, plaintiff concedes that while he was not placed in an Observation Cell, he was confined to his cell, on a suicide watch, with a guard stationed outside his cell door. *See* Compl. at 18.

Similarly, Abreu does not claim that he voiced any concern to Mayo about the impact of refusing to send him to an Observation Cell. *Cf. Hoover v. Hardman*, No. 99-CV-1855 (FJS), 2005 WL 1949890, at *6 (N.D.N.Y. Aug. 15 2005) (finding an issue of fact where the plaintiff claimed that the defendant delayed his access to medical care with the knowledge that the plaintiff was in extreme pain). To summarize, nothing in the complaint suggests that Mayo, a non-medical defendant, was deliberately indifferent to plaintiff's medical needs.

Abreu's Eighth Amendment deliberate indifference claims against Mayo are therefore dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Claims Against Donahue and Lalonde

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 34 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Abreu asserts that Donahue and Lalonde were deliberately indifferent to his serious medical needs after he intentionally swallowed a piece of metal. *See* Compl. at 25. Specifically, plaintiff claims that Donahue and Lalonde failed to provide any medical treatment, including x-rays, and merely placed him in the Dry Room on a suicide watch for forty-eight hours. *See id.* Defendants told plaintiff that if he did not "pass" the metal within two days, he would be transferred to an outside hospital for an examination and x-rays. *See id.* During the forty-eight hour period, plaintiff suffered extreme stomach pains. *See id.* Plaintiff reported his pain to Zike, Brown, Russo, S.W. Russo, Donahue, and Corey during rounds. *See* Compl. at 27.

With respect to his medical care, even accepting as true that Abreu suffered from a serious medical need, "[i]nmates do not have a right to choose a specific type of treatment." *Veloz v. New York,* 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004); *see also Wright v. Conway,* 584 F.Supp.2d 604, 607 (W.D.N.Y. 2008) ("[The plaintiff's] complaints demonstrate no more than his personal dissatisfaction with the level of care that he received, and these claims must therefore be dismissed.").

The decision to refuse to refer an inmate to an outside specialist is not a violation of a constitutional right. *See Rowland v. Hildreth,* No. 92 Civ. 6140, 1993 WL 287646, at *12 (S.D.N.Y. July 27, 1993) (citing *Estelle,* 429 U.S. at 107)) ("[A] medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

With respect to the claims that Abreu was denied medical treatment and medication, the complaint lacks facts indicating how often plaintiff sought treatment; the nature of his complaints, whether he did or did not receive any medical treatment from defendants for those needs; whether the medical providers named as defendants were personally involved in plaintiff's medical care; and if he did receive some medical treatment, how the treatment was inadequate, and what harm the inadequacy caused to plaintiff.

**\*18** Without more, the facts suggest a mere disagreement with treatment, which fails to state a claim. *See Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Abreu has alleged no facts to plausibly suggest that any of the medical defendants acted with the requisite deliberate indifference to any of plaintiff's medical or mental health needs. *See Kee v. Hasty,* No. 01 Civ. 2123, 2004 WL 807071, at *29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants).

For the reasons set forth herein, Abreu's Eighth Amendment claims against Donahue and Lalonde are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Claims Related to Medication

Abreu claims that Russo and Ploss refused to provide plaintiff's asthma inhaler. *See* Compl. at 28. Plaintiff also alleges that Lalonde, Donahue, and Thomas repeatedly refuse to provide Lipitol. *See id.* at 50.

Even assuming Abreu's medical conditions, i.e., his asthma and high cholesterol, are sufficiently serious to satisfy the objective prong, these claims are subject to dismissal because plaintiff has not pleaded facts suggesting that defendants were aware that withholding the medication would result in an excessive risk to plaintiff's health or that defendants acted with the necessary culpable state of mind. *See Baskerville v. Blot,* 224 F. Supp. 2d 723, 735-36 (S.D.N.Y. 2002) (dismissing Eighth Amendment claim because the plaintiff's assertions did not suggest that the defendant "acted intentionally to withhold prescribed medication or was in any way responsible for the delay in obtaining a refill of his medication from the outside pharmacy.").

Indeed, Abreu's allegations amount to nothing more than a quarrel over the nature of his treatment. *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."). Thus, plaintiff's Eighth Amendment claims against Russo, Ploss, and Lalonde are dismissed without

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 35 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### d. Medical Boots, Orthopedic Braces, and Prescription Eyeglasses

Abreu claims that Lalonde, Donahue, Thomas, Annucci, Sanpietro, Hilton, and Bellnier are deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because they refused to provide his orthopedic boots, back and hand braces, his prescription eyeglasses, and ace bandages. *See* Compl at 51.

Even assuming Abreu suffers from serious medical needs for which these items were prescribed, the complaint lacks facts suggesting that defendants acted with a sufficiently culpable state of mind. The complaint does not contain factual allegations related to when plaintiff requested the items, who he directed his requests to, and the response, if any, he received to those requests. Accordingly, for the reasons set forth in Part VI(B)(3)(c), plaintiff's Eighth Amendment deliberate medical indifference claims related to these issues are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment Due Process

To successfully state a claim under section 1983 for denial of procedural due process, a plaintiff must show that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996).

 **\*19**  To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484).

#### 1. Deprivation of Property

Abreu claims that Mayo and Maunz violated his Fourteenth Amendment rights when they confiscated and destroyed his personal and legal property. *See* Compl. at 18-20, 22.

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

Because Abreu has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir.1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his property in violation of his due process rights). Accordingly, plaintiff's Due Process claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

#### 2. EC Designation, Tier Program, and Classes

Abreu claims that Wilsey, Zike, Thomas, Donahue, Sullivan, McCulloch, Hilton, Annucci, and Sanpietro unlawfully designated him as an EC in violation of his Fourteenth Amendment right to Due Process. *See* Compl. at 23. As a result, pPlaintiff was not

able to participate in "out of cell" classes or groups. *See id.* Plaintiff also alleges that the Tier Program in the RMHU violates his Fourteenth Amendment rights. *See id.* at 55.

"It is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs." *Taylor v. Levesque,* 246 F. App'x 772, 774 (2d Cir. 2007) (citation omitted).

Because prisoners have no liberty interest in being free from administrative classification, they are not entitled to due process before being classified. *See Little v. Mun. Corp.,* 51 F. Supp. 3d 473, 495 (S.D.N.Y. 2014) (citations omitted). Further, an inmate does not have a liberty interest in specific unit assignment. *Richards v. Woods,* 66 F.3d 320 (5th Cir. 1995).

While Abreu claims that his EC designation prevented him from attending "out of cell" programming, he does not allege that he was not offered "alternative mental health treatment and/or other therapeutic programming." *See* Compl. at 9. Thus, plaintiff fails to state a constitutional claim related to programs because inmates do not have a protected liberty interest in participating in programming. *See Guillory v. Cuomo,* 616 F. App'x 12, 14 (2d Cir. 2015) (citations omitted); *see also Jamison v. Hayden,* No. 9:03-CV-913 (FJS/DRH), 2008 WL 907316, at *4 (N.D.N.Y. Mar. 31, 2008) (dismissing the plaintiff's due process claim as the plaintiff's removal from a therapeutic program was not a constitutional violation because inmates do not enjoy a protected liberty interest in being assigned to a particular program or job while incarcerated).

**\*20** Accordingly, Abreu's Due Process claims related to his EC classification and inability to attend "out of cell" programming are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### E. False Misbehavior Report

It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied,* 485 U.S. 982 (1988)); *accord, Pittman v. Forte,* No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson,* No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").

The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862. In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."[13] *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

Abreu has not alleged that Whittaker issued the ticket in retaliation for plaintiff engaging in any protected conduct. Allegations based on the receipt of an alleged false ticket are therefore dismissed for failure to state a claim upon which relief may be granted.

### F. First Amendment Religious Claims

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)).

"Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).

**\*21** A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [14] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Abreu identifies himself as Jewish and claims that Corey, Snyder, Brown, Donahue, Thomas, Maunz, Mayo, Rugari, Russo, Wilsey, Corelli, Toomey, Lt. Corey, Johnson, Murphy, Zike, Ploss, and Powers refused to provide his Kosher meals from October 31, 2017 until November 27, 2017. *See* Compl. at 68. Plaintiff also claims that the Rabbi does not make rounds in the RMHU. *See id.*

However, Abreu does not provide facts related to the frequency with which he has been denied Kosher meals; i.e., whether he was not provided with a Kosher meal for every meal, every day, or once a week. Additionally, while plaintiff generally alleges that he wrote to the "Rabbi," he does not identify the Rabbi, or provide facts establishing when he wrote to him/her, or whether he made any complaints related to the Rabbi's presence in the RMHU.

Abreu has also failed to allege facts related to his beliefs or allege how his "sincerely held religious beliefs" were "substantially burdened" as a result of Defendants' actions. Thus, the Court cannot conclude that plaintiff has adequately alleged a First Amendment claim to survive initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See Leach v. N.Y.C.*, 2013 WL 3984996, at \*2 (S.D.N.Y. Aug. 2, 2013) (dismissing the First Amendment claim because the "intermittent" failure to provide food complying with the plaintiff's religion and the fact that the plaintiff's request to speak with a Rabbi was ignored on only a single occasion constitute a de minimis imposition, "falling far short of the substantial burden requirement[.]") (citation omitted).

### G. First Amendment - Access to Courts

Abreu claims that Mayo and Maunz confiscated and destroyed his legal work. *See* Compl. at 19, 22. Additionally, plaintiff alleges that Thomas, Donahue, Annucci, Hilton, and Bellnier violated his First Amendment right to access the courts because the law library at Marcy C.F. is inadequate. *See id.* at 47. Plaintiff also claims that Annucci, Hilton, Bruen, and Bellnier are denying Plaintiff advance postage for legal copies. *See id.* at 54.

**\*22** The United States Constitution guarantees prisoners a "meaningful right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 830 (1977). "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828.

Prisoners, however, do not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In determining whether the provision of legal services, or a law library is adequate, "meaningful access to the courts is the touchstone." *Id*. (quoting *Bounds*, 430 U.S. at 823).

To establish a constitutional violation based on a denial of access to the courts, the plaintiff must show that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 38 of 121

Abreu's claims are subject to dismissal because his complaint is devoid of facts suggesting that plaintiff suffered any injury related to a legal claim or material prejudice as a result of defendants' actions, or inactions. The complaint lacks facts establishing that defendants' conduct resulted in "actual harm" such as the "the dismissal of an otherwise meritorious legal claim." *See Cancel v. Goord*, No. 00 Civ 2042, 2001 WL 303713, at *4 (S.D.N.Y. March 29, 2001) ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").

Indeed, a review of the docket reports in other pending actions belies Abreu's claim that he was denied access to the courts. In a separate civil rights case filed in the United States District Court for the Western District of New York, plaintiff filed letters with the court during the time that he was confined at Marcy C.F. *See Abreu v. Farley, et. al.*, No. 6:11-CV-6251, Dkt. Nos. 114 and 115 (W.D.N.Y.). Accordingly, plaintiff's First Amendment claims regarding his access to the courts are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### H. First Amendment - Mail

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). A prisoner's right to receive and send mail may, however, be regulated. *See, e.g., Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997). District courts in the Second Circuit have articulated the test for analyzing regulations on prisoners' mail in two ways.

Some courts have applied the formulation set out in *Davis*, which states that "[r]estrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Davis*, 320 F.3d at 351 (citations and punctuation omitted).

Other courts have applied the formulation set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), which states that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

**\*23** The Second Circuit itself has applied both standards. *Davis*, 320 F.3d at 351 (applying *Davis* test to prisoner's claim that mailroom clerk, on two occasions, opened outgoing legal mail); *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (applying *Turner* test to prisoner's challenge to prison regulation limiting keeplock prisoners to one stamp per month for personal, non-legal use); *Duamutef v. Hollins*, 297 F.3d 108 (2d Cir. 2002) (applying *Turner* test to prisoner's claim that prison officials violated his First Amendment rights by placing a watch on all of his outgoing and incoming non-privileged mail).

Under the *Turner* standard, the burden is on the plaintiff to show that defendants' conduct was not reasonably related to legitimate penological interests. *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004).

The Second Circuit "has repeatedly found, without doubt, a valid, rational connection between the decision to impose a watch on a prisoner's mail and the desire to ensure the good order of the prison and the rehabilitation of prisoners by preventing a prisoner from engaging in illegal activities while incarcerated." *Duamutef,* 297 F.3d at 112 (citation and punctuation omitted); *see also United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996) ("The investigation and prevention of ongoing illegal activity constitute legitimate penological objectives.").

Abreu alleges that Thomas imposed an unconstitutional mail watch. *See* Compl. at 49. Plaintiff contends that he was required to show his mail to the sergeants and/or officers and that the officers tampered with his mail. *See id.* At this juncture, plaintiff has sufficiently stated a First Amendment claim to survive sua sponte review and require a response.

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 39 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

## I. First Amendment - Retaliation Claims

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).

Abreu claims that he suffered the following retaliatory conduct:

- Donahue retaliated against him when he failed to provide a personal interpreter and placed him in classes with all female personnel because he "did not want [plaintiff] at Marcy C.F." *See* Compl. at 12, 14, 16.

**\*24**  - Mayo refused to provide Plaintiff with medical attention in retaliation for Plaintiff's suicide attempt. *See* Compl. at 18.

- Ploss and Wilsey enforced the Shield Order in retaliation for Plaintiff's complaints against "C.O.". *See* Compl. at 22.

- On November 9, 2017, Wiggins used excessive force during the escort to the Dry Room and conducted an overly aggressive search in retaliation for Plaintiff's PREA complaint against Wiggins. *See* Compl. at 25-26.

- The EC designation was a retaliatory act. *See* Compl. at 23-24.

The retaliation claims against Donahue, Mayo, and those related to Abreu's EC designation are subject to dismissal because plaintiff fails to allege that he engaged in any constitutionally protected conduct.

With respect to Ploss and Mayo, the retaliation claims are subject to dismissal because the complaint lacks facts identifying what complaints motivated the alleged retaliatory action, when the complaints were filed, who they were filed against and, more importantly, how defendants became aware of the complaints. *See Davidson v. Talbot*, No. 01-CV-473 (RFT), 2005 WL 928620, at \*16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the strength or validity of such claim."); *see Guillory v. Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at \*23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred).

As Abreu has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, plaintiff has not stated a plausible claim for retaliation against these defendants in violation of the First Amendment and the claims are dismissed without prejudice.

With respect to Wiggins, however, Abreu has sufficiently pleaded a retaliation claim against him to survive initial review. In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. *See Shariff v. Poole*, 689 F.Supp.2d 470, 478 (W.D.N.Y. 2010) (holding that while excessive searching may not

constitute a violation of a constitutionally protected right, it does not "preclude such incidents from consideration as adverse actions").

### J. Racial Discrimination

"[T]he use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." *Baskerville v. Goord*, No. 97 Civ. 6413, 1998 WL 778396, at *7 (S.D.N.Y. Nov. 5, 1998) (citation omitted).

However, where "such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." *Baskerville*, 1998 WL 778396 at *7 (finding that the plaintiff alleged sufficient facts to establish that the verbal abuse was connected with the defendant's physical assault of the plaintiff).

"Courts in the Second Circuit have consistently held that [m]ere threats, verbal harassment or profanity, without any injury or damage, are not actionable under Section 1983." *Justice v. McGovern*, No. 11–CV–5076, 2012 WL 2155275, at *3 (E.D.N.Y. June 12, 2012).

**\*25** Abreu claims that defendants were racially insensitive, made derogatory comments regarding his limited ability to communicate in English, threatened, and harassed him. *See* Compl. at 11-12. Plaintiff does not allege that he suffered any physical injury as a result of the harassment. Thus, as presently pleaded, the claims do not rise to the level of a constitutional violation. Accordingly, plaintiff's racial discrimination claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure state a claim upon which relief may be granted.

### K. Claims Related to Jumpsuit

In the complaint, Abreu asserts several claims, against various defendants, related to his confinement to the Jumpsuit. *See* Compl. at 29-40. Each cause of action is analyzed below. [15]

### 1. Eighth Amendment

Abreu claims that the Jumpsuit is "hot" and "provoke[s] choking sensations." *See* Compl. at 30. Due to the weight of the Jumpsuit, plaintiff experienced shortness of breath and weakness. *See id.* Plaintiff is also subjected to harassment and humiliation from other inmates and officers. *See id.*

These claims are subject to dismissal. Abreu concedes that the Jumpsuit was imposed due to his lewd conduct within his cell. *See* Compl. at 29-40. Thus, the Jumpsuit was issued due to security concerns raised by plaintiff's own misconduct and indecent exposure. *See Selby v. Martin*, 84 F. App'x 496, 498 (6th Cir. 2003) (finding no Eighth Amendment violation due to the use of leg irons and belly chains that the plaintiff was directed to wear after being found guilty of attempted escape).

Moreover, Abreu has not pleaded facts suggesting that the use of the Jumpsuit deprived him of basic human needs or that the Jumpsuit restricted plaintiff's movement, prohibit him from leaving his cell, or preclude plaintiff from attending programs or visit. *See Harris v. Horel*, No. C 06-7761, 2009 WL 2761339, at *4 (N.D. Cal., Aug. 31, 2009) (finding no Eighth Amendment violation as the exposure jumpsuit did not restrict the plaintiff from leaving his cell, but rather required the plaintiff to wear the jumpsuit when he was outside his cell); *see also Barrow v. Buren*, No. 9:12-CV-01268 (MAD/CFH), 2015 WL 417084, at *15 (N.D.N.Y. Jan. 30, 2015) (holding that the physical discomfort of the padlock on exposure jumpsuit did not pose an excessive risk of serious injury).

Indeed, Abreu admits that he chose not to attend programming in the Jumpsuit. *See* Compl. at 41. Accordingly, plaintiff's Eighth Amendment claims related to the Jumpsuit are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 41 of 121

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

### 2. Fourteenth Amendment

#### a. Due Process

Abreu alleges that the imposition of the Jumpsuit violated his Due Process rights. *See* Compl. at 29, 34. Plaintiff's claims lack merit as an inmate does not have a liberty interest in being free from wearing an exposure jumpsuit. *Allah v. Murphy*, 699 F. App'x 41 (2d Cir. 2017) (summary order). Accordingly, plaintiff's Fourteenth Amendment claim related to the imposition of the Jumpsuit is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.

#### b. Equal Protection

Abreu claims that inmates in the general population are not faced with the possible sanction of being confined to the Jumpsuit. *See* Compl. at 33. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

**\*26**  "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett*, No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at \*3 (N.D.N.Y. Mar. 28, 1997 (citation omitted).

In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Abreu fails to allege any facts suggesting how he was treated differently than a similarly situated inmate. Plaintiff's vague and conclusory allegations are insufficient to plausibly suggest an equal protection violation. *See Byng v. Delta Recovery Servs., LLC.*, No. 9:13-CV-0733 (MAD/ATB), 2013 WL 3897485, at \*15, n. 5 (N.D.N.Y. July 29, 2013) (holding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to any one or that someone else was treated differently than he was); *see also Barnes v. Henderson*, 490 F. Supp. 2d 313, 318 (W.D.N.Y. 2007) (dismissing the equal protection claim because the plaintiff did not identify any similarly situated inmates who were treated differently from him, "much less shown an 'extremely high' level of similarity between them"). Accordingly, plaintiff's Fourteenth Amendment Equal Protection claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Double Jeopardy

Abreu claims that the imposition of the Jumpsuit constitutes "double jeopardy." *See* Compl. at 34.

"It is, indeed, well settled in the Second Circuit that facing a hearing on a prison disciplinary charge cannot be construed as being 'put in jeopardy of life or limb' for purposes of the Double Jeopardy Clause of the Fifth Amendment." *Zimmerman v. Burge*, No. 9:06-CV-0176 (GLS/GHL), 2008 WL 850677, at \*10 (N.D.N.Y. Mar. 28, 2008) (citing U.S. Const. amend V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb ....")).

This is because prison disciplinary proceedings are civil, not criminal, in nature. *See Porter v. Coughlin*, 421 F.3d 141, 149 (2d Cir. 2005) ("For all the reasons stated above, we find that the disciplinary proceeding was civil in nature and therefore presented no violation of the Double Jeopardy Clause."); *Encarnacion v. McGinnis*, No. 02-CV-6380, 2005 WL 3018728, at \*3 (W.D.N.Y. Oct. 26, 2005) ("[T]he double jeopardy clause is limited to criminal proceedings and does not pertain to prison disciplinary hearings.") (internal quotations and citations omitted). Thus, Abreu's double jeopardy claim is inapplicable and without merit.

#### 4. Retaliation

Abreu asserts that S.W. Russo and/or Whittaker was placed him in the Jumpsuit as a form of "retaliation." *See* Compl. at 29. This claim is subject to dismissal for the reasons set forth in Part VI(I), as plaintiff has failed to plead facts suggesting that he engaged in protected conduct, when he engaged in said conduct, and how or when S.W. Russo and/or Whittaker were aware of said conduct, prior to recommending the Jumpsuit. Accordingly, plaintiff's retaliation claims related to the Jumpsuit are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### VII. CONCLUSION

**\*27** Therefore, it is

ORDERED that

1. Plaintiff's in forma pauperis application (Dkt. No. 5) is **DENIED as moot**;

2. Plaintiff's in forma pauperis application (Dkt. No. 8) is **GRANTED**; [16]

3. The Clerk of the Court shall provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; [17]

3. The Clerk of the Court shall provide a copy of plaintiff's authorization form to the Financial Deputy of the Clerk's Office;

4. The following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) § 1983 claims for an award of money damages against Defendants in their official capacities; and (2) constitutional claims based upon the violation of DOCCS' Directives;

5. The following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims related to (a) Plaintiff's conditions of confinement in Observation Cells, Dry Room, cell A-1-13, (b) the plexi-glass shield, (c) one meal, (d) and the lack of television, computer table, and Spanish music; (2) Eighth Amendment excessive force claims; (3) Eighth Amendment deliberate medical indifference claims; (4) Fourteenth Amendment Due Process claims; (5) constitutional claims related to the false misbehavior report; (6) First Amendment access-to-court claims; (7) First Amendment religious freedom claims; (8) racial discrimination claims; (9) constitutional claims based upon the Jumpsuit;

6. The following claims survive sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) Eighth Amendment claims related to plaintiff's confinement in Cell B-1-22; (2) First Amendment claims related to mail watch; (3) First Amendment retaliation claim against Wiggins;

7. Lake, Hilton, Sanpietro, Kelly, Annucci, Collins, Corey, Lt. Corey, Snyder, Brown, Lalonde, Rugari, J. Russo, Wilsey, Toomey, Donley, Fenski, Johnson, Murphy, Powers, Zike, Whittaker, Bellnier, Bruen, Sullivan, McCulloch, Corelli, Darling, Lempke, Colvin, Keyser, Miller, Ploss, John Doe, and Graham are **DISMISSED** as defendants;

8. Upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Mayo, Maunz, Donahue, S.W. Russo, Thomas, and Wiggins;

Abreu v. Lake, Not Reported in Fed. Supp. (2018)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 43 of 121

**\*28** 9. The Clerk of the Court shall forward a copy of the summonses and complaint to the Office of the Attorney General, together with a copy of this Decision and Order;

10. A response to the complaint shall be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

11. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

12. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket**;

13. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;

14. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;

15. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and

16. The Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11236520

---

**Footnotes**

1    On December 8, 2017, Abreu filed an IFP Application executed on November 27, 2017 and certified on November 29, 2017. Dkt. No. 5. On December 12, 2017, plaintiff filed an updated IFP Application executed on December 7, 2017 and certified on December 7, 2017. Dkt. No. 8. Accordingly, the November 2017 IFP Application is denied as moot.

2    *See* U.S. Party/Case Index <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl > (last visited January 3, 2018). According to PACER, Abreu has commenced at least twenty-nine civil rights actions in the district courts in the Second Circuit since October 2008. *Id.*

3    The actions or appeals found to constitute "strikes" were: *Abreu v. Disability Advocates, Inc.*, No. 09-CV-6306 (S.D.N.Y. filed on July 15, 2009) (dismissing complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Disability Advocates, Inc.*, No. 09-CV-6306 (2d Cir. filed on Dec. 3, 2009) (dismissing appeal because it lacked an arguable basis in law or fact); *Abreu v. Sup. Ct. of Bronx Cnty.*, No. 10-cv-1310 (S.D.N.Y. filed on Feb. 18, 2010) (dismissing complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Sup. Ct. of Bronx Cnty.*, No. 10-cv-1310 (2d Cir. Aug. 8, 2010) (dismissing appeal because it lacked an arguable basis in law or fact). *See Chavis*, 618 F.3d at 167 (finding that a plaintiff incurs a

second "strike" when, after filing a complaint that is dismissed on one of the grounds listed in 28 U.S.C. § 1915(g), he appeals that dismissal, only to have the appeal also dismissed on one of the listed grounds.).

4     The Second Circuit has held that a district court may rely on the relevant docket sheets to determine whether the three strikes limitation on in forma pauperis proceedings applies so long as those sheets state with sufficient clarity that the prior suits were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See Harris v. City of New York*, 607 F.3d 18, 23-24 (2d Cir. 2010).

5     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

6     Abreu's complaint includes exhibits, *see* Dkt. No.1-1, which will be considered to the extent that they are relevant to the incidents described in the Amended Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (holding that a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

7     In January 2017, while Abreu was confined at Great Meadow C.F., defendants Anthony Annucci, Joseph Bellnier, and Bryan Hilton confiscated thirty-four bags of plaintiff's personal property. Compl. at 53. To date, plaintiff has not received that property. *Id.*

8     Plaintiff claims an EC recommendation may be forwarded to the Superintendent only if a Mental Health Clinician and Security Supervisor, after interviewing an inmate, conclude that an inmate's access to out of cell programming and mental health treatment presents an unacceptable risk to security. Compl. at 9. Such a determination must be in writing and alternative therapy shall be provided. *Id.* The recommendation must be forwarded to the "Joint Central Office" and a resolution shall be issued within twenty days of the recommendation. *Id.*

9     From 2014 through 2017, plaintiff had previously been confined to the Jumpsuit at the direction of Annucci, defendants DOCCS' Deputy Commissioner Joseph Bellnier ("Bellnier"), Superintendent of Wende Correctional Facility Lempke ("Lempke"), Superintendent of Five Points Correctional Facility Colvin ("Colvin"), Superintendent of Green Haven Correctional Facility Keyser ("Keyser"), Superintendent of Great Meadow Correctional Facility Miller (Miller"), and Superintendent of Auburn Correctional Facility Graham ("Graham"). Compl. at 35-40.

10     At the time plaintiff filed his complaint, he was still confined to A-1-13. Compl. at 45. On November 24, 2017 and November 25, 2017, plaintiff sent letters to Collins, Annucci, Donahue, Sanpietro, and Thomas regarding the conditions of Cell A-1-13. *See* Dkt. No. 1-1 at 5-13.

11     The complaint contains factual allegations that are, essentially, a daily log of events that occurred during plaintiff's confinement at Marcy C.F. *See* Compl., *generally*. While the complaint contains requests for injunctive, declaratory, and compensatory damages (*see* Compl. at 73-78), the pleading does not however, include any specific claims or causes of actions.

12     The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

13     "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana v. Olson*, No. 07-CV-0098,

2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007). Here, plaintiff claims that he was confined to the Jumpsuit as a result of the misbehavior report but fails to assert any Due Process claims related to disciplinary hearing related to the misbehavior report.

14   The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, the substantial-burden test will be applied in this matter.

15   For the reasons discussed in Part VI(B), *supra*, plaintiff's allegation that the imposition of the Jumpsuit violated DOCCS' directives, *see* Compl. at, 31-34, is dismissed.

16   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

17   "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2371018

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Rashawn ARCHA, Plaintiff,

v.

The State of NEW YORK; NYS Department of Correctional Services the Warden of

Auburn Correctional Facility; Correction Officer Giboo; Correction Officer Roberts;

Correction Officer Webber; and Correction Officers John Doe I-V, Defendants.

9:24-CV-677 (FJS/ML)

|

Signed August 14, 2025

**Attorneys and Law Firms**

JOHN KOUROUPAS, ESQ., GREENBERG & STEIN, PC, 360 Lexington Avenue, Suite 1501, New York, New York 11361, Attorneys for Plaintiff.

ELIZABETH V. LOMBARDI, ESQ., OFFICE OF THE NEW YORK, STATE ATTORNEY GENERAL, 300 South State Street, Suite 300, Syracuse, New York 13202, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

SCULLIN, Senior Judge

## I. INTRODUCTION

**\*1**  Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against Defendants seeking monetary damages. *See* Dkt. No. 1. [1]  Currently pending before the Court is a motion to dismiss on behalf of Defendants the State of New York, NYS Department of Correctional Services, the Warden of Auburn C.F., and Giboo pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. [2]  *See* Dkt. Nos. 9, 17. Plaintiff opposes Defendants' motion. *See* Dkt. No. 16.

## II. BACKGROUND [3]

At all times relevant to the complaint, Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn C.F."). *See* Complaint at ¶ 30. On June 1, 2022, at approximately 2:30 p.m., a search team entered Plaintiff's cell and demanded that Plaintiff "remove his bedsheet from his bed [and remove] his necklace and his glasses." *See id.* at ¶¶ 35-36. Plaintiff complied with the directives. *See id.* at ¶ 36. "[A]n officer" punched Plaintiff in the face and "multiple" officers "assaulted" him. *See id.* An officer put his hand in Plaintiff's "rear" and another officer "grab[bed]" Plaintiff by the hair and "bang[ed]" his head against the metal bed frame. *See id.* at ¶ 36. "A correction officer" placed his knee on Plaintiff's back while attempting to handcuff him. *See id.* Plaintiff identified the "assaulting officers" as Giboo, Roberts and Webber. *See id.*

"Correction Officers" filed fabricated reports and failed to provide Plaintiff "with the proper medical treatment." *See* Complaint at ¶ 36. Plaintiff filed a PREA complaint "concerning the sexual acts of the officers." *See id.* Plaintiff was transferred to the

Special Housing Unit ("SHU") and endured "harsh conditions." *See id.* Plaintiff requested medical treatment, but "officer[s] lied and said that [Plaintiff] refused to seek further treatment." *See id.*

## III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), insufficient service of process under Rule 12(b)(5), and failure to state a claim under Rule 12(b)(6). *See* Dkt. Nos. 9, 17.

### A. Legal Standards

#### 1. *Rule 12(b)(1)*

**\*2**  "Dismissal for lack of subject matter jurisdiction is proper 'when the district court lacks the statutory or constitutional power to adjudicate' a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff who asserts subject matter jurisdiction " 'has the burden of proving by a preponderance of the evidence that it exists.' " *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In resolving a motion to dismiss under Rule 12(b)(1), " 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.' " *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "Rule 12(b)(1) is the proper vehicle to raise justiciability (standing, mootness, and ripeness), as well as Eleventh Amendment immunity." *New York State Rifle & Pistol Ass'n, Inc. v. James*, No. 1:22-CV-907 (MAD/PJE), 2025 WL 553423, \*2 (N.D.N.Y. Feb. 18, 2025) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 1350 (4th ed.)).

#### 2. *Rules 12(b)(2) and 12(b)(5)*

"Rule 12(b)(2) 'permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery.' " *Finn v. New York*, 3:22-CV-721, 2022 WL 13802622, \*5 (N.D.N.Y. Oct. 21, 2022), *aff'd*, 2023 WL 7013414 (2d Cir. 2023) (quotation omitted). " 'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.' " *Yerdon v. Poitras*, No. 1:21-CV-0565 (LEK/ML), 2022 WL 798271, \*1 (N.D.N.Y. Mar. 16, 2022) (quotation omitted).

Rule 12(b)(5) authorizes a defendant to move for pre-answer dismissal of a pleading for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). "When a defendant makes a Rule 12(b)(5) motion, it is the plaintiff's burden of proof to establish its service of process was adequate." *Hertzner v. U.S. Postal Serv.*, No. 05-cv-2371 (DRH) (ARL), 2007 WL 869585, \*3 (E.D.N.Y. Mar. 20, 2007) (citation omitted). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

As is relevant in this case, "where 'a court relies on pleadings and affidavits, rather than having a "full-blown evidentiary hearing," the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant.' " *Traver v. Officine Meccaniche Toshci SpA*, 233 F. Supp. 2d 404, 408 (N.D.N.Y. 2002) (quoting [*United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002)] (citation omitted)). In considering a motion to dismiss for lack of personal jurisdiction over a defendant, the court must construe the pleadings and affidavits in the light most favorable to the plaintiff and must resolve all factual issues in the plaintiff's favor. *See Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 255 (N.D.N.Y. 2016) (citation omitted). " 'In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [the Court] presume[s] that [Defendants were] properly served with the complaint.' " *Almukthar v. S&A Trading USA, Inc.*, No. 1:21-CV-0190 (GTS/CFH), 2021 WL

5883416, *5 (N.D.N.Y. Dec. 13, 2021) (quoting *Old Repub. Ins. Co. [v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54,] 57 [(2d Cir. 2002)]) (other citation omitted).

### 3. *Rule 12(b)(6)*

**\*3**  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted)). However, this " 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting [*Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)]).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is " 'plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 [(2007]) (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require 'enough facts to state a claim to relief that is plausible ....' " (quotation and citation omitted)). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (citation omitted).

"Under Rule 12(d), a court must convert a motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56 where 'matters outside the pleadings are presented to and not excluded by the court' and where all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.' " *Briglin v. Hurley*, No. 9:23-cv-1001 (BKS/TWD), 2024 WL 3828234, *9 n.8 (N.D.N.Y. Aug. 15, 2024). A court may, however, consider matters outside the pleadings without triggering the summary judgment standard where those matters are

> (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any manner of which the court can take judicial notice for the factual background of the case.

*Myers v. Camden Cent. Sch. Dist.*, No. 5:10-CV-1167, 2012 WL 2921574, *4 (N.D.N.Y. July 17, 2012) (footnote omitted).

In opposition to Defendants' motion, Plaintiff submitted documents, none of which were attached as an exhibit to, or incorporated by reference in, or an integral part of the complaint. Since Plaintiff's submissions are beyond the pleadings, the Court declines to treat this motion as a motion for summary judgment and finds that they must be excluded. *See* Fed. R. Civ. P. 12(d).

### B. Plaintiff's claims against the State of New York and DOCCS

Defendants argue that the Court should dismiss Plaintiff's claims against Defendants State of New York and DOCCS pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Eleventh Amendment bars suits against the states and their agencies. *See* Dkt. No. 9-3 at 9-10. Plaintiff does not oppose this portion of Defendants' motion. *See* Dkt. No. 16 at 7. Therefore, the Court grants Defendants' motion to dismiss the claims against Defendants State of New York and DOCCS.

## C. Lack of personal jurisdiction and insufficient service of process

**\*4** Rule 4(e)(1) of the Federal Rules of Civil Procedure permits a plaintiff to serve an individual defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(e)(1). Pursuant to Section 308(2) of the New York Civil Practice Law and Rules ("CPLR"), a natural person may be served

> by delivering the summons within the state of a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential[.]"

N.Y. C.P.L.R. § 308(2).

" 'New York courts have construed "actual place of business" to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business.' " *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595 (SJF) (ARL), 2014 WL 2863224, \*14 (E.D.N.Y. June 19, 2014) (quotation and other citations omitted).

Plaintiff's proof of service on Defendant Giboo states that the process server effected service on "Correction Officer Giboo at C/O Auburn Correctional Facility" by delivering the summons and complaint to an "authorized agent, a person of suitable age and discretion" at "the usual place of abode [sic] of Correction Officer Giboo within the state." *See* Dkt. No. 4. The "Comments" section that the process server completed states that "Officer Anthony Smith, Liaison Officer, states that the defendant is not an active officer at Auburn Correctional." *See id.* The summons and complaint were also mailed to Auburn Correctional Facility in a 1st Class postpaid properly addressed envelope marked "Personal and Confidential." *See id.*

Here, "[t]he affidavit[ ] of service of plaintiff's process server constitute[s] prima facie evidence that copies of the summons and complaint were properly delivered[.]" *Colvin*, 2014 WL 2863224, at \*14; *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (Summary Order) ("A process server's sworn statement of service creates a presumption that service has been effectuated." (citing *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301 F.3d 54, 57 (2d Cir. 2002))). Defendants argue that Defendant Giboo was not property served because Auburn C.F. is not his actual place of business and that Officer Smith was not authorized to accept service on Defendant Giboo's behalf. *See* Dkt. No. 9-3 at 12. However, Defendant Giboo failed to submit a sworn affidavit attesting to the fact that he was not served and had no notice of the lawsuit. Instead, Defendants rely solely on an affidavit from Liaison Officer Smith, wherein he states that he "informed the process server that [...] Officer Giboo is not an active officer at Auburn Correctional Facility" and his claim that "the facility has not received any first-class mail addressed to Officer Giboo[.]" *See* Dkt. No. 9-2 at ¶¶ 5, 7. Officer Smith's assertions "fail to carry" Defendants' burden of proving that proper service did not occur. *See 77 Charters, Inc. v. SYC Realty LLC*, No. CV 2010 01681 (SLT) (MDG), 2012 WL 1077706, \*4 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012). Officer Smith's affidavit "merely raise[s] an issue of fact that cannot be resolved on a motion pursuant to Rules 12(b)(2) or (5) of the Federal Rules of Civil Procedure absent an evidentiary hearing, which has not been requested" and is not warranted because Defendant Giboo failed to provide an affidavit denying service. *See Colvin*, 2014 WL 2863224, at \*14; *see also Tile, Inc. v. CellnTell Distr., Inc.*, No. 1:20-CV-0428 (FJS/DJS), 2021 WL 2682253, \*4 (N.D.N.Y. June 30, 2021) (reasoning that an evidentiary hearing was not necessary because defendant did not provide a "sworn denial of receipt of service"). On the record before the Court, service of the summons and complaint on Defendant Giboo was proper. *See Logan v. World Luxury Cars,*

*Inc.*, No. 1:15-CV-00248 (ENV) (PK), 2022 WL 2466834, \*6 (E.D.N.Y. Mar. 30, 2022), *report and recommendation adopted*, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023).

**\*5** Accordingly, the Court denies this portion of Defendants' motion to dismiss. *See Gonzaga Cortez v. Hang Lin*, No. 19 Civ. 0905 (LGS), 2019 WL 4256363, \*4 (S.D.N.Y. Sept. 9, 2019) (denying motion to dismiss for lack of service where the defendant failed to submit an affidavit regarding his lack of notice.)

### D. Claims against Defendant Warden at Auburn C.F.

Defendants move to dismiss the claims against Defendant Warden at Auburn C.F. pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal involvement. *See* Dkt. No. 9-3 at 13-16. Plaintiff does not oppose dismissal of the complaint against this Defendant. *See* Dkt. No. 16 at 3 n.1.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims against Defendant Warden at Auburn C.F.

### E. Fourth and Fourteenth Amendment Claims

Defendants move to dismiss Plaintiff's Fourth and Fourteenth Amendment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff was a convicted prisoner at the time of the alleged incidents; and, thus, his claims fall under the Eighth Amendment. *See* Dkt. No. 9-3 at 16-18. Plaintiff does not oppose dismissal of his Fourth and Fourteenth Amendment claims. *See* Dkt. No. 16 at 3 n.1.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Fourth and Fourteenth Amendment claims.

### F. Eighth Amendment Excessive Force and Failure to Intervene Claims

Defendants argue that Plaintiff's Eighth Amendment claims against Defendant Giboo should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the complaint "contains impermissible group pleadings" and fails to provide Defendant Giboo with "fair notice" of the claims against him. *See* Dkt. No. 9-3 at 18-24.

"The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated 'contemporary standards of decency.' " *Witherspoon v. Corey*, 9:24-CV-0296 (MAD/DJS), 2025 WL 1836435, \*5 (N.D.N.Y. July 3, 2025) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992))). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 321-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at [832], 114 S. Ct. at 1976). Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (citation omitted); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers (citations omitted)).

**\*6** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (other citations omitted)). As the Supreme Court has noted, a defendant may only be held accountable for

his actions under Section 1983. *See Iqbal*, 556 U.S. at 683, 129 S.Ct. 1937 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[T]here's no special rule of liability for supervisors."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937).

Additionally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include sufficient allegations to provide "each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' " *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Summary Order) (quotation and other citation omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). " '[A] plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations.' " *5465 Route 212, LLC v. New York State Dep't of Transp.*, No. 1:19-cv-01510 (BKS/DJS), 2020 WL 6888052, *9 (N.D.N.Y. Nov. 24, 2020) (quotation omitted); *see also Lawson v. Ruskin*, No. 08-CV-321 (JS) (WDW), 2008 WL 1902218, at *2 (E.D.N.Y. Apr. 25, 2008) (explaining that "lumping all Defendants ... together without specifying what actions were taken, and by whom, to violate his rights" was insufficient to meet pleading requirements). However, " '[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.' " *Doe v. NYS Off. of Child. & Fam. Servs.*, No 1:20-cv-01195 (BKS/CFH), 2021 WL 2826457, *11 n.11 (N.D.N.Y. July 7, 2021) (quotation omitted). " '[G]roup pleading is not per se improper'; it is only impermissible when it deprives a defendant of adequate notice." *Foskey v. Northrup*, No. 9:20-CV-0504 (LEK/TWD), 2021 WL 1146217, *3 (N.D.N.Y. Mar. 25, 2021) (quotation omitted).

In this case, the complaint contains the date, time, and location of the alleged use of force incident. *See* Complaint at 6-7. Plaintiff alleges that the "assaulting officers are believed to be Correction Officers Giboo, Roberts and Webber." *See id.* at 7. The allegations that Defendants "were present during, or participated in, the alleged use of force are sufficient at the pleading stage to allow a plausible inference that they [all] participated in the alleged use of force and failed to intervene." *See Mehalick v. Stowell*, No. 9:24-cv-00775 (BKS/TWD), 2024 WL 4930660, *5 (N.D.N.Y. Dec. 2, 2024) (reasoning that the plaintiff's failure to identify which defendant was allegedly involved in the use of force and which defendant allegedly failed to intervene is not fatal to the plaintiff's claims) (citing, *inter alia, Johnson v. Mason*, No. 9:22-cv-590, 2024 WL 396679, at *7, 2024 U.S. Dist. LEXIS 18356 (N.D.N.Y. Feb. 2, 2024) ("Where a plaintiff has properly alleged a constitutional violation, he is entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene.")); *see also Doe*, 2021 WL 2826457, at *11 n.11 (reasoning that the proposed pleading alerted the defendants that excessive force claims were asserted against them and outlined the conduct in which they are alleged to have engaged). Upon review, the Court finds that the complaint sufficiently alerts Defendant Giboo and the other officers that Plaintiff is asserting "identical claims" against each Defendant. " '[I]n situation[s] involving alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so.' " *O'Brien v. City of Syracuse*, No. 5:22-cv-948 (MAD/TWD), 2023 WL 6066036, *7 (N.D.N.Y. Sept. 18, 2023) (quoting *Bryant v. Monroe Cnty.*, No. 19-cv-6474, 2022 WL 119184, *10 (W.D.N.Y. Jan. 12, 2022)). Although Plaintiff will be required to prove what role each Defendant took to prevail on the merits of an Eighth Amendment claim, at this early stage of the litigation, Plaintiff has plausibly alleged Eighth Amendment claims against Defendant Gibbo.

**\*7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Eighth Amendment claims against Defendant Giboo.

### G. Conspiracy Claims and "Hate Crimes"

Defendants move to dismiss Plaintiff's conspiracy claims and "any perceived claim that defendants committed a hate crime." *See* Dkt. No. 9-3 at 24-27. Plaintiff does not oppose dismissal of these claims. *See* Dkt. No. 16 at 3 n.1.

According, the Court grants Defendants' motion to dismiss these claims.

**H. Deliberate Medical Indifference, Retaliation, and Due Process Claims**

In his opposition to Defendants' motion, Plaintiff, for the first time, asserts a cause of action for deliberate medical indifference, retaliation, and due process. *See* Dkt. No. 16 at 12-15. In their Reply Memorandum of Law, Defendants argue that these claims are subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 17 at 9-14.

The complaint contains two causes of action: excessive force and failure to intervene. *See* Complaint at 8-9. "The Court will not consider [a] cause of action raised for the first time in opposition to the motion to dismiss." *Cooper v. Slice Tech., Inc.*, No. 17-CV-7102 (JPO), 2018 WL 2727888, *5 n.3 (S.D.N.Y. June 6, 2018); *see also EklecCo NewCo LLC v. Town of Clarkson*, No. 16-CV-6492 (NSR), 2018 WL 3023159, *7 n.4 (S.D.N.Y. June 18, 2018) (refusing to consider claims "articulated for the first time in [the] plaintiff's opposition"). Plaintiff cannot "amend [his] complaint [by] asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citations omitted).

Even assuming the complaint contained causes of action for deliberate medical indifference, retaliation, and violations of Plaintiff's due process rights, these claims are subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1. Deliberate indifference

The Eighth Amendment mandates that prison officials provide adequate medical care to inmates. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.' " *Id.* (quotation omitted). A deliberate medical indifference claim has objective and subjective components. *See id.* "Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain exists.' " *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation omitted). As to the subjective element, an official acts with deliberate indifference when he " 'know[s] of and disregard[s] an excessive risk to inmate health or safety[.]' " *Hill*, 657 F.3d at 122 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

In the complaint, Plaintiff alleges that "officers and medical staff" failed to provide "proper medical treatment." *See* Complaint at 7. Plaintiff also claims that he "requested medical attention and officer [sic] lied and said the [plaintiff] refused to seek further treatment." *Id.* Even liberally construed, the complaint fails to plead facts to satisfy the objective and subjective components of a deliberate medical indifference claim. To wit, Plaintiff does not describe his physical symptoms or medical conditions in any manner. Indeed, the complaint lacks any facts related to what injuries, if any, Plaintiff sustained as a result of the use of force incidents. Moreover, Plaintiff has not pled facts related to what medical treatment he requested, when he requested that treatment, and Defendants' response, if any, to his requests. The allegations in the complaint do not plausibly allege that Defendants acted deliberately in denying Plaintiff's request for medical attention.

**\*8** Accordingly, to the extent that the complaint could be read to include deliberate medical indifference claims, the Court dismisses those claims.

### 2. Retaliation

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). The Second Circuit has stated that courts must approach retaliation claims "with skepticism and particular care" since "virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491 (citations omitted).

The Second Circuit has "defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill*, 389 F.3d at 381 (quotation omitted). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id.* "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). Although there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980). *But see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

The complaint lacks facts demonstrating that any Defendant took adverse action in response to protected speech or conduct. In fact, the complaint does not contain the word "retaliation." *See generally* Complaint. Even assuming Plaintiff engaged in protected speech when he filed a PREA complaint, *see Daum v. Racette*, No. 9:15-CV-1083 (DNH/DJS), 2018 WL 7291421, *15 (N.D.N.Y. Nov. 5, 2018), *report and recommendation adopted*, 2019 WL 610385 (N.D.N.Y. Feb. 13, 2019), the complaint lacks any facts regarding whom the PREA was filed against, when it was filed, how it was filed, or how the named Defendants became aware of the PREA complaint.

As Plaintiff has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim of retaliation. *See Faulk v. Fisher*, 545 F. App'x 56, 59 (2d Cir. 2013) (Summary Order) (reasoning that the plaintiff failed to produce evidence suggesting that the defendants were "motivated by, or even aware of," his protected conduct).

**\*9** Accordingly, to the extent that the complaint could be read to include retaliation claims, the Court dismisses those claims for failure to state a claim.

### 3. Due process

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must establish that he both (1) " 'possessed a liberty interest' " and (2) was " 'deprived ... of that interest as a result of insufficient process.' " *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted)).

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). In making this determination, courts must consider, "among other things, the duration and conditions of confinement." *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (citation omitted). The conditions of confinement are to be compared " 'to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.' " *Davis v. Barrett*, 576 F.3d 129, 134 (2d Cir. 2009) (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999)).

An inmate is entitled to the due process procedures outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "These procedures include a disciplinary hearing and written notice of the charges at least twenty-four hours in advance of that hearing; the opportunity to present witnesses and documentary evidence before an impartial hearing officer as long as doing so will not jeopardize prison safety and security; and a written statement including evidence relied on by the hearing

officer in reaching his or her decisions and the reasons for the disciplinary action." *Allen v.* Shelley, No. 9:24-CV-0866 (GTS/DJS), 2024 WL 4474821, *2 (N.D.N.Y. Sept. 24, 2024) (citing *Wolff*, 418 U.S. at 564-66, 94 S.Ct. 2963) (other citation omitted).

In this matter, Plaintiff alleges he was "wrongfully placed in SHU corrective custody" and endured "harsh" conditions. *See* Complaint at 7. The complaint does not suggest that he was deprived of a liberty interest. The complaint lacks facts related to when Plaintiff was confined to the SHU, how long Plaintiff was confined in the SHU, and specific facts related to the conditions he endured. Furthermore, even assuming that Plaintiff was derived of a liberty interest, the complaint lacks facts related to any disciplinary hearing, including the name of the presiding officer, the date of the hearing, the evidence presented, or the outcome, to suggest that Plaintiff was denied due process.

Finally, the complaint lacks facts that plausibly suggest that Defendants were personally involved in any due process violation. Plaintiff does not claim that he complained about the conditions to any named Defendant and what response, if any, he received. Plaintiff also does not allege that any named Defendant presided over a disciplinary hearing or issued a decision confining him to SHU.

**\*10**  Accordingly, to the extent that the complaint could be read to include due process claims, the Court dismisses those claims for failure to state a claim.

## IV. CONCLUSION

After reviewing the entire file in this case, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss, *see* Dkt. No. 9, is **GRANTED IN PART AND DENIED IN PART** as set forth herein; and the Court further

**ORDERS** that all claims against Defendants State of New York and DOCCS are **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that the following claims are **DISMISSED WITHOUT PREJUDICE** with leave to amend: (1) claims against the Warden of Auburn C.F., (2) Fourth Amendment claims; (3) Fourteenth Amendment claims; (4) conspiracy claims; (5) claims related to "hate crimes"; (6) Eighth Amendment deliberate medical indifference claims; (7) retaliation claims; and (8) due process claims. If Plaintiff intends to file an amended complaint to include any/all of the claims that the Court has dismissed without prejudice, he must do so no later than **September 29, 2025**. Any claims that the Court has dismissed without prejudice that Plaintiff does not include in any amended complaint he does file will be dismissed **with prejudice** without further Order of this Court; and the Court further

**ORDERS** that the Clerk of the Court shall terminate the following Defendants from the Docket for this case: (1) State of New York; (2) DOCCS; and (3) the Warden, Auburn Correctional Facility; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2371018

**Footnotes**

1       In the caption of the complaint, Plaintiff identified "NYS Department of Correctional Services The Warden of Auburn Correctional Facility" as a defendant. The New York State Department of Corrections and Community Supervision ("DOCCS") and the Warden of Auburn Correctional Facility are two separate entities. Thus, the Court will construe the complaint as asserting claims against both DOCCS and the Warden of Auburn Correctional Facility.

2       No affidavit of service has been filed as to Defendants Webber or Roberts, and, consequently, no appearance has been entered on their behalf. Plaintiff has not yet identified the Doe Defendants.

3       The facts are drawn from Plaintiff's complaint. For purposes of this motion, the Court assumes that all the facts in the complaint are true and draws all reasonable inferences in Plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

---

**End of Document**                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 56 of 121

2017 WL 4280683
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael CALVIN, Plaintiff,

v.

Keith SCHMITT; Anthony Annucci; Anne Marie Sullivan; Maureen Bosco; Williams Collins, Defendants.

No. 15 CV-6584 (NSR)
|
Signed 07/07/2017

**Attorneys and Law Firms**

Michael Calvin, Comstock, NY, pro se.

David John Galalis, Julinda A. Dawkins, New York State Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** Plaintiff Michael Calvin ("Plaintiff"), proceeding *pro se,* brought this action pursuant to 42 U.S.C. § 1983 against Department of Corrections and Community Supervision ("DOCCS") Acting Commissioner Anthony Annucci ("Annucci"); Office of Mental Health ("OMH") Commissioner Dr. Ann Marie T. Sullivan ("Sullivan"); Former Executive Director of Central New York Psychiatric Center ("CNYPC") Maureen Bosco ("Bosco"); Lieutenant Keith Schmitt ("Schmitt"); and Former Green Haven OMH Unit Chief William Collins ("Collins") (the "Defendants," collectively). Plaintiff alleges that Defendants violated his rights under the Eight Amendment of the United States Constitution by tampering with his food. In particular, Plaintiff states that Schmitt has been violating his rights since 2011; that Collins was aware of Schmitt's actions and failed to report him to the Inspector General; and that Bosco and Sullivan also failed to act upon learning about Schmitt's actions. Annucci is not directly mentioned in the complaint for either contributing or neglecting to do something that allegedly perpetuated the violation of Plaintiff rights. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff has failed to state a claim for relief. For the following reasons, Defendant's motion to dismiss is GRANTED.

**BACKGROUND** [1]

According to Plaintiff, since July of 2011 Defendant Schmitt has violated his rights by tainting his food with bodily fluids. (Compl. Doc. 2 at 10; Compl. Doc. 2-2 at 4). Within his complaint, Plaintiff describes a number of instances in which Schmitt contaminated his food. [2]

On May 1, 2013, Plaintiff asserts that Schmitt "influenced" an inmate to place "bodily fluids" in his food. (Compl. Doc. 2 at 4). He consumed the tainted food which caused him to be ill and go to the hospital. (*Id.*). Plaintiff admits, though, that he did not file a grievance concerning this incident. (*Id.*).

Plaintiff describes several other incidents that occurred in 2014. In a letter to Assistant Attorney General Michael McCartin, Plaintiff alleges that on March 20 Schmitt instructed an unidentified doctor in Fishkill Correctional Facility, where the Plaintiff

Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 57 of 121

was receiving medical attention, to hurt him during a procedure. (Compl. Doc. 2-2 at 10). Plaintiff states that the doctor complied with Schmitt's orders by causing Plaintiff pain when he was injecting his back with a needle. (*Id.* at 10-11).

On August 13, 2014, Plaintiff alleges that he sustained injuries to the left side of his mouth after ingesting a contaminated "coffee cake" in the "mess hall" of the Green Haven Correctional Facility. (Compl. Doc. 2 at 2-4). According to the Plaintiff, Schmitt influenced an unknown inmate, through an unknown officer, to contaminate his coffee cake with "bodily fluids." (*Id.* at 4). After consuming said coffee cake, Plaintiff became ill and the side of his mouth began to "burn" until he went to bed at approximately 9 PM. (*Id.* at 4-5). The following morning, Plaintiff woke up with a swollen face and experiencing pain inside of his mouth. (*Id.* at 5).

**\*2** About two weeks later, Plaintiff filed a grievance where he indicated the aforementioned facts from August 13, 2014, and requested that Schmitt stop placing "things" in his food. (Compl. Doc. 2-1 at 25-26). The Inmate Grievance Resolution Committee (IGRC) purportedly concluded that the Plaintiff should be allowed a "Feed Up Short" position with the permission of the area supervisor, but were split in regards to investigating the allegations made against Schmitt. (*Id.* at 27).

Plaintiff appealed the above grievance to the Superintendent, but his grievance was denied because the "PA P," [3] presumably medical staff, evaluated Plaintiff and concluded that he suffered an allergic reaction. (*Id.* at 28). Again, Plaintiff appealed this decision contending that he was not allergic to coffee cake because he had consumed at least nine pieces of coffee cake since the August 13 incident and he did not get sick. (*Id.* at 29). Furthermore, in his appeal documents Plaintiff contends other instances of inmates placing "cold" on his bread and bodily fluids on his cornbread. (*Id.* at 31). In a letter dated October 16, 2014 to Superintendent William Lee, Plaintiff wrote that inmates wiped their hands on his bread after wiping their noses with it on two separate occasions on October 8, 2014. (*Id.*). Also, inmates placed "bodily fluids" in his cornbread on October 13, 2014 which caused him to get sick. (*Id.*).

In a hearing on April 1, 2015, the Central Office Review Committee (CORC) unanimously denied Plaintiff's grievance. (*Id.* at 33). During the hearing, CORC indicated that the Plaintiff suffered an allergic reaction but the cause could not be determined. (*Id.*). CORC also noted that Schmitt denied tampering with Plaintiff's food or conspiring against him. (*Id.*). In addition, the report notes that Plaintiff has been diagnosed with a paranoid type of Schizophrenia, and that his request to be assigned to the "Feed Up Short" position was reviewed and denied by the ICP treatment team. (*Id.*). CORC also concluded that it was not "presented with any compelling reason to revise present procedures or with sufficient evidence of malfeasance by staff." (*Id.*).

In another letter to Superintendent Lee, dated October 23, 2014, Plaintiff recounts an instance that occurred on October 17, 2014, where an inmate went into his cell and tainted his peanut butter with bodily fluids. (*Id.* at 34-39). Plaintiff alleges that the peanut butter was contaminated because the contents of the jar seemed to be tampered with and, afterwards, he became ill upon consuming the peanut butter. (*Id.* at 36). Almost four months later, in a letter dated February 18, 2015 and addressed to Maureen Bosco, Plaintiff states that the incident involving his contaminated peanut butter was in fact perpetuated by Schmitt who persuaded an officer to influence two inmates to put feces in Plaintiff's peanut butter. (*Id.* at 14-15). Plaintiff elaborates by stating that the DOCCS Senior Counselor of Green Haven, Ms. E. Knapp, was herself swayed by Schmitt to give the peanut butter spread to Plaintiff. (*Id.* at 18). According to Plaintiff, the motive behind this action was for Schmitt to then have Officer Menna persuade the two inmates, J-6-5 cell and J-6-17 cell, to place feces in his peanut butter. (*Id.*). He then proceeds to state that all of the counselors and OMH staff that work in the ICP program are aware of what Schmitt is doing, but that they are unwilling to inform the Inspector General Office. (*Id.* at 18-19).

**\*3** Within that same letter, Plaintiff alleges that on October 23, 2014, Officer Tokart came to his cell with a tray of food and told him that the tray was from Schmitt. (*Id.* at 14). Then Officer Tokart threaten to place the Plaintiff in the "box" and ensure that every meal he gets contains urine, if he does not stop talking about the feces in the peanut butter. (*Id.*). Later that evening, Plaintiff alleges that Officer Tokart threatened him once again and told him that "they" are able to kill him at any time because Plaintiff is a "crazy person." (*Id.* at 15). Officer Tokart allegedly reiterated what he previously said about putting him in the "box" and making him relocate facilities if he did not stop talking about the feces in his peanut butter. (*Id.*). After this exchange,

Plaintiff contends that Officer Tokart hit him in the back of his head, which caused him to bleed from his nose the following morning. (*Id.* at 16-17). [4] He also mentions that he heard that Officer Tokart "will set [him] up with weed, drugs, or weapons if [Plaintiff] wrote him up." (*Id.* at 21).

In 2015, Plaintiff recalls similar incidents in which Schmitt contaminated his food. (*Id.* at 20). On January 17, Plaintiff alleges that one of his waffles was injected with blood by an unnamed inmate who was influenced to do so by an unnamed officer who himself was persuaded to do so by Schmitt. (*Id.*). In a different day, January 20, Plaintiff alleges that Schmitt, similar to the events above, influenced an unnamed officer who then influenced an unnamed inmate to "put cold from his nose" into Plaintiff's evening meal. (*Id.*). About two weeks later, on February 5, Plaintiff alleges that he consumed four slices of bread that had been tainted with feces by an unnamed inmate that was persuaded to do so by Schmitt. (*Id.*). No allegations of injury were alleged to have resulted from these events.

On March 10, 2015, the Plaintiff states that Schmitt called Great Meadow Correctional Facility and told someone, presumably an unidentified staff member, to urinate in the Plaintiff's meals. (Compl. Doc. 2-2 at 12). Plaintiff contends Schmitt's orders were followed because he vomited after consuming several meals at Great Meadow. (*Id.*). About a month later, on April 7, Officer Tokart allegedly "knocked-out" the Plaintiff because of Schmitt. (Compl. Doc. 2-1 at 38). Furthermore, Plaintiff contends that Officer Bell and three other male officers witnessed this interaction, and on April 9, two days after the incident, he showed his injuries to Mr. Lahey. (*Id.*).

In two separate letters, one directed to the Inspector General and the other to ICP Supervisor Collins, Plaintiff claimed that he stopped consuming his food because Schmitt continued to tamper with his meals. (Compl. Doc. 2-2 at 1-5). As an example, he stated that on May 14 an unnamed inmate placed bodily fluids on his food after Schmitt persuaded an officer to instruct the inmate to contaminate the Plaintiff's meal. (*Id.*). In a letter to Mr. Collins, the Plaintiff indicated that he has not been eating enough food because he is picking and choosing what to eat since Schmitt has been tainting his meals. (*Id.* at 3-4). Additionally, Plaintiff listed other dates in which his food was tainted: May 28, May 30, June 4, June 8, June 29, and July 27. (*Id.* at 6-7, 12). Like the previous cases, Plaintiff alleges that Schmitt instructed an unnamed officer, who then influenced an unnamed inmate to place semen, feces, or other bodily fluids in the Plaintiff's meals. (*Id.*).

According to Plaintiff, the staff from Green Haven has treated him poorly because they blame him for the lock-down that occurred in Green Haven in 2000. (Compl. Doc. 2-1 at 29). He contends "lieutenants and captains throughout the state of New York are out to get me for the incident in Green Haven Correctional Facility in 2000." (Compl. Doc. 2 at 18). Plaintiff states that the lock-down occurred because he "made friends with over a thousand inmates" and a group of these inmates were inspired by his action, [5] which led them to "lock the facility down and ask[ ] the governor of New York State at the time for good time and better medical treatment...." (*Id.*). Because of this incident, Plaintiff suggests that the staff of Green Haven have been persuading inmates to contaminate his meals with bodily fluids. (Compl. Doc. 2-1 at 29).

**\*4** Plaintiff seeks relief against Defendants in their individual and official capacities. As to Schmitt, Plaintiff requests an injunction to stop him from continuing to taint his food, substantial monetary damages from Schmitt and the other Defendants, and to be released from the correctional system.

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its facts." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). *In Ashcroft v. Iqbal*, the Supreme Court established a two-prong test for courts to decide a motion to dismiss. 556 U.S. 662, 679 (2009). First, a trial court must identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* While the court must accept all of the plaintiff's allegations as true, it cannot accept "legal conclusions" as true. *Id.* at 678. Second, when a complaint contains well-pleaded allegations, "a court should

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 59 of 121

Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly,* 550 U.S. at 556-57) (internal citations omitted).

Because the plaintiff in this case is a pro se litigant, the Court is obligated to construe the pleadings liberally. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). The Court must also interpret the pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of N.Y.,* 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). However, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor,* 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). The presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris,* 572 F.3d at 72 (quoting *Iqbal,* 556 U.S. 662) (internal quotations marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief—mere conclusory statements are insufficient. *Twombly,* 550 U.S. at 555.

## DISCUSSION

### I. Section 1983 Claims

Defendants first argue that the present action should be dismissed because Plaintiff failed to plead plausible facts that would give rise to a § 1983 claim. However, Defendants focus solely on the August 13, 2014 incident and fail to consider the other documents and incidents described in the complaint. [6] Taking into consideration the allegations asserted in the entirety of the complaint, Plaintiff's allegations fails to plausibly give rise to a § 1983 claim.

**\*5** In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a deprivation of a right secured by the Constitution or laws of the United States, and (2) that the person who deprived plaintiff of that right acted under the color of state of law. *West v. Atkins,* 487 U.S. 42, 48 (1988). [7] As discussed further below, Plaintiff's allegations fails to give rise to a claim of cruel and unusual punishment.

### a. Eighth Amendment Violation

As to the first prong of a § 1983 claim, Plaintiff alleges his Eighth Amendment right was violated because the contamination of his food constitutes a cruel and unusual punishment. "The Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.' " *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980)). For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.' " *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)) (citations and internal quotation marks omitted).

### i. Objective Element

For the first element—the objective requirement, the Supreme Court has stated, "while the Constitution 'does not mandate comfortable prisons,' prisoners may not be denied 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 349 (1981)). To establish the objective element, a plaintiff must allege that "the conditions of

Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 60 of 121

his confinement violate contemporary standards of decency." *See Id.* The State is obligated to provide prisoners with "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32 (1993). In food tampering claims a plaintiff must allege that he suffered an actual injury, "the mere allegation of food tampering alone [ ] is insufficient to establish a claim under the Eighth Amendment." *Harris v. Ashlaw,* No. 9:07-CV-0358(LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007). *See M.F. v. Reish,* No. 95-CV-4904(SAS), 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (holding that a plaintiff must allege a "distinct and palpable injury").

Taking Plaintiff's allegations as true, the objective element is not satisfied because Plaintiff's allegations failed to plausibly show that any of the named Defendants' actions constituted an Eighth Amendment violation. *See Guilbert v. Sennet,* 235 Fed. Appx. 823, 826 (2d Cir. 2007) (holding that a plaintiff must allege that a defendant's actions constituted a constitutional violation to satisfy the objective prong); *see, e.g., Gray v. Metropolitan Detention Ctr.,* No. 09-CV-4520, 2011 WL 2847430, at * 11 (E.D.N.Y. July 15, 2011) (finding that the objective prong was satisfied after plaintiff alleged that the named defendants tampered with the food); *Pagan v. Westchester Cty.,* No. 12-CV-7669(PAE)(JCF), 2014 WL 982876, at *16 (S.D.N.Y. Mar. 12, 2014) (holding that the complaint satisfied the objective prong by sufficiently stating defendants created a "serious deprivation"). While courts in the Second Circuit have recognized that the contamination of an inmate's food can be an Eighth Amendment violation, [8] courts have also granted a defendant's motion to dismiss if the plaintiff's allegations "are so conclusory and fantastic as to rise to the level of factually frivolous." *Brown v. Eagen,* No. 9:08-CV-0009(TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009). *See also Dorsey v. Fisher,* No. 9:09-CV-1011 (GLS)(DEP), 2010 WL 2008966, at *7 (N.D.N.Y. May 19, 2010) (dismissing a claim that alleges in "conclusory fashion" that prison officials have conspired to contaminate the plaintiff's food). Similar to *Brown,* where the plaintiff alleges that the defendants coordinated with inmates to contaminate his food with blood, feces, urine, semen and other chemicals, Plaintiff in this case has not plausibly alleged a sufficient connection between the named Defendants and the purported violations. 2009 WL 815724, at *2-5. Instead Plaintiff has made improbable allegations that both inmates and prison officers conspired to tamper with his food. In essence, Plaintiff has failed to allege a tangible link between the Defendants and the contaminated food. There are two incidents within the complaint wherein Plaintiff attempts to connect Defendant Schmitt to the tainted meals, but both fall short of plausibly demonstrating that Schmitt's actions caused the violations.

**\*6** In the "peanut butter incident" that transpired on October 17, 2014, Plaintiff tenuously connects the actions of two inmates[9] to Schmitt. In a convoluted tale, Plaintiff asserts that the sole purpose of him receiving the peanut butter was for Schmitt to contaminate it through the assistance of those to inmates. (Compl. Doc. 2-1 at 18). The other attempt to link Schmitt to the food contamination incident on October 23, 2014 involves Officer Tokart.[10] As he sat in his cell, Plaintiff contends he was threaten by Officer Tokart, and he surmises that Schmitt sent Officer Tokart to threaten Plaintiff with food tampering if he did not stop talking about the prior peanut butter incident. (*Id.* at 14). Under current case law, both incidents fall short of plausibly demonstrating that it was Schmitt's actions that caused Plaintiff's alleged Eighth Amendment violation. Food tampering cases in which a defendant's allegations have been deemed sufficient to meet the plausible standard require a connection between the defendant's actions, or omission, and the purported violation. *See, e.g., Thaxton v. Simmons,* No. 9:10-CV-1318 (MAD/RFT), 2012 WL 360104, at *1 (N.D.N.Y. Jan. 5, 2012) (noting that defendants would make direct comments to plaintiff regarding his food); *Pagan,* 2014 WL 982876, at *1 (alleging that defendants were responsible for proving the contaminated food to the plaintiff). *But see, e.g., Justice v. McGovern,* No. 11-CV-5076(JS)(WDW), 2012 WL 2155275, at *3 (E.D.N.Y. June 12, 2002) (dismissing a plaintiff's case because "Plaintiff failed to plead that [defendant's] threats resulted in any injury"). Because Plaintiff's allegations are conclusory in nature and based on nothing more than pure conjecture, they fail to meet the requisite objective prong standard. Of noteworthy, Plaintiff fails to assert that the food delivered by Officer Tokart was contaminated and resulted in an injury. Thus, Plaintiff does not indicate any wrongdoing by Schmitt or the other named Defendants.

ii. Subjective Element

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 61 of 121

Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)

As to the subjective requirement, the Supreme Court has noted that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Phelps*, 308 F.3d at 185-86 (quoting *Farmer,* 511 U.S. at 837). To satisfy the subjective element, a plaintiff must show "that the defendant acted with reckless disregard to a known substantial risk." *Thaxton*, 2012 WL 360104, at *4.

Drawing all reasonable inferences in favor of the Plaintiff and accepting the factual allegations set forth in the complaint as true, Plaintiff fails to satisfy the subjective element required to support an Eighth Amendment claim. The complaint falls short of adequately naming the defendants that contaminated Plaintiff's meals and, thus, cause the injuries that he alleges. The only tenuous connection that Plaintiff makes between the purported instances of contamination and any of the Defendants is his conclusory assertion that Schmitt orchestrated the tampering of his peanut butter on October 17, 2014 and the alleged interaction with Officer Tokart on October 23, 2014. In both instances, Plaintiff has failed to plausibly allege that Defendants were aware that their actions were creating an "excessive risk" to Plaintiff's health. Due to not alleging a plausible connection between Defendants and the contaminated food, it follows that Defendants were unaware of the tainted meals. *See, e.g., Pagan,* 2014 WL 982876, at *18 (finding that named defendants that had a connection to the alleged violations and were "generally aware" of the violations, was enough to satisfy the subjective prong). Comparable to *Hudson v. City of New York,* where the court found that the plaintiff's allegations only rise to the level of negligence because the complaint had not alleged that the defendants knew of the violations, the complaint does not adequately allege that Defendants knew that Plaintiff's food was being tampered. No. 15-CV-4920(PAC)(HBP), 2016 WL 3976399, at *6 (S.D.N.Y. June 23, 2016). *See also Calhoun v. N.Y.C. Dep't of Corr.*, No. 10-CV-182(LAK)(HBP), 2014 WL 144659, at *8 (S.D.N.Y. Jan. 14, 2014) (dismissing a complaint that fails to allege that any of the defendants were aware of the risk the plaintiff was being placed under). *But see, e.g., Varricchio v. Cty. of Nassau,* 702 F. Supp. 2d 40, 56 (E.D.N.Y. 2010) (finding that plaintiff satisfied the subjective prong after informing the defendants that his rights were being violated by their actions). For these reasons, Plaintiff has failed to satisfy the subjective prong.

### b. Personal Involvement

**\*7** Defendants argue that even if an Eighth Amendment violation exists, there is a lack of personal involvement. Courts in this Circuit have historically dismissed § 1983 claims at this stage of litigation if the complaint fails to demonstrate some tangible connection between the defendant and the alleged violation. *See, e.g.*, *White v. Olivar,* No. 11-CV-3725(GBD)(MHD), 2012 WL 2878641, at *2 (S.D.N.Y. July 12, 2012); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014); *Young v. Tryon,* No. 12-CV-6251(CJS), 2015 WL 309431, at *12 (W.D.N.Y. Jan. 23, 2015); *Dorsey*, 2010 WL 2008966, at *5. Because a plaintiff cannot rely on the principle of *respondeat superior*, [11] he must contend that the defendant had some direct involvement in the alleged violation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). *See also Austin v. Pappas,* No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) ("[A] Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered.") (internal quotations and citations omitted).

The personal involvement of supervisory officials may be established if: "(1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir. 1986)). [12] "Any complaint that fails to allege personal involvement is fatally defective on its face." *Brown,* 2009 WL 815724, at 6 (internal quotations and citations omitted).

### iii. Defendant Schmitt

Plaintiff contends that Defendant Schmitt had a direct involvement in the purported contamination of his food. However, as previously mentioned, Plaintiff's allegations are insufficient. The tenuous connection that is alleged on the October 23, 2014 incident fails to adequately demonstrate that Schmitt actively participated in the contamination of Plaintiff's food. Even if the allegations of food tampering are taken as fact, Plaintiff's conclusory statement does not create a tangible connection between Schmitt and the alleged Eighth Amendment violations. *See Costello v. City of Burlington,* 632 F.3d 41, 48-49 (2d Cir. 2011) (finding that a complaint that fails to establish personal involvement of a defendant is "fatal" for a claim under § 1983).

### iv. Defendants Annucci, Sullivan. Bosco, and Collins

 **\*8**  In regards to the other Defendants—Annucci, Sullivan, Bosco, and Collins—all claims asserted against them are dismissed on the basis Plaintiff failed to allege any personal involvement. First, any Eighth Amendment claim against Annucci is dismissed because there are no wrongful acts or omissions attributed to him. His name only appears in the caption of the complaint. When a complaint fails to allege any wrongdoing by the defendant, dismissal is proper. *Armstrong v. Miller*, No. 9:16-CV-0478(GLS/CFH), 2016 WL 3149733, at \*5 (N.D.N.Y. June 3, 2016). *See also Cipriani v. Buffardi,* No. 9:06-CV-0889(LEK/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (internal citations omitted).

The claims against the remaining Defendants must also be dismissed. Regardless of whether the *Colon* categories remain good law after *Iqbal* as discussed *supra* note 7, Plaintiff has not properly established the personal involvement of Sullivan, Bosco, and Collins. Plaintiff's sole contention is that he informed them via a letter of the alleged violations and they never responded to him. (Compl. Doc. 2 at 10-11). Such assertions are insufficient to establish personal involvement. "[A]s a matter of law, a defendant's mere 'receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement.' " *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (quoting *Burns v. Fischer*, No. 13-CV-486(LEK/CFH), 2014 WL 1413387, at \*5 (W.D.N.Y. Feb. 3, 2014)). *See also Sharma v. D'Silva*, 157 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) ("[A]n individual defendant's supervisory role does not automatically translate into that defendant's personal involvement.").

## II. Qualified Immunity

In their motion to dismiss, Defendants contend that they are entitled to qualified immunity. Qualified immunity is designed to "protect[ ] officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Gilles v. Repicky*, 511 F.3d 239 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). According to the Second Circuit, a government official is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 134 S. Ct. 2056, 2059 (2014)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Therefore, because Plaintiff has not plausibly alleged sufficient facts that any of the Defendants violated his constitutional rights, there is no need to further address the issue of qualified immunity.

## III. Eleventh Amendment

Unless the State waives its immunity or a valid congressional override, the Eleventh Amendment precludes the award of damages under § 1983 in federal courts against States. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). *See also Weill v. Michigan Dep't of State Police,* 491 U.S. 58, 67 (1989) (holding that under § 1983 Congress did not intend to "disregard the well-

established immunity of a State from being sued without its consent."). This immunity extends to officials that are being sued in an official capacity. *Id.* at 69. Therefore, any claims against the Defendants in their official capacity are deemed dismissed.

## CONCLUSION

**\*9** For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety. On the basis Plaintiff fails to allege any plausible facts that create a tangible connection between Schmitt and the purported contamination of Plaintiff's meals, Plaintiff's Eighth Amendment violation claim(s) against Schmitt is dismissed without prejudice. Similarly, all claims against Annucci, Sullivan, Bosco, and Collins are dismissed without prejudice. Plaintiff fails to allege any personal involvement by any of these individuals in the alleged violations. Furthermore, all claims asserted against Defendants—Schmitt, Annucci, Sullivan, Bosco, and Collins, in their official capacity are deemed dismissed with prejudice because they are barred under the Eleventh Amendment. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 23.

Plaintiff shall have thirty-five days from the date of this Order to amend the Complaint as to those claims that are dismissed without prejudice. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond. If Plaintiff does not file an amended complaint within thirty-five days, the case will be deemed closed.

In accordance to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Opinion and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4280683

---

## Footnotes

1       The following facts derived from Plaintiff's Complaint (ECF No. 2) and are taken as true for the purposes of this motion.

2       Plaintiff contends that since 2000, his food was contaminated by various correctional officers. However, as noted by the Order of Service, any claims arising from the attached letter dated March 29, 2011, are dismissed because they are untimely. (ECF No. 9).

3       "PA" is a typical acronym for "Physician's Assistant" and "P" is likely the initial of the medical staff.

4       Plaintiff mentions that he reported his injuries to Mr. Lahey about a month after the incident and further elaborates that a Black officer witnessed Officer Tokart hitting him in the back of his head. (*Id.* at 17, 21).

5       Throughout his complaint. Plaintiff never clarifies what his action was.

6       A court may "consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matter of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing suit." *Thomas v. New York City Dep't of Educ.*, 15-CV-8934(JMF), 2016 WL 4544066, at \*1 (S.D.N.Y. Aug. 31, 2016). *See also Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir. 2013) (stating

**Calvin v. Schmitt, Not Reported in Fed. Supp. (2017)**

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 64 of 121

that the court has discretion to consider other documents attached to the complaint when assessing a motion to dismiss). For this reason, it is appropriate for this Court to include the letters and other documents attached to the complaint as part of the complaint.

7  At this stage it seems plausible that the second prong of the § 1983 claim is satisfied. Given the facts, it appears that Defendants were acting under "the color of the state" when the alleged violations occurred. As the Supreme Court explained, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49-50. Furthermore, Defendants do not dispute this issue in their motion and, therefore, it is not further addressed.

8  *E.g., Varricchio v. Cty. of Nassau,* 702 F. Supp. 2d 40, 56 (E.D.N.Y. 2010) (finding that the plaintiff's allegations that his food was tainted with bodily waste, soap, metal pins, and staples constituted an Eighth Amendment violation); *White v. Olivar,* No. 11-CV-3725(GBD)(MHD), 2012 WL 2878641, at *2 (S.D.N.Y. July 12, 2012) (finding that plaintiff's complaint alleging that defendants contaminated his food with human hair and avian fecal matter was an Eighth Amendment violation). *See also Reid v. Nassau Cty. Sherriff's Dep't*, No. 13-CV-1192 (SJF)(SIL), 2014 WL 4185195, at *15 (E.D.N.Y. Aug. 20, 2014) ("Allegations that a prisoner was served food contaminated or 'tainted' by foreign object, e.g., rocks, glass, human waste, soap, metal pins, staples, etc., are sufficient to plead a constitutional violation").

9  It should be noted that Officer Menna, who allegedly persuaded the imnates to taint Plaintiff's food, is not a named defendant.

10  It should be noted that Officer Tokart is not a named defendant in this suit.

11  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award under § 1983." ') (citing *Moffitt v. Town Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)).

12  Within the Second Circuit, there is a debate on whether the five factors that are delineated in *Colon* are still applicable since *Iqbal. See*, *e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 205 no. 14 (2d Cir. 2012) (noting that *Iqbal* has "engendered conflict" with the liability test set forth in *Colon*). Several courts in the Circuit believe that the *Colon* test is still good law as long as the claim does not require a showing of discriminatory intent. *See, e.g., Thomas v. Calero,* No. 09-CV-5209, 2011 WL 153059, at *13 (S.D.N.Y. Mar. 17, 2011); *D'Olimpio v. Crisafi,* 718 F. Supp. 2d 340, 346-47 (S.D.N.Y. 2010); *but see Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.").

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 65 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

2024 WL 3823170
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Terrance DIXON, Plaintiff,

v.

NEW YORK CITY HOUSING DEVELOPMENT CORPORATION; Eric Enderlin; Thaddeus Piekarski;
Jospehine Logozzo; K&R Realty Management; Michelle Cavazza; Chris Allred; Robert Ezrapour; J2 Owner
LLC; Artemis Construction; James Spithogiannis; L'Abatte, Balkan, Colavita & Contini, LLP, Defendants.

23-CV-6114 (RPK) (LB)
|
Signed August 13, 2024

**Attorneys and Law Firms**

Terrance Dixon, Jamaica, NY, Pro Se.

Isabella Jacqueline Kendrick, New York City Law Department, New York, NY, for Defendants Thaddeus Piekarski, Josephine
Logozzo, New York City Housing Development Corporation;, Eric Enderlin.

James D. Spithogianni, L'Abbate Balkan Colavita & Contini, Melville, NY, for Defendants K&R Realty Management, Michelle
Cavazza, Chris Allred, Robert Ezrapour, J2 Owner LLC, Artemis Construction, James Spithogiannis, L'Abatte, Balkan, Colavita
& Contini, LLP.

**MEMORANDUM AND ORDER**

RACHEL P. KOVNER, United States District Judge:

**\*1** *Pro se* plaintiff Terrance Dixon brings this suit against twelve defendants—the New York City Housing Development
Corporation ("HDC"); Eric Enderlin; Thaddeus Piekarski; Josephine Logozzo; K&R Realty Management; Michelle Cavazza;
Chris Allred; Robert Ezrapour; J2 Owner LLC; Artemis Construction; James Spithogiannis; and L'Abbate, Balkan, Colavita &
Contini, LLP ("LBCC")—alleging violations of federal and state law arising from the denial of his application for affordable
housing. For the reasons stated below, defendants' motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6) are granted. [*]

**BACKGROUND**

The following factual allegations are taken from plaintiff's complaint and state court submissions and orders, to the extent they
are subject to judicial notice. *See, e.g.*, *Dixon v. von Blanckensee*, 994 F.3d 95, 103 n.6 (2d Cir. 2021) (taking judicial notice
of the "fact that the state court dismissed [a litigant's] claims on specified grounds" but not "any historical facts referenced in
the state court order"); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial
notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish
the fact of such litigation and related filings.").

**I. Factual Background**

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 66 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

HDC is a New York state "public benefit corporation" that runs an affordable housing lottery. Am. Compl. 2 (Dkt. #24); *see* N.Y. Priv. Hous. Fin. Law § 653. In March 2022, plaintiff applied to rent an affordable housing unit through HDC's lottery. Am. Compl. 5. J2 Owner LLC owned the unit to which plaintiff applied, while K&R Realty managed it. *See id.* at 2–3. As part of its management duties, K&R Realty was responsible for selecting a tenant. *See id.* at 2.

During the application process, plaintiff communicated with Michelle Cavazza, a marketing agent for K&R Realty. Am. Compl. 3, 5. Cavazza informed plaintiff that, because the documentation he had submitted "indicate[d] [he] would be under income for the unit," K&R Realty could not "proceed with [his] application." *Id.* at 6. Cavazza then stopped communicating with plaintiff. *See id.* at 6, 8.

Plaintiff appealed K&R Realty's denial of his application to HDC. *See id.* at 8. HDC denied plaintiff's appeal on the ground that "[t]he documents [he] provided" to K&R Realty showed that his "historical earnings" were "below the minimum income limit for any unit in the project." *Ibid.*

In June 2022, plaintiff filed a petition challenging HDC's decision in state court pursuant to Article 78 of New York's Civil Practice Law and Rules, which authorizes New York courts to review state administrative actions. *Id.* at 9; *see* N.Y. C.P.L.R. §§ 7801–06. The petition asserted that HDC failed to follow Department of Housing and Urban Development ("HUD") guidelines when calculating plaintiff's income. Decl. of Isabella J. Kendrick (Dkt. #43) ("Kendrick Decl."), Ex. A 11 (Dkt. #43-1) ("Art. 78 Pet.").

**\*2** At the Article 78 hearing, HDC—through its employees Thaddeus Piekarski and Josephine Logozzo—"misrepresented" plaintiff's income as well as its authority over K&R Realty. Am. Compl. 10.

The state court initially dismissed plaintiff's petition, *see* Kendrick Decl., Ex. B (Dkt. #43-2) ("Aug. 4, 2022, State Ct. Order"), but then granted plaintiff's renewal motion on the ground that "facts pertaining to [plaintiff's] income sources were previously overlooked," Kendrick Decl., Ex. C 3 (Dkt. #43-3) ("Oct. 13, 2022, State Ct. Order"). The court also ordered HDC "to conduct an additional review" of plaintiff's application, "while taking all income documents submitted by [plaintiff] into consideration." *Id.* at 4.

HDC began conducting an additional review in October 2022. *See id.* at 10. During that process, plaintiff communicated with K&R Realty employee Christopher Allred. *See id.* at 10–11. Allred "stop[ped] responding" to plaintiff on November 7, 2022. *Id.* at 11. On November 17, 2022, however, HDC notified plaintiff that he qualified for a studio apartment and advised him that if he was "interested in being processed for a studio," he should "contact the marketing agent directly." *Ibid.* Plaintiff followed up with Allred but did not receive a response. *Ibid.*

Plaintiff filed a motion in the Article 78 court to "hold [HDC] in contempt of Court, order sanctions, and compel [HDC] to award [him] a one-bedroom unit" rather than a studio. Kendrick Decl., Ex. D 2 (Dkt. #43-4) ("Dec. 19, 2022, State Ct. Order"). In December 2022, the court denied plaintiff's motion on the ground that HDC "ha[d] not violated" its previous order directing HDC "to conduct an additional review" of its denial of plaintiff's application, "while taking all income documents submitted by [plaintiff] into consideration." *Id.* at 4. Plaintiff filed a series of motions challenging the court's December 2022 order including two motions to renew his motion to hold HDC in contempt, *see* Kenrick Decl., Ex. E (Dkt. #43-5) ("Jan. 30, 2023, State Ct. Order"); Kendrick Decl., Ex. F (Dkt. #43-6) ("Feb. 15, 2023, State Ct. Order"), and another motion to hold HDC in contempt, *see* Kendrick Decl., Ex. G (Dkt. #43-7) ("Aug. 9, 2023, State Ct. Order"). The Article 78 court denied each of those motions. *See* Jan. 30, 2023, State Ct. Order 4; Feb. 15, 2023, State Ct. Order 4; Aug. 9, 2023, State Ct. Order 3. Plaintiff also moved for default judgment against HDC, and the Article 78 Court denied that motion. *See* Kendrick Decl., Ex. H 1 (Dkt. #43-8) ("Sept. 25, 2023, State Ct. Order").

In January 2023, plaintiff filed a new action in state court against HDC, Piekarski, Logozzo, K&R Realty, and Allred. *See* Kendrick Decl., Ex. K (Dkt. #43-11) ("State Ct. Compl."); Kendrick Decl., Ex. M (Dkt. #43-13) ("July 24, 2023, First State Ct.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 67 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

Order"); Decl. of James Spithogiannis (Dkt. #34-1) ("Spithogiannis Decl."), Ex. K (Dkt. #34-12) ("July 24, 2023, Second State Ct. Order"). He alleged violations of 42 U.S.C. §§ 1982, 1983, and 1985(3), the Fair Housing Act ("FHA"), *see id.* § 3601 *et seq.*, and state law. *See* State Ct. Compl. The court dismissed the action in July 2023, holding that it was "barred as against HDC, Thaddeus Piekarski, and Josephine Logozzo, by the doctrine of res judicata," July 24, 2023, First State Ct. Order 3, and that plaintiff had failed to establish that he had properly served any of the defendants, *ibid.*; July 24, 2023, Second State Ct. Order 2.

### II. Procedural Background

**\*3**  Plaintiff filed this lawsuit in August 2023. He brings claims under federal and state law against HDC, Eric Enderlin (HDC's president), Piekarski, Logozzo, J2 Owner LLC, K&R Realty, Robert Ezrapour (K&R Realty's chief executive), Cavazza, Allred, Artemis Construction (a development company under Ezrapour's "control"), LBCC (a law firm that represented K&R Realty in state court), and James Spithogiannis (a lawyer at LBCC). Am. Compl. 2–3.

Plaintiff alleges that, during the Article 78 proceedings, defendants made misrepresentations in court, raised frivolous defenses, and improperly sought adjournments or dismissals. *See* Am. Compl. 17, 24–26, 31–34, 43–46. He also alleges that defendants violated several laws in their review of his application for a one-bedroom unit and in their acceptance of federal funds. *See id.* at 14–18, 21–24, 29–31, 33–37, 39–42, 42–43. Based on those allegations, he brings claims under (i) 42 U.S.C. §§ 1982 and 1983, *see* Am. Compl. 14–15; (ii) the FHA, *see* Am. Compl. 16–18, 39–42; (iii) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *see* 18 U.S.C. § 1961; *see also* Am. Compl. 18–21; and (iv) state law, *see* Am. Compl. at 21–31, 33–39, 42–43.

Defendants moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* K&R Mot. to Dismiss (Dkt. #35); HDC Mot. to Dismiss (Dkt. # 42-1).

While defendants' motions to dismiss were pending, plaintiff filed a motion for partial summary judgment against HDC, Enderlin, Piekarski, and Logozzo. *See* Pl.'s Mot. for Partial Summ. J. (Dkt. #65). Those defendants moved to strike the motion. *See* May 8, 2024, Letter Mot. (Dkt. #66).

### STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss for failure to state a claim if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to plausibly state a claim and is properly dismissed when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief" as a matter of law, *Twombly*, 550 U.S. at 558, or when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" as a matter of law. *Iqbal*, 556 U.S. at 679.

The complaint of a *pro se* plaintiff must be "liberally construed, and ... however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 68 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

**\*4**  In reviewing a motion to dismiss, a court may consider only (i) the complaint itself, (ii) documents attached to the complaint or incorporated by reference, (iii) documents the plaintiff both relied on and knew of when bringing suit, and (iv) matters in the public record which are properly subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

## DISCUSSION

Defendants' motions to dismiss the complaint are granted. The *Rooker-Feldman* doctrine does not bar this Court from reviewing plaintiff's federal-law claims, but those claims are dismissed for failure to state a claim. And I decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

### I. Federal Claims

The Court has jurisdiction over plaintiff's federal causes of action, but they are dismissed for failure to state a claim.

### A. *Rooker-Feldman* Does Not Preclude Review of the Plaintiff's Federal Claims.

Defendants err in contending that the Court lacks jurisdiction over plaintiff's federal claims under the *Rooker-Feldman* doctrine. *See* K&R Mot. to Dismiss 10–13; HDC Mot. to Dismiss 11–13.

The *Rooker-Feldman* doctrine derives from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Together, those cases 'established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). For a claim to be barred, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 644–45 (citing *Hoblock*, 422 F.3d at 85).

Though plaintiff alleges that defendants made misrepresentations and otherwise committed misconduct in state court, those allegations "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015). They therefore do not invite review of those judgments. *See ibid.* Nor do his claims alleging that defendants violated state and federal law in reviewing his application and accepting federal funds. Though plaintiff raised similar claims in state court, "*Rooker-Feldman* ... does not deprive a district court of subject-matter jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.' " *Hoblock*, 422 F.3d at 86 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

### B. Plaintiff's Federal Claims Are Dismissed for Failure to State a Claim.

Because plaintiff has failed to state a claim under any of the federal causes of action alleged in his complaint, his federal claims are dismissed.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 69 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

**Section 1982 Claim.** Plaintiff fails to state a Section 1982 claim because he does not "allege facts supporting [defendants'] intent to discriminate against him because of his race," *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 80 (2d Cir. 2021) (citation omitted). Plaintiff alleges that defendants use "community preferences" that "inadvertently" favor "applicants currently residing in a zip code," thereby "creat[ing] racial barriers and disparities." Am. Compl. 14–15. And though plaintiff's opposition brief asserts, in a conclusory manner, that defendants "intentionally off[ered] a community preference" that "steer[s] races of ... certain communities to stay within that community," Pl.'s Opp'n to HDC Mot. 15 (Dkt. #53), he does not allege any facts supporting the inference that defendants used "community preferences" for the purpose of discriminating against plaintiff on the basis of race. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

 ***5** *Section 1983 Claim.* Plaintiff fails to state a Section 1983 claim because he does not sufficiently "allege the violation of a right secured by the Constitution and laws of the United States." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1998)). Instead, his complaint contains only the conclusory allegations that "[d]efendants individually and collectively conspired to deprive [p]laintiff of constitutionally and federally guaranteed rights and privileges" and that "[d]efendants have policies in place that are unconstitutional." Am. Compl. 15. His opposition briefs add (i) that K&R Realty and its employees engaged in "income discrimination," "family status" discrimination, and "occupancy discrimination," Pl.'s Opp'n to K&R Mot. 5 (Dkt. #38), and (ii) that HDC violated his due process rights by denying his appeal without a hearing, Pl.'s Opp'n to HDC Mot. 15. But even if plaintiff's complaint were liberally construed to allege unlawful discrimination in violation of the Fourteenth Amendment, that claim fails because he does not allege any facts establishing that he "suffered purposeful or intentional discrimination." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). And plaintiff's due process claim fails because plaintiff has not alleged the deprivation of a "liberty or property interest protected by the United States Constitution or federal statutes." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Plaintiff fails to identify any source of law protecting a property interest in an affordable housing unit of a particular size. *Cf. Lindsey v. Normet*, 405 U.S. 56, 74 (1972) (holding that the Constitution contains no "guarantee of access to dwellings of a particular quality").

**FHA Claims.** Plaintiff fails to state a claim under Sections 3631, 3604, and 3617 of the FHA.

First, Section 3631 is "the criminal provision of the FHA," *Mee Wah Chan v. Nashty*, No. 08-CV-1089 (CBA), 2009 WL 10700936, at *3 (E.D.N.Y. July 31, 2009) (citing 42 U.S.C. § 3631), and "federal criminal statutes do not provide private causes of action," *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Second, plaintiff fails to state a claim for discrimination under Section 3604. To state such a claim, a plaintiff must "plausibly allege ... at least minimal support for the proposition that" the defendant's actions were "motivated by discriminatory intent." *Francis*, 992 F.3d at 73. Plaintiff alleges that defendants' "refusal to make a proper unit size available to him" constituted "family size discrimination" because defendants were "aware" that plaintiff has a son. Am. Compl. 16. But defendants' "mere awareness" of plaintiff's family size "does not provide sufficient support for [his] allegation of discriminatory intent." *Palmer v. Fannie Mae*, 755 F. App'x 43, 46 (2d Cir. 2018). Plaintiff also alleges that defendants "hav[e] more stringent policies for self employed individuals," Am. Compl. 42, yet he fails to allege any facts supporting the inference that those policies are motivated by an intent to discriminate based on race, color, religion, sex, familial status, or national origin, *Francis*, 992 F.3d at 71, 73. Finally, plaintiff cites Section 3604(c)'s prohibition against discriminatory notices, statements, and advertisements, but he fails to identify any particular notice, statement, or advertisement that violates the prohibition. *See* Am. Compl. 40. He has therefore failed to "plead[ ] factual content that allows the court to draw the reasonable inference that [defendants] are liable for the misconduct alleged." *Iqbal*, 556 at 678.

Third, plaintiff fails to state a claim under Section 3617, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or protected by section 3603, 3604, 3605, or 3606" of the FHA. 42 U.S.C. § 3617. To state a claim for retaliation under Section 3617, a plaintiff must plausibly allege that he was "engaged in protected activity," that the defendant "was aware of this activity," that

Case 9:24-cv-01399-AJB-MJK     Document 31     Filed 02/05/26     Page 70 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

the defendant "took adverse action against the plaintiff," and that "a causal connection exists between the protected activity and the adverse action." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002) (quoting *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir. 1994)), *superseded by statute on other grounds*, ADA Amendments of 2008, Pub. L. No. 110-325, 122 Stat. 3553.

 **\*6** Plaintiff has failed to plausibly allege a retaliation claim under those principles. Plaintiff asserts that K&R Realty, Cavazza, and Allred retaliated against him "for exercising rights under [the] FHA to file complaints and litigation" because they "ceas[ed] communication[s]" and "offer[ed him] a unit smaller than" the one to which he was "entitled." Am. Compl. 17. And he alleges that Logozzo and Piekarski retaliated against him for exercising his rights under the FHA by making misrepresentations during the Article 78 hearing. *Ibid.* But he does not plausibly allege that he engaged in any protected activity with a causal connection to those actions. To start, he alleges that Cavazza stopped communicating with him *before* he filed his Article 78 petition or initiated any other litigation. *See* Am. Compl. 6. He therefore has not alleged that the Article 78 petition or any ensuing litigation are causally connected to Cavazza's alleged failure to communicate. *See, e.g.*, *Thomas-Tupper v. Cath. Charities*, No. 22-689, 2023 WL 4044101, at \*2 (2d Cir. June 16, 2023) (holding that a plaintiff "failed to demonstrate a prima facie case of retaliation" under Section 3617 where adverse actions occurred "before" the protected activity). Though the other alleged adverse actions plaintiff cites occurred after he filed the Article 78 petition, *see* Am. Compl. 10–11, he does not sufficiently allege that the petition was protected activity. While the petition asserts that HDC failed to follow HUD's guidelines for calculating income, it does not assert that HDC violated the FHA or any fair housing guidelines. *See generally* Art. 78 Pet. It therefore does not "constitute opposition to an act or practice made unlawful by" the FHA. *Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 54 (citation and brackets omitted) (defining "protected activity"). Nor does plaintiff allege any other FHA-protected activity predating defendants' alleged adverse actions. *See generally* Am. Compl. He has accordingly failed to state a claim for retaliation under Section 3617.

***RICO Claim.*** Plaintiff fails to state a RICO claim because he does not plausibly allege that defendants committed "a substantive RICO violation under [18 U.S.C.] § 1962." *Skyes*, 780 F.3d at 83 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013)). To plead a substantive violation of the RICO statute under Section 1962, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. § 1962(a)–(c).

Plaintiff alleges a pattern of racketeering activity consisting of wire fraud, in violation of 18 U.S.C. § 1343, and mail fraud, in violation of 18 U.S.C. § 1341, *see* Am. Compl. 19–21, "which are subject to the heightened pleading requirements of Fed. R. Civ. Proc. 9(b)." *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (citing *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)). Under those requirements, a plaintiff "alleging fraud ... must state with particularly the circumstances constituting fraud," Fed. R. Civ. Proc. 9(b), including "the contents of the [allegedly fraudulent] communications, who was involved, where and when they took place, and ... why they were fraudulent." *Knoll*, 275 F. App'x at 51 (alteration added) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). Plaintiff, however, alleges only that "[d]efendants commit[ted] ... wire fraud through the receiving and transmitting of federal funds ... under the false pretenses of being compliant" with "non[-] discriminatory practices" and that they "committed ... mail fraud on December 23, 2019[,] and every year thereafter through compliance renewal." Am. Compl. 19–21. Those allegations do not satisfy Rule 9(b)'s requirements. *See, e.g.*, *Knoll*, 275 F. App'x at 51 (holding that a plaintiff bringing a RICO claim failed to allege mail and wire fraud even though his complaint "set[ ] forth the dates, locations, senders and recipient of the allegedly fraudulent communications" because his "assertions as to their contents and the reason each communication was fraudulent [were] conclusory").

Plaintiff also suggests that defendants engaged in a pattern of racketeering activity consisting of witness tampering, in violation of 18 U.S.C. § 1512, and witness retaliation, in violation of 18 U.S.C. § 1513, by "retaliat[ing] against plaintiff ... for commencing this case." Am. Compl. 21. But because plaintiff does not allege how defendants retaliated against him, *see ibid.*, he has failed

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 71 of 121

Dixon v. New York City Housing Development Corporation, Not Reported in Fed. Supp....

to "plead[ ] factual content that allows the court to draw the reasonable inference that [defendants are] liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

**\*7**  Plaintiff's federal-law claims are accordingly dismissed.

### C. I Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State-Law Claims.

Because I have dismissed all the federal claims, I decline to retain jurisdiction over plaintiff's state-law claims. Under 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010); *see Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). Plaintiff does not provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. *See* Pl.'s Opp'n to HDC Mot. 18 (arguing that the Court should exercise supplemental jurisdiction since "this matter ... addresses constitutional issues"); *accord* Pl.'s Opp'n to K&R Mot. 9 (Dkt. #38). Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are granted and the motion for summary judgment is denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3823170

### Footnotes

\*        Because the complaint is dismissed, plaintiff's motion for partial summary judgment is denied as moot.

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 72 of 121

2019 WL 13369576
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas A. LUTZ, Plaintiff,

v.

Andrew M. CUOMO, et al., Defendant(s).

9:19-CV-0262 (BKS/CFH)
|
Signed April 12, 2019

**Attorneys and Law Firms**

THOMAS A. LUTZ, Plaintiff, pro se, 16-A-1618, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, NY 13642.

**DECISION and ORDER**

BRENDA K. SANNES, United States District Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent to the Court for review a pro se civil rights Complaint filed by plaintiff Thomas Lutz ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"). Dkt. No. 1 ("Compl."). Plaintiff, who is presently incarcerated at Gouverneur Correctional Facility ("Gouverneur C.F.") has not paid the filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 3. Accordingly, the Court grants Plaintiff's IFP Application.

**III. SUFFICIENCY OF THE COMPLAINT**

  **A. Governing Legal Standard**

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 73 of 121

determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

**\*2**  Additionally, when reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

### B. Summary of the Complaint

In February 2018, Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), was transferred to Hale Creek Correctional Facility ("Hale Creek C.F.") to participate in a Comprehensive Alcohol and Substance Abuse Treatment ("CASAT"). Compl. at 6. When he arrived at Hale Creek C.F., Plaintiff wrote numerous letters to defendant Superintendent Hallenbeck ("Hallenbeck"), defendant Deputy Superintendent Phillips ("Phillips"), and defendant Offender Rehabilitation Coordinator ("ORC") Gibson ("Gibson") claiming that he was unlawfully enrolled in the program in violation of 7 NYCRR § 1950.3. *Id.* at 6, 76-77, 82. Specifically, citing the regulation, Plaintiff argued that an inmate is only eligible to participate in the CASAT if he is within 12-24 months of his earliest release date. *Id.* Plaintiff argued that since his earliest release date was within nine months, November 2018, he was ineligible for the program. *Id.* at 6, 75. During a meeting with the Treatment Plan Review Committee ("TPRC"), including Phillips and Gibson, Plaintiff reiterated his claim that his release date made him ineligible for CASAT. Compl. at 6. Phillips admitted that Plaintiff's assessment was correct but stated, "we didn't transfer you here, DOCCS transferred you." *Id.* In March 2018, after seven weeks at Hale Creek C.F., Plaintiff was transferred to Gouverneur C.F. *Id.* at 6-7. Plaintiff was told that he was removed from the CASAT program due to "poor participation." *Id.* at 27.

On March 26, 2018, Plaintiff arrived at Gouverneur C.F. and was assigned to the Alcohol and Substance Abuse Treatment ("ASAT") Dorm (Dorm D-1). Compl. at 7, 11. Upon arrival, Plaintiff was immediately placed on a "call out" to meet his counselor. *Id.* Plaintiff unintentionally missed his appointment and received a Tier II misbehavior report. *Id.* In April 2018, defendant Lieutenant Theriault ("Theriault") presided over a disciplinary hearing related to the misbehavior report. *Id.* at 7, 11, 95. Plaintiff explained that he did not intentionally miss the appointment but that he had not yet attended orientation and was not aware of the call out procedures. Compl. at 7. Theriault refused to dismiss the ticket and issued a "counselor reprimand." *Id.*

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 74 of 121

Plaintiff appealed the decision to defendant Superintendent Elizabeth O'Meara ("O'Meara"). *Id.* at 7, 68, 99. Defendant Captain Demmon ("Demmon") responded and denied the appeal. *Id.*

**\*3** In April 2018, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County (Index No. 2798-18) claiming that DOCCS violated 7 NYCRR § 1950.3. Compl. at 6, 8, 10, 68, 69, 96, 99. Plaintiff also included allegations against Theriault, O'Meara, and Demmon related to the April 2018 disciplinary determination and named them as respondents. *Id*. In May 2018, Plaintiff served the petition upon the Attorney General and DOCCS.[3] *Id.* at 10.

On June 18, 2018, Plaintiff filed a grievance "against Gouverneur C.F." complaining that the inmates in D-1 dorm were consistently called last for program and recreation. Compl. at 11. On June 20, 2018, Plaintiff was called to the Sergeant's Office to discuss the grievance with defendant Sergeant Guarin ("Guarin"). *Id.* Guarin assured Plaintiff that the issue would be addressed and Plaintiff "signed off" on the grievance. *Id.*

On June 22, 2018, at 8:30 a.m., correctional officers arrived at the ASAT dorm to search inmates' cubes. Compl. at 12. Plaintiff, and other inmates, were ordered to the television room while the staff searched the area. *Id.* Guarin, defendant Sergeant Beane ("Beane"), defendant Sergeant Gonyea ("Gonyea"), defendant ASAT ORC Roddy ("Roddy"), defendant ASAT ORC Bateman ("Bateman"), and defendant Officer French ("French"), were present during the search. *Id.* at 12, 106. French issued a fraudulent contraband receipt indicating that Plaintiff was present during the search. *Id.* at 13, 106.

Thirty to forty-five minutes after the search began, an officer summoned Plaintiff to the front porch. Compl. at 13. Defendant Officer Bonno ("Bonno") directed Plaintiff to place his hands on the wall to be handcuffed. *Id.* Plaintiff complied and Bonno escorted him, with Beane, to the Tier Office. *Id.* Plaintiff asked why he was being taken to the Tier Office and Beane responded that officers found "hooch" in his locker. *Id.* at 14-15. When Plaintiff began to explain that he did not have contraband in his cube, Bonno hit him in the back of the head, while Beane was present. Compl. at 15.

Upon arriving at the Tier Office, Plaintiff sat on a bench next to and another officer, defendant Colgut ("Colgut"). Compl. at 14. Plaintiff asked to use the bathroom and Colgut immediately used expletives and hit him on the right side of the head. *Id.* Inside the office, Plaintiff was placed in a chair and, with his hands still restrained, Colgut struck Plaintiff on the right side of the head. *Id.*

Ten to fifteen minutes later, Gonyea arrived and approached Plaintiff from behind. Compl. at 15. Gonyea told Plaintiff, "I guess you don't have to worry about being called last for rec anymore" and hit Plaintiff in the head. *Id.* Gonyea left the room and locked the door. *Id.*

Fifteen minutes later, defendant Gates ("Gates") entered the office to escort Plaintiff to the Special Housing Unit ("SHU") with Beane. Compl. at 15, 92-93. During the walk to the SHU, Plaintiff was struck on the head "multiple times" by Gates while Beane was present. *Id.* When they arrived at the SHU, Gates took Plaintiff into a Frisk Room and told Plaintiff to place his hands on the wall. *Id.* The handcuffs were removed and Gates warned, "if you move your hands were [sic] going to [expletive] kill you." *Id.* At that moment, Plaintiff felt multiple blows to the back of his head. Compl. at 15, 92-93. Gates and three corrections officers, defendants John Doe #1, John Doe #2, and John Doe #3, repeatedly struck Plaintiff with their fists in his back, shoulders, and neck for forty-five seconds. *Id.* One officer "kneed" Plaintiff's right leg causing him to fall. Compl. at 15, 92-93. Defendants continued to assault Plaintiff with their feet and legs. *Id.* at 16. Plaintiff lost control of his bodily functions and defecated. *Id.* As a result of the assault, Plaintiff suffered excessive swelling, pain in his back, head, shoulders, kidneys, and right leg. *Id.* at 93, 103.

**\*4** When the assault was over, Plaintiff was escorted into the SHU gallery and placed into his cell.[4] Compl. at 17. The officer punched in the back of the head and threatened to "kill" Plaintiff if he told anyone what had transpired. *Id.*

Several hours later, defendant Nurse Jane Doe arrived at Plaintiff's cell and asked if he had any injuries or medical issues. Compl. at 17. Nurse Doe was standing with another officer who was able to overhear the entire conversation. *Id.* Because he was

threatened, Plaintiff told Nurse Doe that he did not have any injuries or medical issues. *Id.* Nurse Doe did not review Plaintiff's medical history or examine him but, rather, engaged in conversation and "flirting" with the officer. *Id.* at 17, 102-103.

As a result of the June 22, 2018 search, Plaintiff received a misbehavior report.[5] Compl. at 78. On June 26, 2018, after a disciplinary hearing, Theriault found Plaintiff guilty and sentenced him to twenty five days in keeplock in the SHU. *Id.* at 19, 78. Plaintiff appealed the decision to O'Meara. *Id.* at 68. Demmon responded on O'Meara's behalf and denied the appeal. *Id.*

On July 10, 2018, Plaintiff was released from the SHU and transferred to Dorm B-1. Compl. at 19. When he arrived, Plaintiff noticed that certain items of his property were missing. *Id.* On July 10, 2018, Plaintiff mailed a twenty-page complaint, regarding the incidents that transpired on June 22, 2018 and June 26, 2018, to his family. *Id.* at 19, 71. Plaintiff forwarded the letter to his family to ensure that it would be received by the appropriate agencies. *Id.* Plaintiff's mother faxed the complaint to the Office of Special Investigation and the Commission of Corrections. Compl. 19, 59. Defendant Deputy Commissioner for OSI Stephen Maher ("Maher") responded and advised that defendant Governor Andrew Cuomo ("Cuomo") and Annucci ordered him to conduct an investigation. *Id.* at 9, 66-67. On July 14, 2018, Plaintiff filed a property claim. *Id.* at 19.

On July 17, 2018, Plaintiff was summoned to the Sergeant's Office. Compl. 19. When he arrived, Plaintiff met with Gonyea and provided documentation supporting his property claim. *Id.* After briefly discussing issues related to Plaintiff's property, Gonyea told Plaintiff that when he arrived at work, he was presented with Plaintiff's "20 page grievance." *Id.* at 20-21. Plaintiff corrected Gonyea and stated that it wasn't a grievance, it was a complaint, that he mailed to his family. *Id.* at 21. Gonyea then asked Plaintiff, "you know why we put alcohol in your locker?" Compl. at 21. When Plaintiff responded, "no," Gonyea stated "we don't like frivolous grievances[.]" *Id.* at 21-22. Gonyea told Plaintiff to "watch [his] back." *Id.* at 22.

On July 18, 2018, Plaintiff was called to the Tier Office to discuss his July 10, 2018 complaint with defendant Lieutenant Ault ("Ault"). Compl. at 22. Ault conducted himself in a professional manner during the meeting and addressed Plaintiff's concerns. *Id.*

As a result of the June 2018 search and misbehavior report, Plaintiff was removed from the ASAT program and lost good time credits. Compl. at 78. In July 2018, the Time Allowance Committee ("TAC"), presided over by Demmon, revoked Plaintiff's good time credits. *Id.* at 30. On appeal, Demmon's decision was affirmed by defendant Rockwood ("Rockwood") and defendant Commissioner Anthony Annucci ("Annucci"). *Id.* at 52-54, 74, 100. During a program committee meeting, Plaintiff explained to defendant Deputy Superintendent of Programs/SORC Hooper ("Hooper"), that he as unlawfully removed from the ASAT program due to the unlawful search. *Id.* at 78. In August or September 2018, at Hooper's direction, Plaintiff reapplied for admission to the ASAT program and submitted the application to Hooper. Compl. at 28-29. Approximately two months later, Plaintiff met with his counselor defendant ORC Hull ("Hull"), who advised Plaintiff that he would be transferred to Hale Creek C.F. to participate in the program. *Id.* at 29. Due to the fact that members of the Hale Creek C.F. staff were respondents in Plaintiff's Article 78 petition and the "numerous difficulties the plaintiff already confronted and struggled while at Hale Creek," Plaintiff refused the transfer. *Id.*

**\*5** On November 14, 2018, at approximately 7:00 a.m., officers entered the B-1 dorm and directed the inmates to stand with their hands on their lockers. Compl. at 23. Plaintiff complied and, as he was standing, Guarin walked down the aisle and verbally harassed him. *Id.* Guarin selected Plaintiff for a "random" urinalysis, handcuffed him, and escorted him to the medical building. *Id.*

At approximately 8:00 a.m., Plaintiff returned to the dorm to find his cube "destroyed." Compl. at 25. Plaintiff's legal work was thrown into the middle of the cube in a pile. *Id.* at 25-26. On the top of the pile, Plaintiff noticed the cover page for the within action with the caption and names of defendants, including Guarin. *Id.* at 26. Plaintiff also noticed that the officers tampered with his food and tobacco. *Id.* at 27. Plaintiff received a contraband receipt that identified defendant Officer Hicks ("Hicks") and Guarin as the officers who searched the cube. Compl. at 26. On the receipt, Hicks falsely reported that Plaintiff was present during the search. *Id.* at 107.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 76 of 121

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Later the same day, Plaintiff telephoned his family and gave a detailed account of what transpired. Compl. at 28. Plaintiff directed his family to file a complaint with the OSI. *Id.*

On November 16, 2018, Plaintiff was called to the Tier Office to discuss his recent complaint. Compl. at 28-29, 32. Plaintiff met with Ault and Sergeant Cowl ("Cowl") and complained about ongoing harassment. [6] *Id.* at 29. Plaintiff also reiterated his complaints related to the incidents on June 22, 2018 and June 26, 2018. *Id.* at 30-31. Ault responded that Plaintiff, "was simply looking for a payday." *Id.* at 29. Plaintiff continued to discuss his complaints and harassment with Ault and Cowl for thirty minutes. Compl. at 29-31. Ault denied Plaintiff's allegation that he was being "targeted." *Id.*

That evening, Plaintiff reported to the law library. Compl. 32. Guarin approached Plaintiff and told Plaintiff that if he was going to continue to "put my name in your legal work, then at least spell my name right." *Id.*

Construing the Complaint liberally [7], Plaintiff alleges the following: (1) Fourteenth Amendment due process claims related to his transfer to Hale Creek C.F. to participate in the CASAT, disciplinary hearings, property claims, his removal from the ASAT at Gouverneur C.F., his loss of good time credits, and privacy issues; (2) Fourth Amendment violations related to cube searches; (3) Eighth Amendment excessive force and failure-to-protect claims; (5) Eighth Amendment deliberate medical indifference claims; (6) First Amendment retaliation claims; (7) constitutional claims based upon the failure to adhere to DOCCS' directives and HIPAA; and (8) state law claims. *See generally*, Compl. Plaintiff seeks monetary relief and injunctive relief compelling defendants to participate in anger management classes and to install cameras. [8] *See id.* at 108-109.

### C. Nature of Action

**\*6** Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

### A. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York,* No. 93-CV-1298

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 77 of 121

(RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against Defendants in their official capacities (*see generally,* Compl.) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. Fourteenth Amendment Due Process Claims

To successfully state a Fourteenth Amendment claim for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

### 1. CASAT Program and Hale Creek C.F.

Plaintiff asserts due process claims against Gibson, Phillips, and Hallenbeck alleging that he was unlawfully placed in the CASAT program at Hale Creek C.F. *See* Compl. at 6-7, 75-77, 82.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

 **\*7**  Initially, the Court notes that Plaintiff has failed to allege that Gibson, Phillips, or Hallenbeck were personally involved in the decision to transfer him to Hale Creek C.F. to participate in the program. Moreover, even assuming Plaintiff identified the proper individual(s), his due process claims related to placement in the CASAT are nonetheless subject to dismissal.

"A prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not ... constitute [an] atypical and significant hardship[ ] in relation to the ordinary incidents of prison life." *McKune v. Lile*, 536 U.S. 24, 37–38 (2002). Courts in this Circuit have consistently held that there is no protected liberty interest in refusing to participate in prison programs. *See Mills v. Fischer*, No. 9:11-CV-0986 (DNH/CFH), 2013 WL 550731, at *6-7 (N.D.N.Y. Jan. 2, 2013) (finding that the plaintiff failed to allege a due process deprivation based on his placement in the ASAT program); *see Walter v. Fischer*, No. 9:08-CV-908 (NAM/DRH), 2009 WL 3165841, at *6 (N.D.N.Y. Sept. 28, 2009), *aff'd*, 391 F. App'x 991 (2d Cir. 2010) (dismissing the plaintiff's claim that he was an "inappropriate candidate for ASAT" and that he was "compelled" to participate in violation of his due process rights); *see also Carroll v. Callanan*, No. 9:05-CV-1427 (LEK/DRH), 2007 WL 965435, at *4 (N.D.N.Y. Mar. 30, 2007) (dismissing claim that requiring participation in an ASAT program violates due process rights under the Fourteenth Amendment).

As presently plead, the Compliant does not suggest that Plaintiff suffered from a deprivation of any liberty interest as it relates to his placement in the CASAT at Hale Creek C.F. and thus, Plaintiff's procedural due process claims are dismissed without prejudice. [9]

### 2. Disciplinary Hearings

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 78 of 121

Plaintiff claims against Theriault violated due process rights during the April 2018 and June 2018 disciplinary hearings.

### a. April 2018

In April 2018, Theriault found Plaintiff guilty of failing to attend an appointment and issued a "counselor reprimand." *See* Compl. at 7. The Complaint lacks facts suggesting that Plaintiff was sentenced to any disciplinary confinement after the hearing or that he was otherwise subjected to any punishment that could constitute an "atypical and significant hardship." Accordingly, because Plaintiff has failed to plead the existence of any liberty interest, Plaintiff's due process claim related to the April 2018 hearing is dismissed for failure to state a claim.

### b. June 2018

**\*8** As a result of the June 2018 disciplinary hearing, Plaintiff served twenty five days in the SHU. *See* Compl. at 19.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133. [10]

A sentence of twenty five days in the SHU is, "not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Thus, in order to determine whether Plaintiff possessed a protected liberty interest in avoiding the SHU confinement that he experienced during the period in question, it is necessary to consider not simply the length of that confinement but the specific circumstances of that confinement (and whether they were harsher than ordinary). *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997); *Vasquez v. Coughlin*, 2 F.Supp.2d 255, 259 (N.D.N.Y. 1998) (McAvoy, C.J.).

**\*9** Here, Plaintiff claims that the SHU was "small," was not equipped with cameras to deter officers from committing constitutional violations, and the walls and floors were covered with black mold and mildew. *See* Compl. at 40. Plaintiff was "denied showers and literature on numerous occasions, along with being denied cleaning the cells." *See id.*

Even assuming that Plaintiff's conditions of his confinement "were less than ideal, he has not shown that they were so atypical compared to ordinary prison life as to give rise to a protected liberty interest, particularly in light of the relative brevity of that confinement." *Allah v. Poole,* 506 F.Supp.2d 174, 191 (W.D.N.Y. 2007). "While the Second Circuit has declined to 'delineate the precise contours of "normal" SHU confinement ... it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers

per week.' " *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *6 (S.D.N.Y. Mar. 13, 2018) (quoting *Ortiz*, 380 F.3d at 655). The facts alleged in the Complaint do not indicate that Plaintiff was confined to his cell for longer than the typical duration per day or that he was denied adequate showers. The confinement at issue did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life (conferring on Plaintiff a right to procedural due process). Plaintiff has failed to plead facts that plausibly suggest that his confinement in the SHU imposed an atypical and significant hardship, and therefore Plaintiff has failed to plead the existence of a valid liberty interest with respect to his SHU confinement.

### 3. ASAT Program at Gouverneur C.F.

Plaintiff claims that he was unlawfully removed from the ASAT program due to the June 2018 search and misbehavior report. Plaintiff also alleges that Hooper, Hull, Roddy, and Bateman violated his due process rights when they denied him the opportunity for readmission to the ASAT. *See* Compl. at 78-81, 83-85.

As discussed *supra*, Plaintiff is required to plead personal involvement in the alleged constitutional violation. With respect to his removal from the ASAT program, Plaintiff has not identified the individual(s) responsible or involved in the decision to remove him from the program. Moreover, even if Plaintiff connects a named defendant to the decision to remove him from the program, that due process claim and the due process claims against Hooper, Hull, Roddy, and Bateman related to his readmission to the program are nonetheless subject to dismissal.

Inmates do not have a constitutionally protected liberty interest in internal classifications or eligibility for rehabilitative programs. *See Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980). An inmate cannot succeed with a claim that his removal from the ASAT program was done without due process, because inmates have no constitutional right to participation in prison programs. *See Murray v. Hulihan*, No. 9:08-CV-912 (NAM/ATB), 2010 WL 1235615, at *7 (N.D.N.Y. Mar. 17, 2010), *adopted*, 2010 WL 1260140 (N.D.N.Y. Mar. 31, 2010), *aff'd*, 436 F. App'x 22 (2d Cir. 2011). Moreover, "[c]ourts considering inmate claims regarding denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life." *Thompson v. LaClair*, No. 908-CV-0037 (FJS/DEP), 2009 WL 2762164, at *5 (N.D.N.Y. Aug. 25, 2009) (citations omitted); *see also Barnes v. Abdullah*, No. 11 CIV. 8168, 2013 WL 3816586, at *3 (S.D.N.Y. July 22, 2013) (collecting cases) (finding that the plaintiff did not have a protected liberty interest in participating in ASAT).

**\*10** Accordingly, Plaintiff's due process claims related to the ASAT program are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.

### 4. Good Time Credits

Plaintiff claims that he was unlawfully detained because the TAC revoked the good time "he had clearly earned during his sentence." Compl. at 52-54, 78. To the extent that Plaintiff seeks restoration of the good time credits, he may only seek such relief by filing a habeas corpus petition pursuant to 28 U.S.C. § 2254. In *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), the Supreme Court established that habeas corpus is the exclusive remedy for a state prisoner seeking an early release, including those seeking to shorten their sentence through the restoration of good time credits. *Id.*

Further, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Id.* at 487 (internal citation omitted). Moreover, the *Heck* Court directed that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must

be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* "The rule announced in *Heck v. Humphrey* thus applies whenever a prisoner challenges the fact or length of his conviction or sentence ... includ[ing] situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement." *Odom v. Pataki*, No. 00 Civ. 3727, 2001 WL 262742, at *3-4 (S.D.N.Y. Mar. 15, 2001) (citations omitted).

Thus, Plaintiff's due process claims related to his loss of good time credits are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Property

Plaintiff claims that Defendants violated his Fourteenth Amendment rights when they destroyed his property during the June 2018 and November 2018 cell searches. Plaintiff filed a claim related to his lost property and asserts that defendant Superintendent Quinn ("Quinn") was personally involved in the constitutional violation, because he denied Plaintiff's appeal. *See* Compl. at 72. The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 F. App'x. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because Plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Shabazz*, 994 F.Supp. at 473-74 (dismissing the plaintiff's claim that the defendants destroyed his property in violation of his due process rights). For the reasons set forth herein, Plaintiff's due process claims related to property loss are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 6. Privacy

**\*11**  Plaintiff claims that Nurse Jane Doe violated the "Privacy Act" during her evaluation on June 22, 2018. *See* Compl. at 17. The Privacy Act does not provide for a cause of action against individuals, "the private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government." *Young v. Tryon*, No. 12-CV-6251, 2015 WL 309431, at *16 (W.D.N.Y. Jan. 23, 2015). In light of Plaintiff's pro se status, the Court will consider whether Plaintiff has sufficiently plead a due process right-to-privacy claim.

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (citing *Whalen*, 429 U.S. at 598–600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.' " *Matson v. Bd. of Ed. of City School Dist. of New York*, 631 F.3d 57, 64 (2d Cir. 2011) (quoting *inter alia Doe*, 15 F.3d at 267). With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Matson*, 631 F.3d at 64 (citations omitted). Privacy interests in medical information vary with the medical condition with certain "unusual" conditions, including positive HIV status and transsexualism being "likely to provoke an both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). An inmate cannot expect the constitutional right to privacy to protect against disclosure of medical information that is a matter of public record, or readily observable by the public, such as the obvious use of a knee brace. *See, e.g., Taylor v. Macomber*, 1999 WL 349696, at *3 (S.D.N.Y. May 27, 1999) (holding disclosure of medical information pertaining to

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 81 of 121

inmate plaintiff's knee condition did not violate inmate's privacy rights because inmate's wearing knee brace already informed the public that plaintiff had a knee condition).

Here, Plaintiff alleges that Nurse Jane Doe violated his right to privacy when she inquired about Plaintiff's injuries and medical issues in the presence of a correctional officer. *See* Compl. at 17. Plaintiff has not alleged that Nurse Jane Doe disclosed any information related to a medical condition so "unusual" that the disclosure arose to a Fourteenth Amendment violation. Indeed, Plaintiff admits that when asked, he told Nurse Jane Doe that he had no injuries or medical issues and no history of medical and/or health issues. *See id.* Additionally, while Plaintiff claims that he sustained bruising all over his body and that his "cleanly shaven bald head" was swollen and red, a privacy claim does not arise from these facts as these conditions would be readily observable to officers. *See id.*

As a result, Plaintiff's privacy claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b).

### C. Fourth Amendment

The Fourth Amendment protects an individual's right "to be secure in [his or her] persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place. *See Hudson v. Palmer,* 468 U.S. 517, 530 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell"); *Demaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (citations omitted).

**\*12** Consequently, to the extent that the Complaint could be read to include Fourth Amendment claim related to the June 2018 and November 2018 search of Plaintiff's cell, those claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Eighth Amendment

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

### 1. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7 (citing *Whitley v. Albers,* 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257 (DNH/DEP), 2013 WL 5465343, at \*5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 82 of 121

The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

**\*13** At this early stage of the proceeding, the Court will require a response to Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims from Gonyea, Bonno, Colgut, Gates, John Doe #1, John Doe #2, John Doe #3, and Beane. This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Deliberate Medical Indifference

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (with respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

Here, the facts as alleged do not suggest that Plaintiff suffered from a serious medical need or that Nurse Jane Doe culpably and deliberately disregarded his medical needs. Nurse Jane Doe came to the SHU on the day of the alleged use of force incident and asked Plaintiff if he had any injuries or medical issues. *See* Compl. at 17. Plaintiff admits that he told Nurse Jane Doe that he did not have any injuries and asserts that he responded "no to each and every question" about his past and present medical and mental health history. *See id.* at 17, 103. As presently plead, there are no allegations in the Complaint which plausibly suggest that Jane Doe knew of and disregarded an excessive risk to Plaintiff's health or safety. Nor are there any allegations in the Complaint that Plaintiff made a request for medical treatment that was refused.

Accordingly, Plaintiff's Eighth Amendment claims related to his medical care are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Retaliation

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 83 of 121

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

 **\*14**  The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill*, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. *Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 491 (*quoting Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493.

The filing of a grievance or lawsuit is protected speech. *See Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

Here, Plaintiff has sufficiently alleged that he engaged in the following protected conduct:

  • In May 2018, Plaintiff served an Article 78 petition upon the Attorney General and DOCCS;

  • On June 18, 2018, Plaintiff filed a grievance related to the D-1 dorm and recreation movement;

  • On July 10, 2018, Plaintiff mailed a complaint regarding the incidents that occurred on June 22, 2018 and June 26, 2018 to his family who forwarded it to the Office of Special Investigations and Commission of Corrections;

  • On July 14, 2018, Plaintiff filed a property claim.

*See generally*, Compl.; *see Delgado v. Potter*, No. 9:13-CV-728 (DNH/CFH), 2015 WL 667551, at \*1 (N.D.N.Y. Feb. 17, 2015) (allowing the plaintiff to proceed with retaliation claim based upon the First Amendment conduct of filing an inmate property claim).

Thus, the Court turns to whether Plaintiff has plausibly alleged the second and third elements of a retaliation claim.

### 1. Retaliation Claims Related to Cell Searches

Plaintiff claims that Guarin and Gonyea participated in a retaliatory cube search and planted contraband in his locker on June 18, 2018, two days after he met with Guarin regarding his grievance. *See* Compl. at 22, 87-88. Plaintiff also claims that French prepared a false contraband receipt, after the June 2018 search, indicating that Plaintiff was present during the search. *See id.* at 106.

District courts in this Circuit have found that a retaliatory cell search, in and of itself, does not constitute an adverse action sufficient to support a First Amendment retaliation claim. *See, e.g., Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at \*7 (S.D.N.Y. March 27, 2019). However, allegations that the defendants planted evidence are serious enough to constitute adverse actions. *Shakur v. Thomas,* No. 9:14-CV-0427 (MAD/TWD), 2016 WL 11478237, at \*11 (N.D.N.Y. June 2, 2016), *adopted*, 2016 WL 4617242 (N.D.N.Y. Sept. 6, 2016) (citations omitted).

 \*15  Accordingly, Plaintiff's retaliation claims against Guarin, Gonyea, and French related to the June 2018 cell search survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

A different conclusion is reached, however, with respect to the claims against Guarin and Hicks, related to the November 2018 search. Plaintiff alleges that Guarin and Hicks participated in a retaliatory cube search on November 14, 2018 and that Hicks prepared a false contraband receipt. *See* Compl. at 22, 87-88. The Complaint is devoid of any allegation that Guarin or Hicks planted contraband in Plaintiff's cell or committed other conduct rising to the level of an adverse action. Moreover, in regards to Hicks, Plaintiff has failed to plead facts suggesting that Hicks was aware that Plaintiff engaged in protected conduct and, if so, what conduct motivated Hicks to issue a fraudulent contraband receipt. Accordingly, Plaintiff's retaliation claims against Guarin and Hicks, related to the November 2018 search, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims Related to Use of Force

Plaintiff alleges that Gonyea assaulted him on June 22, 2018, two days after he filed his grievance. *See* Compl. at 15. At this juncture, the Court finds that Plaintiff's retaliation claim against Gonyea related to the use of force incident, survives sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Threats and Harassment Claims Against Gonyea and Guarin

Plaintiff alleges that Gonyea and Guarin repeatedly threatened and harassed him in retaliation for his grievance and his July 10, 2018 complaint. *See* Compl. at 21-27.

"[S]ome verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *Barrington v. New York*, 806 F.Supp.2d 730, 746 (S.D.N.Y. 2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific). Whether threats constitute adverse action in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk Cnty.*, No. 02-CV-6473, 2006 WL 2844408, at \*8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins*, No. 05-

CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action).

Here, considering Plaintiff's history with Gonyea and Guarin, Plaintiff's retaliation claims against these defendants, related to threats and harassment, survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 4. Retaliation Claims Against Theriault, O'Meara, and Demmon

**\*16** Plaintiff claims that Theriault retaliated against him when he found him guilty of the charges in the June 2018 misbehavior report and sentenced him to the SHU, "without any lawful considerations." *See* Compl. at 96. Plaintiff also claims that O'Meara and Demmon retaliated against him when they affirmed Theriault's determination. *See id.* at 68, 99. Plaintiff claims that Defendants were motivated to retaliate because they were named as respondents in the Article 78 petition, which was served in May 2018. *See id.* at 68, 96, 99.

At this juncture, Plaintiff's retaliation claims against these defendants survive sua sponte review and require a response. *See Gill*, 389 F.3d at 384 (finding that the plaintiff sufficiently alleged an adverse action on the part of the defendants; his sentence of three weeks in keeplock). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### F. Violations of DOCCS' Directives and Regulations

Plaintiff claims that Defendants violated DOCCS' Directives regarding his eligibility for CASAT, cell searches, strip frisks in the SHU, property claims, and the appropriate/necessary use of handcuffs. *See* Compl. at 13, 16, 24, 25, 72. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ..."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim. Accordingly, to the extent that Plaintiff attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

### G. HIPAA claim

Plaintiff attempts to assert a § 1983 claim against Nurse Jane Doe based upon HIPAA. *See* Compl. at 17, 102-104. However, there is no private right of action under HIPAA and, as such, a violation of HIPAA cannot serve as the basis of a § 1983 claim. *See Rodgers v. Rensselaer County Sheriff's Dep't*, No. 1:14-CV-01162 (MAD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) (citations omitted); *see also Bibeau v. Soden*, No. 08-CV-671 (LEK/RFT), 2009 WL 701918, at *6 (N.D.N.Y. March 13, 2009) (citation omitted). Accordingly, Plaintiff's claims related to HIPAA are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### H. Claims Against Supervisory Defendants

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 86 of 121

**\*17** Throughout the Complaint, Plaintiff asserts First, Eighth, and Fourteenth Amendment claims against various defendants who, he concedes, did not personally participate in the alleged constitutional violations. Rather, these defendants are included in the action based upon their supervisory capacities.

Prior to the Supreme Court's decision in *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" under five different circumstances. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In particular, supervisors can be found personally involved if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon*, 58 F.3d at 873 (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). In *Iqbal*, however, the Supreme Court explained that "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. For alleged constitutional violations related to discrimination based on race, religion, or national origin in violation of the First and Fifth Amendments, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 677.

In this Circuit, "*Iqbal* has engendered conflict ... about the continued vitality of the supervisory liability test set forth in *Colon*," *Reynolds v. Barrett*, 685 F.3d 205 n.14 (2d Cir. 2012), and the Second Circuit has not resolved the conflict. *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which the Supreme Court's decision in *Ashcroft v. Iqbal*, ... 'may have heightened the requirements for showing a supervisors' personal involvement with respect to certain constitutional violations.' " (quoting *Grullon v. New Haven*, 720 F.3d 133, 139 (2d Cir. 2013))). Recently, this Court concluded that the *Colon* analysis still applies where the constitutional claim asserted does not require a showing of discriminatory intent, "insofar as it is 'consistent with the particular constitutional provision alleged to have been violated.' " *Montanez v. City of Syracuse*, No. 16-CV-0550, 2019 WL 315058, at *18 (N.D.N.Y. Jan. 25, 2019) (citations omitted).

In the case at hand, the *Colon* factors are not viable for the First Amendment retaliation claims, which have an intent requirement. *Montanez*, 2019 WL 315058, at *18 (citing *Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016)). On the other hand, because the Eighth and Fourteenth Amendment constitutional claims asserted do not require a showing of discriminatory intent, the Court will apply the *Colon* factors. As of particular relevance herein, the Court will apply the second factor.

In this Circuit, "[a] supervisor may be liable in an action brought under [section] 1983 if he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Vincent v. Yelich*, 718 F.3d 157, 173 (2d Cir. 2013) (internal quotation marks and emphasis omitted); *Toliver v. City of N.Y.*, 530 F. App'x 90, 93 (2d Cir. 2013) (remanding to allow the plaintiff to file an amended complaint that included allegations of ongoing injuries "and that supervisory personnel were, as he claims, aware that particular officers were harassing and assaulting inmates"). Regardless of the specific ongoing constitutional violation alleged, to find that the supervisor was personally involved under the second *Colon* factor, a complaint must allege sufficient facts to place the supervisor on notice of the continuing constitutional violation and that the supervisor had the authority and ability to remedy the violation. *See Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (concluding that, at the pleading stage, a plaintiff is "entitled to have the court draw the reasonable inference– if his ... complaint contain[s] factual allegations indicating that [a l]etter was sent to [the defendant] at an appropriate address and by appropriate means–that [the defendant] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained"); *Rahman v. Fisher*, 607 F.Supp.2d 580, 585 (S.D.N.Y. 2009) ("[A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it.").

**1. O'Meara and Demmon**

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 87 of 121

**\*18** Plaintiff's Fourteenth Amendment claims against O'Meara and Demmon arise out of Plaintiff's appeal of his disciplinary dispositions. Plaintiff claims that O'Meara and Demmon were aware of the constitutional violations involved in the disciplinary hearings at Gouverneur C.F. and neglected to correct the procedural inadequacies. *See* Compl. at 68-70, 99-101.

"Absent an underlying constitutional violation, there can be no supervisory liability[...]". *See Murray v. Pataki*, No. 9:03–CV–1263 (LEK/RFT), 2007 WL 956941, at \*7 (N.D.N.Y. Mar. 29, 2007). Having failed to sufficiently plead underlying constitutional violations related to the disciplinary hearings, Plaintiff's due process claims against O'Meara and Demmon are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See Elek v. Inc. Vill. of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases).

### 2. Defendant Director Donald Venettozzi ("Venettozzi"), defendant Director Priscilla Ledbetter ("Ledbetter"), defendant Deputy Commissioner Jeff McKoy ("McKoy"), Rockwood, and Quinn

According to the Complaint, Plaintiff forwarded "letters" to Venettozzi, Ledbetter, McKoy, Quinn, and Rockwood regarding the assaults, abuse, harassment, and Eighth and Fourteenth Amendment violations. *See* Compl. at 59-64, 72, 74. Although Plaintiff claims to have written "numerous" and/or "an abundance of" letters, he does not specify the dates of the letters, when they were sent, where they were sent, how many letters he forwarded, what information they contained, and what response he received, if any. *See id.* at 61-64. As presently plead, these allegations are insufficient to establish that there was any failure to remedy or other basis for supervisorial liability against the aforementioned defendants.

### 3. Annucci, Cuomo, Maher, and Ault

Plaintiff claims that Annucci and Cuomo received the July 10, 2018 complaint and directed Maher to investigate Plaintiff's allegations.[11] *See* Comp. at 57, 59, 65. While Plaintiff does not provide any facts related to when his family forwarded the complaint to officials, where it was sent, or by what means the complaint was forwarded, additional allegations support Plaintiff's claim that his complaint was received. To wit, Plaintiff claims that Gonyea told him that he was presented with Plaintiff's "20 page grievance" and further, that Ault summoned him to the Tier Office to discuss the complaints. *See id.* at 21-22. Plaintiff also claims that he complained about repeated harassment and retaliation during his thirty-minute meeting with Ault on July 18, 2018 and again on November 16, 2018 and Ault refused to remedy the violations. *See id.* at 22, 29, 97-98.

As discussed *supra*, because there can be no supervisory liability absent an underlying constitutional violations and because Plaintiff failed to sufficiently plead any underlying Fourth Amendment, Fourteenth Amendment, or Eighth Amendment constitutional violation related to deliberate medical indifference, these claims against Annucci, Cuomo, Maher, and Ault are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**\*19** With respect to the Eighth Amendment excessive force and failure to intervene claims, Plaintiff does not allege that his July 10, 2018 complaint referenced "ongoing violations" involving assaults or the use of force. Rather, Plaintiff plead that his complaint referred to the "incidents" on June 22, 2018. *See* Compl. at 19, 60. Because the alleged Eighth Amendment violations were not ongoing, defendants were not personally involved in any constitutional violation arising from the use of force incidents on June 22, 2018. *See Martin v. Patterson*, No. 9:09-CV-1372 (LEK/ATB), 2010 WL 3033796, at \*3 (N.D.N.Y. July 16, 2010), *adopted*, 2010 WL 3033809 (N.D.N.Y. Aug. 3, 2010) (dismissing supervisory claims for failure to allege personal involvement of supervisory defendant "based upon his failure to 'remedy the wrong and based on a single incident of alleged excessive force.").

### I. State Law Claims

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 88 of 121

Plaintiff alleges, in conclusory terms, a claim for negligent infliction of emotional distress and intentional infliction of emotional distress. *See* Compl. at 38, 51-54.

### 1. Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress based on conduct that directly impacts a plaintiff requires a showing that the plaintiff "suffers emotional distress caused by defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (internal quotation marks and citation omitted). The duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Dzwonczyk v. Syracuse City Police Dep't,* 710 F.Supp.2d 248, 272 (N.D.N.Y. 2008). "This duty is far more specific than the more generalized duty to avoid negligently injuring another." *Druschke v. Banana Republic, Inc.*, 359 F.Supp.2d 308, 315 (S.D.N.Y. 2005); *see also Hazan v. City of New York*, No. 98-CV-1716, 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff") (internal citations omitted).

In this case, Plaintiff has failed to allege any special duty owed to him by defendants, aside from the general duty to all inmates not violate their constitutional rights. Accordingly, Plaintiff's state law claim for negligent infliction of emotional distress is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Intentional Infliction of Emotional Distress

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996). "[Intentional Infliction of Emotional Distress], although providing relief for plaintiffs upon occasion ..., remains a 'highly disfavored [tort] under New York law. It 'is to be invoked only as a last resort[.]' " *Bradshaw v. City of New York*, No. 17 CIV. 1199, 2017 WL 6060781, at *20 (S.D.N.Y. Dec. 7, 2017) (citations omitted); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017). Under New York law "no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Russo v. Cty. of Warren*, 2015 WL 7738043, at *10 (N.D.N.Y. Dec. 1, 2015), *adhered to on reconsideration*, 2016 WL 843373 (N.D.N.Y. Mar. 1, 2016).

Here, Plaintiff's excessive force claims survive initial review and thus, the claim for intentional infliction of emotional distress is dismissed as duplicative. *See Bradshaw*, 2017 WL 6060781, at *20 (citing, *inter alia, Universal Calvary Church v. City of N.Y.*, 96 Civ. 4606, 2000 WL 1538019 at *12 (S.D.N.Y. Oct. 17, 2000)) ("Under the circumstances here, [plaintiff's] claim for intentional infliction of emotional distress is subsumed under his excessive force claim."); *see also Jenkins v. Medert*, No. 9:16-CV-1491 (MAD/DJS), 2018 WL 5283872, at *2 (N.D.N.Y. Oct. 24, 2018) (dismissing the plaintiff's state law intentional infliction of emotional distress claim because it was premised on the same conduct underlying Plaintiff's excessive force claim).

### J. Remaining Claims

**\*20** Construing the Complaint liberally, Plaintiff attempts to assert additional claims related to the following:

- A retaliatory cell search in January 2019;

- Confiscation of his "original Article 78 petition" at some unknown time;

- the conditions of his confinement in the SHU;

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 89 of 121

• the failure to respond to FOIL requests. [12]

*See* Compl. at 33-35, 40. The Complaint however, lacks facts connecting any named defendant to the aforementioned actions. Notably, Plaintiff failed to identify any individual personally involved in: the January 2019 search, the confiscation of his Article 78 petition, or the decisions related to his conditions of confinement. Additionally, Plaintiff did not identify any "John Doe" defendants associated with these incidents. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims).

Accordingly, to the extent that Plaintiff attempts to assert claims related to these incidents, those claims are dismissed.

## V. DOE DEFENDANTS
Plaintiff is advised that the United States Marshals Service cannot effect service on an unidentified defendant. If Plaintiff wishes to pursue claims against John Doe #1, #2, or #3, he must take reasonable steps to ascertain the identity of the defendants. Upon learning the identity of the unnamed defendants, Plaintiff must amend his complaint to properly name him or her as a defendant. If Plaintiff fails to ascertain the identity of the defendants so as to permit the timely service of process, all claims against that individual will be dismissed. [13]

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [14] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915 [15]; and it is further

 **\*21  ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims pursuant to Section 1983 for monetary damages against any defendant in his or her official capacity; (2) Fourth Amendment claims related to cell searches; (3) claims related to violations of DOCCS' directives and regulations; and (4) HIPAA claims; it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Fourteenth Amendment due process claims; (2) Eighth Amendment deliberate medical indifference claims; (3) First Amendment retaliation claims related to November 14, 2018 cell search; (4) claims against Cuomo, Annucci, Maher, Quinn, Ault, Venettozzi, Ledbetter, McKoy, Rockwood, Hallenbeck, Phillips, Hooper, Gibson, Roddy, Bateman, Hull, Nurse Jane Doe, and Hicks; and (5) state law claims; [16] and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) Eighth Amendment excessive force claims against Gonyea, Bonno, Colgut, Gates, and

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 90 of 121

John Doe #1, #2, and #3; (2) Eighth Amendment failure-to-protect claim against Beane; and (3) First Amendment retaliation claims against: (i) Guarin, Gonyea, and French related to the June 2018 cell search; (ii) Gonyea related to the use of force; (iii) Gonyea and Guarin related to harassment and threats; and (iv) Theriault, O'Meara, and Demmon related to the June 2018 disciplinary hearing; and it is further

**ORDERED** that Cuomo, Annucci, Venettozzi, Ledbetter, McKoy, Maher, Quinn, Rockwood, Hallenbeck, Phillips, Hooper, Gibson, Roddy, Bateman, Hull, Nurse Jane Doe, Ault, and Hicks are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Doe defendants. **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

 **\*22** **ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 13369576

---

**Footnotes**

1    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.

Lutz v. Cuomo, Not Reported in Fed. Supp. (2019)

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 91 of 121

*See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

2　To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3　As of the date he prepared the Complaint, Plaintiff had not received a decision on his petition. Compl. at 8.

4　Plaintiff did not identify the individual who escorted him to the SHU or name him/her as a defendant herein.

5　Plaintiff has not plead facts related to who issued the report or the substance of the report.

6　Cowl is not named as a defendant herein.

7　The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

8　Plaintiff seeks "criminal charges" against Defendants. *See* Compl. at 109. However, it is well settled that a "private citizen does not have a constitutional right to bring a criminal complaint against another individual." *Nolley v. County of Erie*, No. 07-CV-0488, 2008 WL 859165, at *5 (W.D.N.Y. 2008); *see also McCray v. County of Nassau*, 493 F. Supp. 2d 581, 591 (E.D.N.Y. 2007) (a private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual). Accordingly, this request for relief is denied.

9　To the extent that Plaintiff attempts to assert a separate constitutional claim against Phillips, Gibson, or Hallenbeck related to the creation of false reports regarding the reason for his dismissal from the CASAT, that claim is dismissed. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). There are "two exceptions to this rule: when an inmate is able to show either that he was disciplined without adequate due process as a result of the report; or that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citation omitted). Neither exception applies here. Plaintiff was not disciplined as a result of the report and Plaintiff has not alleged that Philips, Gibson, or Hallenbeck generated a false report related to his dismissal from the CASAT in retaliation for any protected conduct.

10　The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short–less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

11　Plaintiff claims that he is in possession of this letter and "an enormous amount of correspondence and documentation to support his arguments" and will provide "evidence" after the Court's initial review. *See* Compl. at 37, 67.

12      A violation of New York State Foil does not give rise to a federal claim under Section 1983. *Sonds v. Cuomo*, No. 9:11-CV-0895 (NAM/ATB), 2012 WL 952540, at *3 (N.D.N.Y. Feb. 3, 2012).

13      Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

14      Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

15      "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

16      If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

---

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 93 of 121

2016 WL 3369286
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James W. NICHOLSON, Plaintiff,

v.

M. HAMMOND, et al., Defendants.

Civil Action No. 9:13-CV-0748 (TJM/DEP)

|

Signed 05/19/2016

**Attorneys and Law Firms**

FOR PLAINTIFF: JAMES W. NICHOLSON, Pro Se, 1311 3rd Street, Rensselear, NY 12144.

FOR DEFENDANTS: HON. ERIC T. SCHNEIDERMAN, New York State Attorney General, The Capitol, OF COUNSEL: LOUIS JIM, ESQ., Assistant Attorney General.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff James W. Nicholson has commenced this action asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging that the defendants deprived him of his civil rights by destroying his legal mail, retaliating against him, and denying him equal protection, in violation of his rights under the First and Fourteenth Amendments.

Currently pending before the court are cross-motions for summary judgment. For the reasons set forth below, I recommend that plaintiff's motion for summary judgment be denied and that defendants' motion be granted.

I. BACKGROUND [1]

A. Underlying Facts

From January 24, 2013 through July 23, 2014, plaintiff was a prison inmate held in DOCCS custody at the Greene Correctional Facility ("Greene"). [2] Dkt. No. 69-5 at 2. [3] At the relevant times, defendant Marie Hammond ("Hammond") was the Deputy Superintendent for Program Services at Greene. Dkt. No. 69-2 at 1. Hammond was responsible for investigating and responding to inmate complaints related to the mailroom. *Id.* Defendants Captain Linda Goppert ("Goppert") and Corrections Officer Snide ("Snide") were also employed at Greene. Dkt. No. 69-3; Dkt. No. 69-4.

Prior to his incarceration at Greene, plaintiff was confined at the Bare Hill Correctional Facility ("Bare Hill"). Dkt. No. 69-8 at 22-23. While confined at Bare Hill, plaintiff filed a grievance against Sgt. Miller ("Miller"), an officer at that facility. *Id.* at 22. Plaintiff did not come into contact with Hammond or Goppert while he was incarcerated at Bare Hill. Dkt. No. 69-8 at 24. Plaintiff never encountered Miller while he was incarcerated at Greene. *Id.* at 28.

Case 9:24-cv-01399-AJB-MJK   Document 31   Filed 02/05/26   Page 94 of 121

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

On March 12, 2013, plaintiff filed a complaint in the United States District Court for the Northern District of New York against Miller. *Nicholson v. Miller*, No. 9:13-CV-0277 (LEK/ATB) ("Nicholson I"). In *Nicholson I*, plaintiff alleged that Miller threatened him, retaliated against him and used excessive force. Dkt. No. 1 at 4, 6; *Nicholson I*, Dkt. Nos. 1, 11. [4]

**\*2** On or about March 27, 2013, plaintiff received a letter from his attorney, Eugene Grimmick, Esq. ("Grimmick"). [5] Dkt. No. 69-8 at 35; Dkt. No. 1-1 at 7-8. In the letter, Grimmick indicated that he enclosed copies of plaintiff's "Appellant's Brief and Appendix" and plaintiff's "Record on Appeal." Dkt. No. 1-1 at 7. Plaintiff, however, did not receive the referenced enclosures. Dkt. No. 69-8 at 36-37. Plaintiff did not see Hammond or Goppert destroy his legal mail, nor was he told that Hammond or Goppert had destroyed his legal mail. *Id.* at 25.

#### B. Grievance Related to Legal Mail

On June 18, 2013, plaintiff filed a grievance (GNE-7830-13) claiming that his legal mail was "destroyed" or "not given to [him] for some reason." [6] Dkt. No. 69-9 at 6-8. Plaintiff alleged that his mail was destroyed in "retaliation for filing a federal lawsuit against Sgt. Miller." *Id.* at 8. Plaintiff did not name or identify Hammond or Goppert in the grievance. Dkt. No. 69-8 at 28; Dkt. No. 69-9 at 6-8.

On July 8, 2013, Mr. Black, the Inmate Grievance Program ("IGP") Supervisor, forwarded a memorandum to plaintiff advising that an investigation into plaintiff's grievance was ongoing. [7] Dkt. No. 69-9 at 13. Hammond conducted the investigation and determined that a package was received from Grimmick on April 3, 2013 and April 12, 2013, but that plaintiff did not sign for the legal mail. *Id.* at 14. Hammond concluded that plaintiff's mail was lost and that his grievance "has merit." *Id.*

On July 31, 2013, the Inmate Grievance Review Committee ("IGRC") issued a response accepting the grievance, in part. Dkt. No. 69-9 at 10. The committee found that packages were received from plaintiff's attorney on April 3, 2013 and April 12, 2013. *Id.* However, plaintiff did not sign for any legal mail on, or immediately after, those dates. The committee concluded that plaintiff's mail was lost. *Id.*

On August 14, 2013, plaintiff appealed the IGRC decision to the superintendent. Dkt. No. 69-9 at 10. Plaintiff did not mention Hammond or Goppert in that appeal. Dkt. No. 69-8 at 31. On August 15, 2013, Acting Superintendent Arthur Dirie ("Dirie"), issued a decision accepting the grievance, to the extent that plaintiff's mail was lost. [8] Dkt. No. 69-9 at 9.

On August 19, 2013, plaintiff appealed the superintendent's decision to the Central Office Review Committee ("CORC"). Dkt. No. 69-9 at 9. Plaintiff did not mention Hammond or Goppert in the appeal. Dkt. No. 69-8 at 33. On January 15, 2014, the CORC upheld the superintendent's decision. Dkt. No. 69-9 at 3. The committee determined that plaintiff did not present sufficient evidence to substantiate retaliation or malfeasance by staff. *Id.*

#### C. Grievance Related to Freedom of Information Law ("FOIL") Request

On July 11, 2013, plaintiff filed a grievance (GNE 7846-13) regarding a "FOIL Issue." Dkt. No. 69-10 at 12. Plaintiff complained that he did not receive a response to his June 16, 2013 FOIL request seeking the names of individuals who signed for packages containing his legal documents. *Id.*; Dkt. No. 74 at 2. On August 15, 2013, Dirie accepted plaintiff's grievance "in part" and concluded that while plaintiff did not receive the requested items pursuant to FOIL, copies of plaintiff's request "have since been forwarded to him." *Id.* Plaintiff was directed to submit future FOIL requests to the facility FOIL officer, T. Johnson, in community supervision, and not to administrative staff, to avoid potential delays. Dkt. No 69-10 at 12.

**\*3** On August 19, 2013, plaintiff appealed the superintendent's decision to the CORC. Dkt. No. 69-10 at 12. On January 2, 2014, the CORC upheld Dirie's decision, finding that on July 22, 2013, plaintiff received copies of the log book for "4/4/13 – 4/20/13." Dkt. No. 69-10 at 24.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 95 of 121

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

D. Grievance Related to Snide

On July 24, 2013, plaintiff was summoned to the grievance office. Dkt. No. 1 at 6; Dkt. No. 69-10 at 8. Snide was present and asked plaintiff what he "would like to do with GNE 7830-13." *Id.* Plaintiff responded that the grievance should have been appealed to the superintendent in accordance with grievance time limits. *Id.* at 9. Snide threatened plaintiff with confinement at a "max prison" and directed plaintiff to "stop filing grievances." *Id.*

On August 1, 2013, plaintiff filed a grievance (GNE-7857-13) related to Snide's threats. Dkt. No. 69-10 at 7-9. Plaintiff also complained that his prior grievance was not timely processed and that he suffered from "violation[s] of grievance procedure[s]." *Id.* at 8.

On August 23, 2013, the superintendent issued a decision denying the grievance. [9] Dkt. No. 69-10 at 10. The superintendent noted that Snide denied making any threats to plaintiff. *Id.* at 10, 15.

On August 27, 2013, plaintiff appealed the superintendent's decision to the CORC. Dkt. No. 69-10 at 10. On January 15, 2014, the CORC upheld the superintendent's decision. Dkt. No. 69-10 at 3. The committee determined that plaintiff did not present sufficient evidence to substantiate retaliation or malfeasance by staff. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff commenced this action with the filing of a complaint and an accompanying application to proceed in forma pauperis ("IFP"). Dkt. Nos. 1, 2. Following an initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A, Senior District Judge Thomas J. McAvoy issued an order granting plaintiff's IFP application and approving the filing of his complaint subject to dismissal of all claims asserted against Dirie. *See generally* Dkt. No. 11.

On July 24, 2015, defendants filed a motion for summary judgment seeking dismissal of the complaint on multiple grounds, including (1) the lack of personal involvement of defendants Hammond and Goppert; (2) the lack of record evidence to give rise to a genuine dispute of material fact regarding whether Snide retaliated against plaintiff in violation of his First Amendment constitutional right; (3) Eleventh Amendment immunity; and (4) qualified immunity. *See generally* Dkt. No. 69. Plaintiff responded with the filing of his response in opposition to the defendants' motion and a cross-motion for summary judgment. Dkt. No. 74. Defendants have submitted a reply in further support of their motion. Dkt. No. 77. The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3( c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

A. Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**\*4** A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*,

477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Eleventh Amendment Immunity

Defendants maintain that, to the extent that plaintiff has sued them for damages in their official capacities, his complaint is subject to dismissal. Dkt. No. 69-12 at 11. Plaintiff has not responded to defendants' argument.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y.App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing, *inter alia*, *Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action asserted against the named defendants in their official capacities are, in reality, claims against the State of New York, and therefore are subject to dismissal. *Daisernia*, 582 F. Supp. at 798-99. Accordingly, I recommend that, to the extent that the damage claims raised in plaintiff's complaint are asserted against any of the named defendants in their official capacities, those claims be dismissed.

### C. Personal Involvement

Plaintiff alleges that defendants Hammond and Goppert are responsible for his lost or destroyed legal mail because, as commanding officers, they had knowledge of the illegal actions of their subordinates and failed to address the violations. Dkt. No. 74 at 2, 8. Defendants Hammond and Goppert argue that the record before the court fails to establish their involvement in any alleged constitutional violations.

 **\*5** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C.] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). As the Supreme Court has noted, a defendant may only be held accountable for his own actions under section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994). [10]

With respect to individuals who, like defendants Hammond and Goppert, are sued in their capacities as supervisors, it is well-established that they cannot be liable for damages under section 1983 solely by virtue of being a supervisor. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[L]iability ... cannot rest on respondeat superior."); *Wright*, 21 F.3d at 501. To

establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

The record before the court firmly establishes that Goppert was not involved in any of the alleged constitutional violations. Plaintiff did not observe Goppert tamper or otherwise interfere with plaintiff's legal mail, and concedes that he was never told that Goppert interfered with his mail. Dkt. No. 69-8 at 25. Plaintiff admitted that he never encountered Goppert while he was confined at Bare Hill. *Id.* at 23. Plaintiff testified that he identified Goppert in his complaint because "officers" told him that Goppert was in charge of the mailroom. *Id.* at 33-34. This notwithstanding, the record does not support that assertion. In support of defendants' summary judgment motion, Goppert has provided a declaration in which she avers that her responsibilities included supervising lieutenants, sergeants, and officers, and serving as a hearing officer. Dkt. No. 69-3 at 1. Goppert was not responsible for the handling of incoming or outgoing mail, and the record lacks any evidence suggesting that Goppert participated in the investigation related to plaintiff's grievance regarding the mail issue. *Id.*

In opposition to defendants' motion, plaintiff contends that he did not receive a response to his FOIL request seeking the names of the individuals who "signed for" the package containing his legal documents. Dkt. No. 74 at 2. The undisputed record does not support this claim. On June 16, 2013, plaintiff submitted the FOIL request to administrative staff. Dkt. No. 69-10 at 12, 24. On July 22, 2013, plaintiff received a copy of the log book for April 4, 2013 through April 20, 2013. Dkt. No. 69-10 at 24. Any delay in receiving the requested information was due to plaintiff's error in submitting the FOIL request to administrative staff rather than the facility FOIL officer. *Id.*

**\*6** In sum, I find that plaintiff has failed to establish a basis for finding personal involvement on the part of Goppert for the alleged constitutional deprivations. Accordingly, I recommend that this portion of defendants' motion seeking dismissal of plaintiff's claims against defendant Goppert's be granted.

The court reaches a different conclusion with respect to defendant Hammond. In July 2013, Hammond conducted an investigation of plaintiff's grievance related to his legal mail. Dkt. No. 69-9 at 14. The participation of Hammond in the administrative grievance process sufficiently implicates her personal involvement in the constitutional violations alleged to survive summary judgment. *See Keitt v. NYS Dep't of Corrs. and Cmty. Supervision*, No. 11-CV-0855, 2015 WL 2383687, at *15 (W.D.N.Y. May 19, 2015) (finding sufficient personal involvement where the defendant investigated the plaintiff's claims) (citing *Watson v. Wright*, 2013 WL 1791079, *9 (W.D.N.Y. 2013), *adopted* 2013 WL 1789578 (Arcara, J.) ("A supervisor's detailed, specific response to a plaintiff's complaint may suffice to establish personal involvement.")). The facts before the court disclose the existence of a genuine, triable issue of material fact surrounding Hammond's personal involvement with plaintiff's legal mail.

In summary, I recommend that defendants' motion for summary judgment on the basis of lack of personal involvement be granted with respect to defendant Goppert, but denied as it relates to defendant Hammond.

### D. Merits of Plaintiff's Claims Against Defendant Hammond [11]

Plaintiff contends that, as a result of the destruction of his legal mail, he was denied access to courts and deprived of equal protection. Dkt. No. 69-1 at 1. Plaintiff also alleges that Hammond destroyed his legal mail in retaliation for plaintiff filing a lawsuit against Miller. Dkt. No. 69-8 at 27.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 98 of 121

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

### 1. Access to Courts

Undeniably, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *accord, Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("The right that Bounds acknowledged was the (already well-established) right of *access to the courts*." (emphasis in original)). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis*, 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quotation marks omitted).

**\*7** Plaintiff claims that he "missed court imposed deadlines" as a result of defendants' "failure to turn over [his] legal mail." Dkt. No. 1 at 8. Plaintiff has failed to offer any specifics regarding those claims and to adduce proof from which a reasonable factfinder could conclude that he did indeed experience prejudice by virtue of defendants' failure to provide him his legal materials, leaving instead only his conclusory allegations without underlying evidentiary support. *Collins v. Goord*, 438 F. Supp. 2d 399, 418 (S.D.N.Y. 2006) (holding that vague allegations do not "substitute for the required showing of an 'actual injury' in a specific legal action resulting from the alleged deprivation"). Moreover, the docket in *Nicholson I* belies plaintiff's claims. On April 1, 2013, plaintiff filed a motion for leave to proceed *in forma pauperis* and an inmate authorization form in *Nicholson I.* Dkt. No. 4. From June 2013 through July 2014, when he was transferred out of Greene, the records show that plaintiff actively litigated the case, including by filing motions for the appointment of counsel, motions to reconsider prior rulings, and various discovery motions. These submissions do not suggest that any defendant tampered with plaintiff's legal mail, on a continuous and regular basis, resulting in any prejudice or injury.

The record now before the court does not support plaintiff's claim that he was denied access to the courts, nor does it establish the existence of prejudice suffered as a result of any such deprivation, if indeed it did occur. Accordingly, I recommend dismissal of plaintiff's court access claims as a matter of law.

### 2. Equal Protection

Plaintiff claims that he was treated differently from "other offenders who receive legal mail and of whom file grievances." Dkt. No. 1 at 8. The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

Plaintiff's complaint contains no specifics, nor does the record provide any amplification regarding this claim. Absent such specifics, I conclude that no reasonable factfinder could find that plaintiff was discriminated against on the basis of a suspect class or otherwise subject to invidious discrimination and therefore recommend dismissal of his equal protection claims. *See Jackson v. Burke*, 256 F.3d 93, 96-97 (2d Cir. 2001).

### 3. Retaliation

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate, motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). The Second Circuit has cautioned, however, that, because of "the ease with which claims of retaliation may be fabricated, courts should examine

prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *accord*, *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2013).

To establish a claim under section 1983 for unlawful retaliation, a plaintiff must prove that (1) he engaged in protected conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). "[P]rison officials' conduct constitutes an 'adverse action' when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

 **\*8**  As to the first element of the retaliation claim, it is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."). Here, it is undisputed that plaintiff filed a grievance and lawsuit against Miller.

With respect to the second element, the undisputed record establishes that plaintiff's legal mail was "lost" on two occasions. As was discussed above, plaintiff failed to prove that he suffered any injury as a result of the tampering. Thus, plaintiff has failed to establish that the alleged conduct would deter an ordinary individual from exercising his constitutional rights. *See Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at \*7 (S.D.N.Y. Sept. 29, 2006).

Even assuming that the loss of legal mail constitutes an adverse action, plaintiff must establish the third element of the retaliation analysis, causation. Here, plaintiff relies upon the temporal proximity between the protected conduct and the retaliatory act to establish this third required element. Dkt. No. 1 at 8. Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. In the case of an allegedly false, retaliatory misbehavior report issued to an inmate, the analysis is informed by such factors as (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 872-73). In any case, the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action. *Baskerville*, 224 F. Supp. 2d at 732.

In March 2013, plaintiff filed his complaint in *Nicholson I*. One month later, in April 2013, plaintiff's legal mail was lost. While the chronology of events favors a finding of causal connection, plaintiff may not rely upon temporal proximity alone to defeat summary judgment. *Faulk v. Fisher*, 545 Fed.Appx. 56, 58 (2d Cir. 2013) (finding that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation). To this end, plaintiff has not cited any evidence aside from temporal proximity that supports the requisite nexus. The record does not contain any proof from which a reasonable factfinder could conclude that any action by Hammond was motivated by plaintiff's filing of grievances or a lawsuit against Miller. Hammond is not named as a defendant in *Nicholson I*, and is not referenced anywhere in the complaint in that action. *See Nicholson I* (Dkt. No. 1). Plaintiff did not encounter Hammond while he was confined at Bare Hill. Dkt. No. 69-8 at 24. Similarly, plaintiff did not encounter Miller while he was confined at Greene. Dkt. No. 69-8 at 28. There is no evidence of any connection between Miller and Hammond and, indeed, no evidence that Hammond was even aware that plaintiff filed grievances or a lawsuit against Miller. Plaintiff did not mention Hammond or Miller in the June 2013 grievance. Dkt. No. 69-8 at 28. The evidence now in the record fails to establish a connection between Hammond and plaintiff's grievance and lawsuit against Miller. The record is barren of any evidence from which a reasonable factfinder could conclude that Hammond retaliated against plaintiff for grievances and a lawsuit against Miller. In view of these facts, I conclude that plaintiff has not shown a cognizable retaliation claim against Hammond.

   E. Merits of Plaintiff's Claims Against Snide

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 100 of 121

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

**\*9** Defendants move for summary judgment and dismissal of all claims against defendant Snide, arguing that plaintiff does not have a constitutional right to file grievances. Defendants also contend that plaintiff's retaliation claim is subject to dismissal because verbal threats do not constitute adverse actions. Dkt. No. 69-12 at 8-11. Plaintiff did not respond to defendants' arguments. *See generally* Dkt. No. 74.

## 1. Grievance Procedures

Prison inmates have no constitutionally protected right of access to an administrative grievance process at a prison facility. *Rhodes v. Hoy*, No. 05-CV-836, 2007 WL 1343649, at \*6 (N.D.N.Y. May 5, 2007) (Scullin, J.) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi*, No. 01-CV-0285, 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."). Claims that arise under state law and regulation are not cognizable under section 1983. *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."). For this reason internal regulations governing prison grievance procedures do not give rise to federally protected liberty interests, and the alleged failure of prison officials to follow prescribed procedures associated with an established grievance process does not support a civil rights claim under section 1983, absent the independent deprivation of a right protected under the Constitution, or by federal statute. *See Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim."); *Aho v. Hughes*, No. 03-CV-1552, 2005 WL 2452573, at \*7 (D. Conn. Sept. 30, 2005) (noting that the "failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right"); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) ("While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.") (internal citations omitted); *see also Hunnicutt v. Armstrong*, 305 F. Supp. 2d 175, 188 (D. Conn. 2004), *vacated on other grounds*, 152 Fed.Appx. 24 (2d Cir. 2005).

Accordingly, based upon my finding that plaintiff did not suffer a constitutional deprivation in this regard, I recommend that Snide's motion seeking dismissal of this claim be granted.

## 2. Retaliation Based Upon Verbal Harassment

Section 1983 was not designed to rectify harassment or verbal abuse. *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996). As such, the mere allegation by a prison inmate that he or she has experienced verbal abuse from prison workers does not rise to the level of a constitutional violation, and is not independently cognizable under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck*, No. 97-CV-0253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983); *Carpio v. Walker*, No. 95-CV-1502, 1997 WL 642543, at \*6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J.) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.").

**\*10** Plaintiff's claims regarding verbal harassment extend beyond merely asserting that it represents a constitutional violation in and of itself. Plaintiff's claims against Snide are directly tied to grievances against his fellow workers. Plaintiff alleges, for example, that Snide verbally threatened him "in response to plaintiff's filing of grievances against Hammond and Goppert." Dkt. No. 69-1 at 3.

While in some instances verbal threats may suffice to constitute adverse action for purposes of a retaliation claim, whether they do in a particular case is dependent upon the specificity of the threat and the context in which it was made. *Compare Hepworth v. Suffolk Cnty.*, No. 02-CV-6473, 2006 WL 2844408, at \*8-9 (E.D.N.Y. Sept. 29, 2006) (numerous verbal threats

that inmate "would receive another beating or be killed" was enough evidence that a "reasonable jury could find that the officers unconstitutionally retaliated against" inmate) *with Bartley v. Collins*, No. 05-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action); *Alicea*, 387 F. Supp. 2d at 237 ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim," especially when the threat was never carried out).

Considered against this backdrop, I conclude that plaintiff's allegations against Snide, even if true, claim nothing more than simple verbal harassment which does not rise to a level of constitutional significance. Snide's alleged verbal threat never came to fruition and is patently insufficient to establish adverse action and support a plausible retaliation claim. Plaintiff's failure to allege any other specific adverse action taken by Snide is further fatal to this cause of action.

Because plaintiff has failed to adduce any evidence of adverse action taken against him by Snide as a result of the grievances he filed, I have concluded that he has failed to come forward with sufficient facts to support a plausible claim for retaliation, and I therefore recommend that defendants' motion for summary judgment dismissing that cause of action be granted.

## IV. SUMMARY AND RECOMMENDATION

Neither plaintiff's complaint nor the record before the court discloses any basis for finding personal involvement on the part of Goppert in the constitutional deprivations alleged. Turning to the merits of the claims advanced by the plaintiff against Hammond, I conclude that plaintiff's complaint is deficient insofar as it alleges a denial of court access based upon the fact that plaintiff has not established the existence of any injury or prejudice resulting from the loss of his legal mail. I further find that no reasonable factfinder could return a verdict in plaintiff's favor with regard to his equal protection claim. I also find that the record lacks any evidence from which a reasonable factfinder could conclude that Hammond retaliated against plaintiff based upon the lack of showing of any connection between plaintiff's grievance and lawsuit against Miller and any action by Hammond. I also recommend dismissal of plaintiff's claims against Snide based upon plaintiff's failure to establish the existence of a federally protected right of access to the grievance process at Greene, and the lack of any evidence in the record to support a claim for retaliation. Finally, I find that all claims against the defendants for damages in their official capacities are subject to dismissal on the basis of the Eleventh Amendment. [12]

**\*11** It is therefore hereby respectfully

RECOMMENDED that plaintiff's motion for summary judgment (Dkt. No. 74) be DENIED; and it is further

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 69) dismissing all claims in this action be GRANTED, and judgment be entered dismissing plaintiff's complaint in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3369286

Nicholson v. Hammond, Not Reported in Fed. Supp. (2016)

---

**Footnotes**

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court. Ordinarily, when a motion for summary judgment is made, the record before the court is construed with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). In this case, in light of the parties' cross-motions for summary judgment, the court draws "all factual inferences ... against the party whose motion is under consideration." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (quotation marks omitted).

2    In July 2014, plaintiff was released from DOCCS custody. Dkt. No. 69-5 at 2. In October 2014, he was incarcerated due to a parole violation. Dkt. No. 69-8 at 13. On October 20, 2015, plaintiff was again released from DOCCS custody. *See* http://nysdoccslookup.doccs.ny.gov (last visited May 9, 2016).

3    Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

4    The court may properly rely upon the *Nicholson I* docket because docket sheets are public records, "of which the court could take judicial notice." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (citations omitted).

5    Grimmick is not a defendant in this action.

6    During his deposition, plaintiff testified that his legal mail was destroyed on April 2, 2013, April 3, 2013 and April 12, 2013. Dkt. No. 69-8 at 20-21.

7    Mr. Black is not a defendant in this action.

8    Dirie is not a defendant herein.

9    The name of the superintendent who issued that decision is not legible.

10   All unreported cases cited to in this decision have been appended to this report for the convenience of the *pro se* plaintiff.

11   Defendants moved for summary judgment on the basis of lack of personal involvement and did not address the merits of plaintiff's claims against Hammond. "Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court and those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law, a district court does not err in sua sponte granting summary judgment against the plaintiff." *Parks v. Town of Greenburgh*, 344 Fed.Appx. 654, 655 (2d Cir. 2009) (citing *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)). In this instance, plaintiff was given notice of the court's consideration of summary judgment and had the opportunity to submit evidence in opposition to defendants' motion. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir. 2000). Plaintiff did not raise any notice objection, and has not only submitted opposition to the motion, but has gone further and filed a cross-motion for summary judgment in his favor, on the merits. Thus, the court will address the merits of plaintiff's claims against Hammond.

12   In light of my recommendations that defendants' motion be granted in its entirety based on the merits, I find it unnecessary to address defendants' alternative qualified immunity argument.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4445475
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Carlos ROMAN, Plaintiff,
v.
John VELLECA, et al, Defendants.

Civil Action No. 3:11cv1867(VLB).
|
Sept. 25, 2012.

**Attorneys and Law Firms**

William Sylvester Palmieri, Law Offices of William S. Palmieri, LLC, New Haven, CT, for Plaintiff.

Nicole C. Chomiak, Stacey L. Pitcher, Nuzzo & Roberts, Cheshire, CT, Vikki Cooper, Corporation Counsel City of Stamford, Stamford, CT, for Defendants.

### *MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. # 16] MOTION TO*

VANESSA L. BRYANT, District Judge.

**\*1** Before the Court is the Defendants' Motion to Dismiss the complaint of the Plaintiff, Detective Carlos Roman of the New Haven Police Department, alleging that he was subjected to four counts of unlawful mistreatment in the course of his employment. The Defendants, John Velleca ("Velleca"), Frank Limon ("Limon"), and the City of New Haven (the "City") now move to dismiss the Plaintiff's complaint on the grounds that the Plaintiff has failed to state a claim upon which relief can be granted. In his complaint, Plaintiff alleges that "the Defendants engaged in discrimination, harassment, hostile work environment, disparate treatment of, and retaliation against" the Plaintiff in violation of his rights under the Constitution, federal law, and Connecticut state law. In Count I of his complaint, the Plaintiff claims that Velleca's actions constitute a violation of the Plaintiff's equal protection, First Amendment, and substantive and procedural due process rights. In Count II, the Plaintiff reasserts his Count I claims as applied to the actions of Defendant Frank Limon. In Count III, the Plaintiff alleges that "the actions and conduct of the Defendant City of New Haven evince an official policy or custom which has caused the Plaintiff to be subject to a denial of ... his constitutional rights," subjecting the city to municipal liability for the claims set forth in Counts I and II. Finally, in Count IV, the Plaintiff alleges that Defendants Velleca and Limon unlawfully and intentionally inflicted extreme emotional distress upon the Plaintiff. The Defendants have filed a motion to dismiss counts one through four of the Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Defendants' motion is granted.

*Factual Background*

Plaintiff, Carlos Roman, has been a police officer for the New Haven Police Department for approximately nineteen years and alleges that he has been a "loyal and valuable employee" with "an excellent employment record." [Dkt. # 1, Compl. Count I, ¶ 10]. He now claims that the City and members of the Department subjected him to unlawful abuse on multiple occasions, and seeks relief for the allegedly ongoing mistreatment. *Id.* at ¶ 1.

A. The Initial Altercation

In July of 2010, the Plaintiff was employed as a Major Crimes Unit Detective for the New Haven Police Department. *Id.* at ¶¶ 11, 12. At that time, the Department's Major Crimes Unit was undergoing a personnel change directed by Defendant then-

Lieutenant John Velleca. *Id.* at ¶¶ 7, 13. On or around July 26, 2010, when Defendant Velleca directed the Plaintiff to bring a memorandum of the new transfers and assignments to Defendant Velleca's office, the Plaintiff chose to express the concerns he had regarding the change. *Id.* at ¶ 12. Although Plaintiff himself was not named on the transfer list, he was concerned that the transfers would "negatively impact[ ] the provision of police services to the public." *Id.* at If 16.

**\*2**  When the Plaintiff raised his concerns, however, "Defendant Velleca began yelling at Plaintiff," and informed Plaintiff "in a loud and threatening manner" that the changes had been made " 'because [Velleca] said so.' " *Id.* at If 13. Distressed, the Plaintiff "responded by looking downward at the floor." *Id.* at If 16. According to the Plaintiff, Defendant Velleca nevertheless continued his "threatening tirade." *Id.* at If 19. After first directing the Plaintiff to close the door "so that others would not overhear," the Defendant "instructed the Plaintiff to voice his concerns." *Id.* at If 14. The Plaintiff complied, and "spoke out on matters of public concern," by opining to Velleca that "a strong bond and trust exists between the detectives in the squad," such that "transferring in new detectives while transferring the existing detectives to other units would make working relationships difficult, thereby negatively impacting the provision of police services to the public." *Id.* at If 15. The Plaintiff claims that Defendant then responded by violently, repeatedly and profanely "shout[ing] at the Plaintiff, 'Get the f——k out! I'm not listening to this s——t! Get out!' " while clenching his fist and repeatedly pounding it against his desk. *Id.* at ¶¶ 17, 18. The Plaintiff asserts that, in his rage, "the veins in the Defendant Velleca's neck protruded and saliva flew from his mouth," causing the Plaintiff to fear for his safety, "convinced that the Defendant ... was going to attack him." *Id.* at ¶¶ 20, 21. When Velleca then threatened to "mak[e] [Plaintiff's] life miserable," the Plaintiff sought to make clear that his concerns were for public safety and "not simply his own assignment." *Id.* at ¶¶ 24, 25. Accordingly, he assured Velleca that " 'No matter what decisions" were made, he would "continue to come to work and give one hundred percent." *Id.* at ¶ 25.

Immediately after the Plaintiff left the office, Defendant Velleca directed that the Plaintiff be written up for voicing his concerns. *Id.* at ¶ 36. Yet what is more, soon after the incident, on July 27, 2010, the Plaintiff received a transfer order, which "was signed by Defendant Limon, and copied to Defendant Velleca." *Id.* at ¶ 41. The Plaintiff alleges that Defendant Velleca "obtained the transfer of the Plaintiff to a less desirable assignment" by "making false statements about the incident to an Assistant Chief." *Id.* at ¶ 41. Plaintiff, an Hispanic officer, also claims that Defendant Velleca has a history of similar "discriminatory, harassing, abusive, and retaliatory conduct" toward minority employees and female officers. *Id.* at ¶ s 5, 43.

Consequently, the Plaintiff filed a formal complaint against Velleca with his supervisors. *Id.* at ¶ 26. He also forwarded copies of the complaint to the New Haven Police Union, his private attorney, the National Latino Peace Officers Association, and the "Commission of Human Rights." *Id.* at ¶ 26.

### B. The August 12 Incident

**\*3**  The Plaintiff asserts that a second episode of harassment by Defendant Velleca took place the following month, around August 12. *Id.* at ¶ 45. The incident began, according to the Plaintiff, when Defendant Velleca approached the Plaintiff's new desk, "stared at him," and repeatedly asked, "Do you have a problem?" *Id.* at ¶¶ 45, 47. When the Plaintiff remained silent, the Defendant stated, "Yeah, I didn't think so!" and left. *Id.* at ¶ 48. Immediately after the incident, the Plaintiff complained to his supervisor. At that time, accompanied by his supervisor, the Plaintiff informed Defendant Velleca that he would not tolerate the Defendant's harassment. *Id.* at ¶ 50. In response, Velleca again threatened the Plaintiff, telling him, "Carlos, you did not learn your lesson, but you will!" *Id.* at ¶ 51. Once again, "after he finished berating and humiliating the Plaintiff, the Defendant Velleca ordered Plaintiff's supervisor ... to write up the Plaintiff," even though he was "unable to specify a violation ... upon which to discipline the Plaintiff." *Id.* at ¶¶ 69, 71. Additionally, Defendant Velleca also "filed a written disciplinary report to the Defendant Limon, once again falsely claiming that the Plaintiff had engaged in misconduct." *Id.* at ¶ 74.

Subsequent to the August 12 incident, the Plaintiff made verbal complaints, which he later followed up with written complaints, to his supervisor, his Union representatives, and the City of New Haven. *Id.* at ¶¶ 52, 53, 72. In his written complaints, the Plaintiff made clear that the Defendant's behavior not only "made him afraid to be in the workplace," but also "made him feel

like a prisoner in his own home as well, as he ... worried that Velleca [would] show up there, and threaten him and his family." *Id.* at ¶ 60.

### C. Allegations of Continued Mistreatment

On August 24, 2010, Defendant Velleca again ordered a supervisor to "discipline the Plaintiff" for pretextual reasons with the motive "to further discriminate against, harass, and retaliate against the Plaintiff." *Id.* at ¶ ¶ 77, 78, 79. When the matter was referred to Defendant Assistant Chief Limon, however, Limon disregarded the Plaintiff's complaints and ignored the positive appraisal of the Plaintiff offered by his supervisor. *Id* . at ¶ s 83, 84. Thus, on November 10, 2010, Defendant Limon suspended the Plaintiff for three days "on the basis of [the] false and pretextual claims" put forth by Velleca. *Id.* at If 85.

Finally, after the Plaintiff filed an additional grievance about his mistreatment, on March 14, 2010, the Defendant City of New Haven acknowledged that " 'some of Lt. Velleca's actions were inappropriate for a supervisor,' and that Velleca both initiated and escalated the inappropriate contact with the Plaintiff." *Id.* at ¶¶ 86, 87. Nevertheless, according to the Plaintiff, "the City of New Haven failed, refused, or neglected to discipline the Defendant" or to "act to prevent further harm to the Plaintiff." *Id.* at If 88. Consequently, around July 29, 2011, the Plaintiff was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct. *Id.* at If 91. Indeed, according to the Plaintiff, "the Defendant Velleca, now an Assistant Chief, continues to subject the Plaintiff to harassment." *Id.* at If 90. As a result, the Plaintiff claims that he continues to suffer economic and psychological losses. *Id.* at If 93. For example, on one occasion, "Velleca's conduct caused the Plaintiff to be upset and agitated," so that he was "forced to leave his workplace and use a sick day." *Id.* at If 68

 **\*4**  For the aforementioned reasons, the Plaintiff seeks relief for the mistreatment he claims to have undergone in the course of his employment. *Id.* at If 1.

### *Legal Standard*

" 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Sarmiento v. U.S.,* 678 F.3d 147 (2d Cir.2012)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949–50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief .' " *Id.* (quoting *Iqbal,* 556 U.S. 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

### *Analysis*

### A. Discrimination, Harassment, and Hostile Work Environment Claims

To begin, the Plaintiff alleges that the Defendants subjected him to discrimination in the form of disparate treatment, harassment, hostile work environment, and retaliation. An employee subjected to such unlawful treatment has a cause of action under both

Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"). A Plaintiff's Title VII and CFEPA claims will not stand, however, where the Plaintiff (1) brings his complaint prematurely, (2) issues a complaint alleging inadequate factual allegations, or (3) fails to properly substantiate his claim.

First, because voluntary compliance is the "preferred means for enforcing Title VII," before resorting to the courts a Title VII Plaintiff must make preliminary attempts to resolve his dispute by filing a charge with the Equal Employment Opportunity Commission ("EEOC") or an equivalent state agency and obtaining a right-to-sue letter. *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 771, 103 S.Ct. 2177, 76 L.Ed.2d 298, (1983); *Williams v. New York City Hous. Auth.,* 458 F.3d 67, 71 (2d Cir.2006). Similarly, this court has held that a complaint under the CFEPA cannot survive where the Plaintiff did not first file a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *Spell v. Connecticut,* 602 F.Supp.2d 387, 392 (D.Conn.2009).

 **\*5**  The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The Second Circuit has explained that "[e]very circuit before us that has faced the question has held that a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court. *Pietras v. Bd. of Fire Com'rs of Farmingville Fire Dist.,* 180 F.3d 468, 474 (2d Cir.1999) (citing *Rivers v. Barberton Bd. of Educ.,* 143 F.3d 1029, 1031 (6th Cir.1998); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 505 (1st. Cir.1996); *Gooding v. Warner–Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984)).

In this case, the Plaintiff does not allege or otherwise informed the Court that he had at any time filed a complaint with the EEOC or obtained a right-to-sue letter. The Plaintiff does, however, allege to have "forwarded a copy" of a complaint he had written to his supervisor to "the Commission of Human Rights." Nevertheless, the Plaintiff's complaint does not make clear whether the Plaintiff filed a formal complaint under Title VII or CFEPA with the CHRO. In addition, neither plaintiff nor defendant has set forth any circumstances indicating that the failure to obtain a right to sue letter has been waived by either party. Moreover, this Court sees no good cause to apply estoppel, equitable tolling or waiver to this requirement. Consequently, Plaintiff's employment discrimination, retaliation and hostile work environment claims under Title VII and CFEPA claims are barred by Plaintiff's failure to timely file a charge of discrimination with the EEOC.

Assuming arguendo that Plaintiff did timely file a charge of discrimination with the EEOC and obtained a right to sue letter, the Plaintiff's employment discrimination, retaliation and hostile work environment claims under Title VII and CFEPA cannot stand because they rest solely on legal conclusions and do not, as a matter of law, provide sufficient factual grounds to comply with the plausibility standard set forth in *Iqbal,* 129 S.Ct. at 1949.

   i. Title VII Disparate Treatment Claim

Discriminatory treatment claims under Title VII depend on the plaintiff's ability to show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. *Adams–Martin v. CT Dept. of Dev. Services,* No.3:10–cv00099(VLB), 2012 WL 878306, \*16 (D.Conn. Mar. 14, 2012) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Here, the first and second prongs of the test are satisfied because the Plaintiff is a Hispanic employee, and his complaint identifies him as a loyal employee with an excellent employment record. In addition, Plaintiff has arguably satisfied the third prong of the test by alleging that he was demoted and was suspended for three days to survive a 12(b)(6) challenge. However, courts have held that mere inconvenience or changes in job responsibilities do not rise to the level of materially adverse employment action. *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d. Cir.2000) (holding that a demotion may constitute a materially adverse action only when "evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices' ") (quoting *Crady v. Liberty Nat'l Bank and Trust*

*Co.,* 993 F.2d 132, 136 (7th Cir.1993)). Likewise courts have found that a suspension without pay only in certain circumstances can constitute an adverse employment action. *See, e.g., Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223–224 (2d Cir.2001) (holding that one-week suspension without pay is adverse action, even if pay is later reimbursed, because plaintiff "at least suffered the loss of the use of her wages for a time"); *Page v. Connecticut Dep't of Pub. Safety, Div., of State Police,* 185 F.Supp.2d 149, 157 (D.Conn.2002) ("In this case, plaintiff was suspended for two days without pay. Thus, she lost wages. She was also orally counseled for three alleged incidents of unacceptable work behavior and then reprimanded in writing. These would be sufficient to support a jury's finding that she suffered adverse employment action."); *Cormier v. City of Meriden,* 420 F.Supp.2d 11, 21 (D.Conn.2006) (finding that "the one-day suspension without pay, which also resulted in a one-year loss of eligibility for the crew-leader premium, and the written disciplinary letters, which were placed in plaintiff's personnel file, can be considered adverse employment actions"); *Dobrynio v. Central Hudson Gas & Electric Corp.,* 419 F.Supp.2d 557, 564–565 (S.D.N.Y.2006) (rejecting "as a matter of law Plaintiff's contention that the loss of one day's pay worked a substantial change in the terms and conditions of his employment ... But being suspended for a single day, with no long term consequences whatever, is not an actionable adverse employment action because it is not *material.*") (emphasis in the original).

**\*6** Plaintiff's claim nonetheless fails as he has not alleged any facts which plausibly establish the final prong of the analysis. As to Defendant Velleca, the Plaintiff provides no factual grounds to provide a plausible basis for concluding that Defendant engaged in discrimination based on racial animus. Indeed, although Plaintiff complains about Defendant Velleca's history of racism and his "bias and bigotry toward [Plaintiff] on the basis of plaintiff's race," he provides no factual allegations to substantiate the conclusion. Plaintiff does not even attempt to show that an employee outside his protected class, who was "similarly situated" and who "engaged in comparable conduct," was treated more favorably by the Defendant. *Ruiz v. Cnty. Of Rockland,* 609 F.3d 486, 493–4 (2d Cir.2010) (holding that an inference of discrimination may be found where the plaintiff is treated less favorably than a similarly situated employee not in plaintiff's protected class). What is more, the Plaintiff makes clear that Defendant Velleca's retaliation stemmed from the parties' July 26 dispute regarding personnel transfers, and not from Defendant's alleged racial prejudice.

As to Defendants Limon and the City of New Haven, the Plaintiff offers nothing more than the legal conclusion that Defendants have engaged in "invidious discrimination." Indeed, the complaint expressly states that Defendant Limon relied on false allegations, and not discriminatory prejudice, when he suspended Plaintiff for three days. Plaintiff has therefore failed to fulfill his burden of establishing a plausible inference of discrimination. Consequently, Plaintiff's Title VII disparate treatment claim is dismissed on this basis as well.

ii. Title VII Retaliation Claim

The Plaintiff also alleges that the Defendants exercised unlawful retaliation under Title VII. In order to establish a retaliation claim, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 162 (2d. Cir.2010) (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005)). For the purposes of retaliation claims under Title VII, "adverse employment actions" include any "employer actions that would have been materially adverse to a reasonable employee." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

In this case, it does not appear that the Plaintiff filed a grievance with the EEOC or a proper complaint with the CHRO. Plaintiff did, however, engage in a protected act when he filed complaints with his supervisor and forwarded them to his Union, his attorney, and the Commission. *See Martin v. Town of Westport,* 558 F.Supp.2d 228, 245 (D.Conn.2008) ("[T]he filing of internal complaints of discrimination prohibited by CFEPA, or of a CHRO complaint, would constitute protected activities."). Nevertheless, even to the extent that the Plaintiff engaged in a protected activity, Plaintiff's claim must fail. After all, "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White,* 548 U.S. at 67. In his complaint, the Plaintiff fails to demonstrate that, as a result of filing his complaints, he suffered an adverse employment action rising to the level that a reasonable employee would have been deterred from complaining to the proper agency. *Id.* at 68; *see also Hicks,* 593 F.3d at 168 (holding that "reassignment of job duties is not immediately actionable,"

nor is the contention that defendant submitted false memoranda regarding plaintiff's work performance). For example, Plaintiff offers no factual enhancement whatsoever to support his conclusion that he "was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct." Thus unsubstantiated, Plaintiff's Title VII retaliation claim is also dismissed on this basis.

### iii. Title VII Hostile Work Environment Claim

**\*7** Title VII also protects employees from being subjected to a discriminatorily hostile work environment. *Adams–Martin,* 2012 WL 878306, at \*34 (citing *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Whether the Plaintiff's workplace is hostile under Title VII depends on the totality of the circumstances in each case; however, relevant factors may include the frequency, severity, and effect of the discriminatory conduct. *Harris,* 510 U.S at 23. To prevail in a hostile work environment claim, a plaintiff must show three elements: (1) that the plaintiff himself found the environment hostile, (2) that the environment would have been considered hostile to a reasonable person, and (3) the employee was subjected to the abusive environment because of his race or national origin. *Id.*

The Plaintiff complains that within the span of one month, he was subjected to two occasions of verbal abuse from Defendant Velleca, including shouting, swearing, and threats to "make [Plaintiff's] life miserable." Plaintiff also alleges that the Defendant ordered that Plaintiff be written up without just cause, and that Defendant submitted a false report that resulted in Plaintiff's suspension. Yet where a plaintiff's claim is based on facially race-neutral conduct, he must set forth enough evidence indicative of discrimination to establish "a basis from which a reasonable fact-finder could infer that those incidents were infected by discriminatory animus." *Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir.2002). Here, despite Plaintiff's subjective view that the environment was abusive, Plaintiff has failed to allege facts plausibly demonstrating any kind of discriminatory abuse, let alone that which is so pervasive or severe "that the terms and conditions of [his] employment were thereby altered." *Leibovitz v. N.Y. City Transit Authority,* 252 F.3d 179, 188 (2d Cir.2001). To be sure, "hostile work environment cases [must] exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" to prevent the federal courts from "becom [ing] a court of personnel appeals." *Alfano,* 294 F.3d at 377. Thus, Plaintiff's unsubstantiated claim of hostile work environment on the basis of his race is dismissed on this basis as well.

### iv. CFEPA Claim

Furthermore, an employer violates the CFEPA if he discriminates "in terms, conditions or privileges of employment because of the individual's race, color ... [or] national origin." Conn. Gen.Stat. § 46a–60(a)(1). The Connecticut Supreme Court has held that claims of discrimination and retribution under the CFEPA are analyzed under the same model of analysis used in federal Title VII claims. *Jackson v. Water Pollution Control Auth. of City of Bridgeport,* 278 Conn. 692, 705–06, 900 A.2d 498 (2006). Therefore, for the same reasons discussed above, Plaintiff's claims under Connecticut State Law must also fail in their entirety.

### B. Equal Protection Claim

**\*8** The Plaintiff also alleges in his complaint that the government violated his right to Equal Protection under the Fourteenth Amendment. The government violates the Equal Protection Clause where it fails to treat "similarly situated people in a like manner ." *See Heusser v. Hale,* 777 F.Supp.2d 366, 382 (D.Conn.2011) (citing *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001)). Where a plaintiff alleges that he was singled out for discriminatory treatment that was race-neutral on its face, however, the plaintiff must show that the defendant acted with a *purpose* to discriminate. *Hayden v. County of Nassau,* 180 F.3d 42, 50 (2d Cir.1999). That is, he must show that the defendant "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' adverse effects" upon members of a protected class. *Id.* (quoting *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

In this case, the Plaintiff fails to allege facts demonstrative of government action that was discriminatory on its face. At the same time, the Plaintiff also fails to create a plausible inference that Defendants acted with discriminatory purpose. Indeed, aside from his assertion that Defendant Velleca had a history of discriminatory conduct toward minority and female employees,

Plaintiff offers no grounds to support his assertion that the defendant "engaged in invidious discrimination" in this instance. As discussed above, the facts set forth in the complaint demonstrate that Defendant Velleca's inappropriate conduct was motivated by his disagreement with Plaintiff over the reorganization of the Major Crimes Unit rather than Plaintiff's race or ethnicity.

As for the Plaintiff's claims against Defendant Assistant Chief Limon (Count II), the Defendant cannot be held liable " 'merely because he held a high position of authority,' but can be held liable only of he was personally involved in the alleged deprivation ." *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 127 (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). While such direct involvement may in some cases be found where the defendant exhibits "deliberate indifference" by "failing to act on information indicating that unconstitutional acts were occurring," such will only be the case where "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Id.* (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Plaintiff has failed to supply a factual basis for so finding in this case. *See Id.* at 127 (finding no "deliberate indifference" where defendant's response was not "clearly unreasonable in light of known circumstances"). Indeed, Plaintiff merely alleges that Defendant Limon acted on false information in disciplining the Plaintiff. Thus, Plaintiff's Equal Protection claim is dismissed as a matter of law.

### C. First Amendment Retaliation Claim

**\*9** It is well-established that a government employee who is speaking as a citizen on matters of public concern is protected from retaliation for his speech under the First Amendment. *Garcetti v. Ceballos,* 547 U.S. 410, 419, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). However, speech by a public employee pursuant to the employee's official duties, is not protected from employer discipline. *Id.* at 421. In some instances, speech may be deemed " 'pursuant to 'a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.' " *Platt v. Incorporated Village of Southampton,* 391 Fed.Appx. 62, 64 (2d Cir.2010) (citing *Weintraub v. Bd. of Educ.,* 593 F.3d 196, 203 (2d Cir.2010)). In any case, to survive a motion to dismiss, a plaintiff must present sufficient facts to support the plausible inference that (1) his speech was protected, (2) the plaintiff was subjected to adverse action, and (3) the speech was the cause of the adverse action. *Scott v. Coughlin,* 344 F.3d 282, 286 (2d Cir.2003).

In this case, the Plaintiff, a Detective in the Major Crimes Unit, does not have First Amendment protection for his speech where he spoke out in protest against the manner in which the Unit was being operated. *See Garcetti,* 547 U.S. at 418 (holding that, insofar as the speech "has some potential to affect the entity's operations," the government "has broader discretion to restrict speech"). Plaintiff alleges that he "spoke out on matters of public concern" because he was worried that the personnel transfers would put the public at risk. In support of his allegation, he claims that he was not on the transfer list at the time of his speech, and thus was clearly concerned with public safety rather than his own position. Even if the Court draws all reasonable inferences from such allegations which are entitled to an assumption of truth, it is clear that Plaintiff's alleged speech was made in his capacity as a police officer and not as a citizen on a matter of public concern. Consequently, Plaintiff's speech is not protected as a matter of law. *See Platt,* 391 Fed.Appx at 64 (finding no protected speech where plaintiff raised concerns regarding the adverse impact of an inter-department relationship on public safety because "we cannot say that a police officer speaking to a public official about his concerns over public safety issues is speaking in his capacity as a citizen, as opposed to his capacity as a police officer"); *Carter v. Incorporated Village of Ocean Beach,* 415 Fed. Appx. 290, 291 (2d Cir.2011) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.' ") (quoting *Weintraub,* 593 F.3d at 203); *Pisano v. Mancone,* No. 08 Civ. 1045(KMW), 2011 WL 1097554, at \*13 (S.D.N.Y. Mar.18, 2011) (holding that speech regarding lack of departmental rules or policies, that chief of police was issuing allegedly unlawful orders, that another police officer was not qualified and that the chief of police had directed improper alteration of payroll records "concerned the internal working of the police department, as well as issues of public safety" and that since such speech was in furtherance of the plaintiff's duties as a police sergeant it was part and parcel of his concerns about his abilities to execute that duty and therefore not protected under the First Amendment); *Frisenda v. Incorporated Village of Malverne,* 775 F.Supp.2d 486, 509 (E.D.N.Y.2011) (Fact that officer's memorandum to police chief discussing failure by members of the department to follow procedure in responding to emergency situations was written by the officer at his home did not "magically transform his speech as public employee into speech as private citizen,

as would support his First Amendment retaliation claims" as the speech was "made in connection with, and during course of, lieutenant's job duties.").

**\*10** The Plaintiff's alleged speech concerning the departmental transfers and its "public safety" impact undeniably concerned the internal workings of the police department and was clearly in furtherance of Plaintiff's duties as a Detective in that it was "part and parcel of his concerns about his ability to properly execute" those duties. *Weintraub,* 593 F.3d at 203. The fact that Plaintiff was not one of the officers on the transfer list did not magically transform his speech as a public employee into speech as private citizen. Thus, even insofar as the Plaintiff was concerned about the adverse effects of the Unit transfers on public safety, he expressed his concerns in the capacity of a police officer when he spoke to the Lieutenant in his office at the Lieutenant's request. Therefore, the Plaintiff has not plausibly stated a First Amendment Retaliation claim and his claim is accordingly dismissed.

### D. Substantive Due Process Claim

Additionally, the Plaintiff claims that the government deprived him of his right to substantive due process in the course of his employment. Government conduct violates a plaintiff's Fourteenth Amendment right to substantive due process only where it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Constitutional violations do not, in and of themselves, "shock the conscience" for the purposes of substantive due process. *Velez v. Levy,* 401 F.3d 75, 94 (2d Cir .2005). Therefore, where factual allegations shock the conscience only insofar as they constitute specific constitutional violations, plaintiffs may not seek redress under substantive due process. *See Id.* (dismissing substantive due process claims where allegations amounted to First Amendment and Equal Protection violations). Consequently, a substantive due process claim will not survive a motion to dismiss where it is either (1) subsumed by other constitutional claims, or (2) does not amount to a substantive due process violation as a matter of law.

First, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment ... must be the guide for analyzing' such a claim," and plaintiffs may not resort to the more general alternative category of substantive due process. *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Under this rule, substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources. *See Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir.2000) (analyzing detention claims under the Fourth Amendment rather than substantive due process).

The Plaintiff's claim that he was wrongly retaliated against after exercising his right to free speech must be analyzed under the First Amendment and not substantive due process. *See Velez,* 401 F.3d at 94 (denying to analyze plaintiff's First Amendment claim under a substantive due process rubric where plaintiff alleged that she was removed from the school board and defamed as a result of her speech). Moreover, the Plaintiff's claim that the government engaged in invidious discrimination against him merely duplicates his Equal Protection claims, as the Plaintiff does not allege any egregious facts beyond those comfortably subsumed by the alternative clause. *See Hogan v. State of Conn. Judicial Branch,* 220 F.Supp.2d 111, 124 (D.Conn.2002) (finding no substantive due process claim where plaintiff claimed that he was terminated on the basis of race since "the equal protection clause provides explicit textual protection against race-motivated state action"). For these reasons, the Plaintiff's substantive due process claims are dismissed.

**\*11** The Plaintiff's substantive due process claims must also be dismissed because they do not allege facts that are so arbitrary or egregious as to "shock the conscience" as a matter of law. *See County of Sacramento,* 523 U.S. at 845 ("[O]nly the most egregious official conduct" is arbitrary or egregious as a matter of law.); *see also Collins v. Harker Heights,* 503 U.S. 115,129 (1992) (holding that "particularly in the area of public employment," a claim "analogous to a fairly typical tort claim under state law" does not amount to a substantive due process violation). While no precise test can determine whether government conduct "shocks the conscience," the query necessarily depends on "the state of mind of the government actor and the context in which the action was taken." *See O'Connor v. Pierson,* 426 F.3d 187, 203 (2d Cir.2005) (holding that intent to cause harm

may in some cases constitute a violation, while "deliberate indifference" only "shocks the conscience "in situations where the government owes a special duty of care to those in its charge").

The Plaintiff alleges that Defendant Velleca fabricated incidents of misconduct in order to impugn the Plaintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended. Yet however wrongful such alleged conduct may be, it does not plausibly state conduct that amounts to a substantive due process claim as a matter of law. *See Hogan,* 220 F.Supp.2d. at 123 (dismissing a substantive due process claim where defendant allegedly made him a scapegoat and had him wrongfully terminated on that basis). Nor do Plaintiff's allegations that Defendant created a hostile environment by on one occasion yelling, swearing at, and on another occasion threatening the Plaintiff amount to a violation of substantive due process. *See Richards v. Connecticut Dept. of Corr.,* 349 F.Supp.2d 278, 293 (D.Conn.2004) (holding that, while "unprofessional and unto plausible necessary," the government-employer's conduct did not shock the conscience where defendant yelled, swore at, and berated plaintiff, who was then placed on leave, transferred, and reprimanded in writing).

As to Defendant Limon (Count II), the Plaintiff does not allege that the Defendant was aware of Defendant Velleca's allegedly unlawful behavior, but rather, asserts only that Limon wrongly credited Defendant Velleca's claims over the Plaintiff's. Yet even had Limon been aware of Velleca's acts, the Defendant's alleged failure to act does not constitute a basis for the Plaintiff's claim. *See Goldfarb v. Town of W. Hartford,* 474 F.Supp.2d 356, 371 (D.Conn.2007) (rejecting plaintiff's substantive due process claim where defendant allegedly failed to respond to plaintiff's complaints or prevent further harassment to plaintiff). Indeed, while "deliberate indifference" to a supervisee's wrongful behavior may "shock the conscience "in situations where the government owes a special duty of care to those in its charge," such as a government detainee, this is not such a case. *O'Connor,* 426 F.3d at 203. Therefore, because the Plaintiff does not, as a matter of law, allege facts that "shock the conscience," his substantive due process claim is dismissed.

E. Procedural Due Process Claim

**\*12**  Additionally, the state acts in violation of the Fourteenth Amendment when it deprives an individual of property without due process of law. *Cleveland Bd. Of Educ. V. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "In analyzing plaintiffs' procedural due process claims, the court must first determine (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Sealed v. Sealed,* 332 F.3d 51, 55 (2d Cir.2003). As to the first inquiry, depriving an individual of his livelihood may in some cases constitute a property depravation requiring due process for the purposes of the Fourteenth Amendment. *Loudermill,* 470 U.S. at 543. As to the second, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nevertheless, three factors may be balanced to determine what process is due in a given situation: " "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In this case, the Plaintiff fails to adequately allege a procedural due process violation because he makes no reference to facts providing a basis for the claim. The Plaintiff alleges that he was suspended for three days and arbitrarily subjected to punishment without appropriate opportunity for adequate review. Yet the Plaintiff fails to elucidate his point by describing what process he was due. *See DeLoreto V. Ment,* 944 F.Supp. 1023, 1034 (D.Conn.1996) (dismissing an employment depravation claim where plaintiffs failed to present allegations as to "what procedural due process rights they [were] claiming entitlement"). Indeed, in this case, Plaintiff does allege that he took advantage of various grievance procedures, suggesting that he was not, in fact, deprived of adequate process as a matter of law. *See Gilbert v. Homar,* 520 U.S. 924, 932, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (holding that no pre-depravation hearing was required where an employee faces only a temporary suspension without pay and not termination). After all, a plaintiff does not have a due process claim merely because he is unhappy with the results of the process he is provided. *See Martin v. Town of Westport,* 329 F.Supp.2d 318, 335 (D.Conn.2004) (holding that adequate process had been provided where plaintiff took advantage of collective bargaining agreement procedures after being terminated,

and merely disagreed with the results). For the foregoing reasons, the Plaintiffs procedural due process claim is dismissed as a matter of law.

### F. Municipal Liability Claim

In regard to Count III of Plaintiff's claim, to establish municipal liability for the conduct of city employees, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy" that caused the violation. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991). In some cases, such an unlawful policy may be inferred where "the municipality had notice of but repeatedly failed to make any meaningful investigation" into allegations that its agents had violated constitutional rights. *Id.*

**\*13** In Count III, Plaintiff alleges that Defendant City of New Haven displayed "deliberate indifference" to the violation of Plaintiff's constitutional rights. Such unlawful indifference, Plaintiff claims, evinces "a municipal policy or custom" that makes Defendant City of New Haven liable in this case. Plaintiff fails, however, to provide a factual basis for his claim. The fact that Defendant City of New Haven "acknowledged that 'some of Lt. Velleca's actions were inappropriate for a supervisor' " and failed to act does not provide a plausible inference that Defendant deliberately and repeatedly ignored allegations of conduct that plausibly amounted to a constitutional violation. Nor does the threadbare claim demonstrate that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff's allegations against the City are replete with conclusions devoid of any factual enhancement that would render such conclusions plausible under *Iqbal.* Absent any factual allegations supporting the plausible inference of "a direct causal link between the municipal action and the deprivation of federal rights," the Plaintiff's claim must be dismissed.

### G. Intentional Infliction of Emotional Distress Claim

Liability for intentional infliction of emotional distress depends on the plaintiff's ability to establish four elements: (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would result from his conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff's distress was severe. *Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 194 (D.Conn.2000) (quoting *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)). To constitute "extreme and outrageous conduct," the action must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society," and causes "mental distress of a very serious kind." *Id.*

In Count I, Plaintiff claims that Defendant Velleca verbally threatened him, making him fear for his safety both at work and at home. He also alleges that Defendant issued false negative reports about Plaintiff and caused him to be unfairly disciplined. Plaintiff asserts that, as a result of the psychological trauma caused by Defendant, he was forced to leave work and take a sick day. Yet however ill-founded and improper Defendant's alleged actions may have been, they do not, as a matter of law, arise to level of egregious conduct required to substantiate a claim of intentional infliction of emotional distress. *See Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 195 (D.Conn.2000) (holding that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress"); *Armstrong v. Chrysler Financial Corp. and Roger Pinneault,* No. 3:97CV1557, 1998 WL 342045, at \*5 (D.Conn. May 14, 1998) ("Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient" and therefore holding that Plaintiff failed to plausibly state claim for intentional infliction of emotional distress where employer criticized, insulted, demeaned, and embarrassed plaintiff on a daily basis). Indeed, even unfounded discipline does not amount to extreme and outrageous behavior when conducted in an employment setting. *See Hill v. Pinkerton Sec. & Investigation Services, Inc.,* 977 F.Supp. 148, 160 (D.Conn.1997) (finding no claim where plaintiff was disciplined, reprimanded, and transferred); *see also Barbuto v. William Backus Hosp.,* 1995 WL 235068, \*8 (Conn.Super.) (April 13, 1995, *Hendel, J.*) (dismissing a claim where plaintiff suffered a two day suspension).

**\*14**  Additionally, while Plaintiff alleges that Defendant Limon ignored his complaints, failure to prevent another employee from harassing a complainant cannot properly be considered intentional infliction of emotional distress as a matter of law. *See Abate v. Circuit–Wise, Inc.,* 130 F.Supp.2d 341, 348 (D.Conn.2001) (finding that failure to prevent supervisor from sexually harassing plaintiff-employee was not extreme and outrageous conduct). Furthermore, while the Plaintiff alleges that Defendant Limon participated in transferring and suspending the Plaintiff for fabricated reasons, as discussed above, unfair discipline, even to the extent of termination of employment, does not amount to extreme and outrageous conduct. *See Venterina v. Cummings & Lockwood,* 117 F.Supp.2d 114, 120 (D.Conn.1999) (holding that false accusations and wrongful termination is insufficient to sustain a claim). Thus, unsubstantiated, Plaintiff's Count IV claims against Defendant Velleca and Defendant Limon are dismissed.

Lastly, the City correctly asserts that under Connecticut law, a municipality cannot be liable for the intentional and/or malicious conduct of its employees or agents. Indeed, the Connecticut Supreme Court has held that under Conn. Gen.Stat. § 52–55n, a municipality could not be held liable for the intentional infliction of emotional distress by one its employees. *Pane v. City of Danbury,* 267 Conn. 669, 686, 841 A.2d 684 (2004).

*Conclusion*

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint in its entirety is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4445475

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 114 of 121

2020 WL 6482029
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joshua Alex VASQUEZ, Plaintiff,
v.
SCHENECTADY COUNTY CORRECTIONAL FACILITY, Defendant.

9:20-CV-0785 (TJM/CFH)
|
Signed 11/03/2020
|
Filed 11/04/2020

**Attorneys and Law Firms**

JOSHUA ALEX VASQUEZ, 25555, Plaintiff, pro se, Schenectady County Correctional Facility, 320 Veeder Avenue, Schenectady, NY 12307.

**DECISION AND ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Joshua Alex Vasquez commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis. *See* Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application"). [1] By Decision and Order entered on August 21, 2020, this Court granted plaintiff's IFP Application, but following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that it was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 7 ("August 2020 Order").

Presently before the Court is plaintiff's amended complaint. Dkt. No. 8 ("Am. Compl.").

**II. SUFFICIENCY OF THE AMENDED COMPLAINT**

   **A. The Complaint and August 2020 Order**

In his original complaint, plaintiff asserted claims based on events that allegedly occurred while he was a pretrial detainee at Schenectady County Correctional Facility. *See generally* Compl. Plaintiff named only Schenectady County Correctional Facility as a defendant. *See* Compl. at 1-2.

The complaint was construed to assert the following claims against the facility: (1) a First Amendment interference with mail claim; (2) a Fourteenth Amendment excessive force claim; and (3) a Fourteenth Amendment medical indifference claim. *See* August 2020 Order at 5.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court dismissed plaintiff's Section 1983 claims without prejudice for failure to state a claim upon which relief may be granted. *See* August 2020 Order at 7-8.

**B. Overview of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the August 2020 Order and it will not be restated in this Decision and Order. *See* August 2020 Order at 2-4.

Plaintiff's amended complaint names the following individuals as defendants, along with Schenectady County: (1) Sheriff Dominic Dagostino; (2) Corrections Officer Jason Jendzeizyk; (3) Corrections Officer Matthew Hall; (4) Corrections Officer Charlie Chrowle; (5) Corrections Officer Smith; (6) Corrections Officer Malee; (7) Corrections Lieutenant Nealon; and (8) Doctor McPhillips. Am. Compl. at 1-4. The following facts are set forth as alleged by plaintiff in his amended complaint, or detailed in documents attached thereto. [2]

 **\*2** On January 20, 2020, plaintiff handed outgoing mail to defendant Corrections Officer Jason Jendzeizyk. Dkt. No. 8-3 at 4. The mail was never sent out for delivery. *Id.* at 12. Defendant Jendzeizyk violated "Penal Law 250.25 [by] tampering with communications[.]" Am. Compl. at 6.

On March 31, 2020, at approximately 9:00 a.m., plaintiff "was assaulted by five correctional officers" when he was extracted from his cell. Am. Compl. at 6; Dkt. No. 8-1 at 1. As a result of the assault, plaintiff suffered "bad bruising and swelling" in his "legs and back[.]" Am. Compl. at 6. Plaintiff was issued a misbehavior report for the events that occurred on March 31, 2020. Dkt. No. 8-3 at 13.

On April 10, 2020, plaintiff was seen by defendant Dr. McPhillips, who "claimed [plaintiff] was getting better" even though his injuries were worse. Am. Compl. at 6; Dkt. No. 8-1 at 2. Plaintiff told defendant McPhillips that his legs "have gotten nothing but worst [sic]" and requested photographs of his injuries. Dkt. No. 8-1 at 2. Defendant McPhillips advised plaintiff that "they don't do any of that" at the facility and excused him from "medical." *Id*. On April 13, 2020, plaintiff was brought back to "medical" for further evaluation. *Id*.

Liberally construed, the amended complaint asserts the following claims against the aforementioned defendants: (1) a First Amendment mail tampering claim against defendant Jendzeizyk; (2) Fourteenth Amendment excessive force claims against defendants Hall, Chrowle, Smith, Malee, and Nealon; [3] and (3) a Fourteenth Amendment medical indifference claim against defendant McPhillips.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C. Analysis**

**1. Sheriff Dagostino**

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ... § 1983 suits." *Iqbal* 556 U.S. at 676.

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created,

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 116 of 121

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [4]

**\*3** Plaintiff does not allege that defendant Dagostino directly participated in any of the alleged misconduct described in the amended complaint. *See generally*, Am. Compl. Rather, it appears plaintiff has named the Sheriff as a defendant solely because he is responsible for the jail, which, without more, is insufficient to plausibly suggest that he was personally involved in the alleged constitutional deprivations. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (finding that dismissal of Section 1983 claim was proper where plaintiff did no more than allege defendant was in charge of the prison); *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (dismissing complaint containing conclusory allegations that county sheriff "(1) failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) 'failed to institute a proper system of review and reprimand' of his deputies so as to prevent the types of unlawful acts alleged here" - but offering no factual basis demonstrating sheriff's personal involvement); *Pravda v. City of Albany, N.Y.*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (granting defendants' motion for judgment on the pleadings, where pro se plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for setting county policy and supervising corrections officers who were involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations.").

Accordingly, plaintiff's Section 1983 claims against Sheriff Dagostino in his individual capacity are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [5]

### 2. Schenectady County

The legal standard governing a municipal liability claim was discussed at length in the August 2020 Order and will not be restated herein. *See* August 2020 Order at 5-7.

As with the original complaint, the amended complaint does not allege any facts which plausibly suggest that any of the alleged wrongdoing that forms the basis of plaintiff's claims occurred pursuant to a policy or custom of the county or jail.

Accordingly, and for the reasons set forth in the August 2020 Order, plaintiff's Section 1983 claims against Schenectady County, and Sheriff Dagostino in his official capacity, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Mail Tampering Claim

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). The law is well-settled that mail may only be restricted to further " 'one or more of the substantial governmental interests of security, order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Davis*, 320 F.3d at 351 (2d Cir. 2003) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

**\*4** In *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 117 of 121

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

In this case, plaintiff does not allege that he was altogether prohibited from receiving or sending any mail. Rather, the allegations in the amended complaint plausibly suggest only that on one occasion, plaintiff's outgoing mail was not delivered by defendant Jendzeizyk. *See* Am. Compl. at 6. While the amended complaint fails to provide any details regarding the outgoing mail, why it was not delivered, or what happened to the mail, it appears from documents attached to the amended complaint that the mail was confiscated because it was addressed to a person whom plaintiff was prohibited from contacting pursuant to a court order. *See* Dkt. No. 8-3 at 2-4, 12. Thus, the Court has no basis to plausibly infer that defendant Jendzeizyk engaged in a practice of censorship, unjustified by a substantial government interest, when he apparently refused to deliver plaintiff's outgoing mail on one occasion.

Accordingly, plaintiff's mail tampering claim against defendant Jendzeizyk is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Excessive Force Claims

Because plaintiff was a pretrial detainee at the time of the events giving rise to his claims, he "receive[d] protection against mistreatment at the hands of prison officials under ... the Due Process Clause of the Fourteenth Amendment[.]" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2470-71 (2015).

In *Kingsley*, the Supreme Court distinguished between Eighth and Fourteenth Amendment excessive force claims, and held that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. *See* 135 S.Ct. at 2470-71. Rather, "to prove an excessive force claim, a pretrial detainee must show ... only that the officers' use of that force was objectively unreasonable." *Id.* at 2473. [6] In making that objective determination, the court must view the matter from "the perspective of a reasonable officer on the scene," and consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

 **\*5** "Additionally, claims for excessive force under the Fourteenth Amendment must involve force that is either 'more than de minimis' or 'repugnant to the conscience of mankind.' " *Lewis v. Huebner*, No. 17-CV-8101, 2020 WL 1244254, at \*5 (S.D.N.Y. Mar. 16, 2020) (quoting *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999) (citation and quotation marks omitted)); *see also Lynch v. City of New York*, —— F.3d ——, 2020 WL 1036620, at \*7-8 (2d Cir. Mar. 4, 2020) (explaining that "there is a de minimis level of imposition with which the Constitution is not concerned," and therefore holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a bathroom failed to state a Fourteenth Amendment claim (citation and quotation marks omitted)); *see also Graham v. Connor*, 490 U.S. 386, 396-98 (1989) (explaining that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment[,]" and that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional").

In this case, the amended complaint lacks any details regarding the manner or duration of force used against plaintiff, or the events that precipitated the use of force. Instead, plaintiff conclusorily alleges only that he "was assaulted by five correctional officers[.]" Am. Compl. at 6. Moreover, with respect to plaintiff's injuries, the amended complaint alleges only that plaintiff suffered "bad bruising and swelling" in his "legs and back" as a result of the use of force incident, without any details regarding the duration of these injuries, plaintiff's level of pain, or ensuing limitations on his day-to-day activities. *Id.*

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 118 of 121

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

In light of the conclusory nature of the allegations in the amended complaint, the Court has no basis to plausibly infer that the force allegedly used against plaintiff was objectively unreasonable. Accordingly, plaintiff's excessive force claims against defendants Hall, Chrowle, Smith, Malee, and Nealon are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Medical Indifference Claim

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test. First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.' " *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 139 (2d Cir. 2013)). Second, the defendant must act with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'— that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.' " *Revels v. Corr. Med. Care, Inc.*, No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)); *see also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

**\*6** "Until very recently, the second, or mens rea, prong—the defendant's 'sufficiently culpable state of mind'—was assessed subjectively in claims brought under both the Eighth and the Fourteenth Amendments." *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting *Spavone*, 719 F.3d at 138). However, in light of the Supreme Court's ruling in *Kingsley v. Hendrickson*, ––– U.S. ––––, 135 S.Ct. 2466 (2015), "the mens rea prong of a deliberate indifference claim brought by a pretrial detainee is now to be assessed objectively." *Id.* at 117; *Lloyd*, 246 F.Supp.3d at 719. Thus, "rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.' " *Lloyd*, 246 F. Supp. 3d at 719 (quoting *Darnell*, 849 F.3d at 33, 35).

In this case, the amended complaint alleges only that plaintiff was evaluated by defendant McPhillips following the use-of-force incident, and defendant McPhillips "claimed [plaintiff] was getting better" even though he was not. Am. Compl. at 6. The amended complaint lacks any details regarding the nature of plaintiff's injuries, the number of times he was evaluated for his injuries, the treatment he received for his injuries, if any, or how his condition worsened over time. Moreover, the documents attached to the amended complaint fail to provide any specific details regarding (1) plaintiff's medical condition following the alleged use-of-force, including the nature of his injuries or physical complications, or (2) the treatment defendant McPhillips provided or refused to provide. Thus, the Court has no basis to plausibly infer either that plaintiff was suffering from a sufficiently serious condition following the alleged use-of-force incident, or that defendant McPhillips denied plaintiff adequate medical care.

Accordingly, plaintiff's medical indifference claim against defendant McPhillips is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D. Nature of Dismissal**

Based upon the foregoing, the Court finds that the amended complaint fails to state one or more claims upon which relief may be granted by this Court. The Court, however, is mindful that certain of plaintiff's claims were asserted for the first time in his amended complaint. In light of this, and plaintiff's pro se status, the Court will afford him a final opportunity to file an amended complaint not inconsistent with this decision. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading which will supersede and replace the operative pleading in its entirety. Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated his constitutional rights.

Plaintiff is forewarned that if he fails to submit a second amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**III. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk shall add Schenectady County and the following individuals to the docket as a defendants: (1) Sheriff Dominic Dagostino; (2) Corrections Officer Jason Jendzeizyk; (3) Corrections Officer Matthew Hall; (4) Corrections Officer Charlie Chrowle; (5) Corrections Officer Smith; (6) Corrections Officer Malee; (7) Corrections Lieutenant Nealon; and (8) Doctor McPhillips; and it is further

 **\*7  ORDERED** that plaintiff's Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file a second amended complaint **within thirty (30) days** of the filing date of this Decision and Order as set forth above; and it is further

**ORDERED** that upon the filing of a second amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed second amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7 th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so may result in the dismissal of this action; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 120 of 121

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6482029

---

**Footnotes**

1    Plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed. Dkt. No. 3. Plaintiff then timely filed his IFP Application, together with an inmate authorization form, and this action was re-opened. Dkt. Nos. 4, 5, 6.

2    Plaintiff submitted various documents with his amended complaint. *See* Dkt. Nos. 8-1, 8-2, and 8-3. Because these documents contain additional details regarding the events described in the amended complaint, the Court has included factual information contained in these documents as part of its summary of the relevant facts. In doing so, however, the Court notes that statements made in documents attached to the amended complaint need not be, and have not been, accepted as true. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674-75 (2d Cir. 1995) (holding that attachment of school superintendent's report as an exhibit to the complaint did not necessarily incorporate report into complaint in such manner as to accept all statements in report as true, including its exculpatory conclusions); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 480-81 (S.D.N.Y. 2017) (adopting plaintiff's argument that "although a court can take notice of the fact of public filings and documents attached to or cited in a complaint, it [generally] may not consider these materials for 'the truth of the matters asserted' " (citation omitted)).

3    The amended complaint does not identify which of the eight officials named as defendants were involved in the alleged use-of-force incident. However, defendants Dagostino and McPhillips are not alleged to be correctional officers. Moreover, the documents attached to the amended complaint show that defendant Jendzeizyk was involved in an incident regarding plaintiff's outgoing mail. Thus, the Court has assumed, for purposes of this Decision and Order only, that the remaining five defendants -- Hall, Chrowle, Smith, Malee, and Nealon -- were the five "correctional officers" involved in the alleged use-of-force incident.

4    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

5    Insofar as plaintiff intended to named Sheriff Dagostino as a defendant in his official capacity, an official capacity claim against a Sheriff is effectively a municipal liability claim against the County. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself ... 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' ") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County.... She must show the deprivation of her rights was caused by a policy that was deliberately indifferent to those rights..... And, further she must demonstrate that the county made some deliberate choice, implemented through policy or custom, which is the

Case 9:24-cv-01399-AJB-MJK    Document 31    Filed 02/05/26    Page 121 of 121

Vasquez v. Schenectady County Correctional Facility, Not Reported in Fed. Supp. (2020)

moving force behind the constitutional violation." (internal quotation marks and citations omitted)). Plaintiff's municipal liability claim is analyzed below.

6    This objectively reasonable standard is also applicable to excessive force claims brought under the Fourth Amendment. *See, e.g., Jackson v. City of White Plains,* No. 05-CV-0491, 2015 WL 4739762, at *4 (S.D.N.Y. Aug. 7, 2015) ("[W]hether or not the Court applies the Fourteenth Amendment standard [to plaintiff's excessive force claim] ... or the Fourth Amendment standard ..., the outcome is now the same—Plaintiff's claim is to be analyzed using an objectively reasonable standard, without regard to the subjective intent of the Defendants.").

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---